1  STEPHEN M. HAYES (SBN 83583)
2  RYAN Z. KELLER (SBN 249193)
   TYLER R. AUSTIN (SBN 293977)
3  HAYES SCOTT BONINO & ELLINGSON
4  GUSLANI SIMONSON & CLAUSE, LLP
   999 Skyway Road, Suite 310
5  San Carlos, California 94070
   Telephone:  (650) 637-9100
6  Facsimile:  (650) 637-8071
7
8  Attorneys for Defendant
   Twin City Fire Insurance Company
9
                    UNITED STATES DISTRICT COURT
10
                  CENTRAL DISTRICT OF CALIFORNIA
11

12 SOMERA CAPITAL                      CASE NO.: **2:20-cv-04277**
13 MANAGEMENT, LLC, a California
   Limited Liability Company,          **DEFENDANT TWIN CITY FIRE**
14                                      **INSURANCE COMPANY'S NOTICE**
15          Plaintiffs,                 **OF REMOVAL OF CIVIL ACTION**
                                        **UNDER 28 U.S.C. SECTIONS 1332,**
16     v.                              **1441, AND 1446**
                                        **[DIVERSITY JURISDICTION]**
17 TWIN CITY FIRE INSURANCE
18 COMPANY, an Indiana Corporation;     **DEMAND FOR JURY TRIAL**
   THE SWETT & CRAWFORD GROUP,
19 INC., a California Corporation; and
20 DOES 1 through 10,

21          Defendants.

22
23
24
25
26
27
28
   1134297

**TO THE CLERK OF THE ABOVE-ENTITLED COURT:**

PLEASE TAKE NOTICE that defendant Twin City Fire Insurance Company ("Twin City") hereby removes to this Court the state action described below:

1.     Twin City is a defendant in the civil action commenced on December 14, 2018 in the Superior Court of the State of California, County of Santa Barbara, Case No. 18CV06147, entitled <u>Somera Capital Management, LLC v. Twin City Fire Insurance Company, et al.</u>  A true and correct copy of the summons and complaint is attached hereto as **Exhibit 1** and is incorporated as part of this notice.

2.     Twin City filed its answer to plaintiff's complaint in state court on January 22, 2019.  A true and correct copy of the answer is attached hereto as **Exhibit 2** and is incorporated as part of this notice.

3.     Plaintiff filed a first amended complaint ("FAC") on May 9, 2019.  A true and correct copy of the first amended complaint is attached hereto as **Exhibit 3** and is incorporated as part of this notice.  Because there were no substantive differences between the original and amended complaint, Twin City did not file an amended answer.  *Carrasco v. Craft*, 164 Cal.App.3d 796, 808–809 (1985).

4.     Diversity did not exist at the time plaintiff filed the complaint or first amended complaint due to the presence of a non-diverse defendant, The Swett & Crawford Group, Inc. (erroneously sued as The Sweet & Crawford Group, Inc.) ("Swett.")  As alleged by plaintiff, Swett is a California corporation.  (FAC, ¶ 4.)  Plaintiff filed a dismissal of this defendant on May 6, 2020, which they served by mail and email that same day (May 6, 2020.)  A true and correct copy of the dismissal is attached hereto as **Exhibit 4** and is incorporated as part of this notice.  Because the dismissal was just filed and served on May 6, 2020, this removal petition is timely.  28 USC § 1446; *see*, *Kuxhausen v. BMW Financial Services NA LLC* 707 F.3d 1136, 1140 (9th Cir. 2013); *Lovern v. General Motors Corp.*, 121 F.3d 160, 161 (4th Cir. 1997).

5.      A copy of all process and pleadings served on Twin City are included above.  A copy of all orders served on Twin City are attached hereto as **Exhibit 5**, which include an Order Granting Leave to File First Amended Complaint to Attach Inadvertently Omitted Exhibits and two Orders continuing Case Management Conferences.  The state court issued an Order from the bench regarding cross-motions for summary judgment and summary adjudication but it was not served on Twin City.  A copy of the tentative ruling on those motions that was adopted by the court is included as part of Exhibit 5.

6.      This action is a civil action of which this Court has original jurisdiction under 28 U.S.C. section 1332, and is one that may be removed to this Court by Twin City pursuant to the provisions of 28 U.S.C. section 1441, subdivision (a), in that it is a civil action wherein the matter in controversy exceeds the sum of $75,000 exclusive of interest and costs, and is between citizens of different states.

7.      **The Amount in Controversy is Satisfied**

a.  The fact that the amount in controversy exceeds the minimum requirement for diversity jurisdiction can be determined by the face of the first amended complaint ("FAC").  (Exhibit 3.) Plaintiff alleges it was insured under a Twin City Private Equity Choice Insurance Policy (the "Policy") from February 2017 to February 2018.  (FAC, ¶ 17.)  Plaintiff alleges the Policy provided liability coverage for the company and its officers, and that plaintiff and its president, David Brown, were sued by Postcard Properties, LLC on or about September 28, 2017.  (FAC, ¶¶ 12, 18-27.)  Plaintiff alleges that there are possible bases to support coverage for the Postcard Action that would require Twin City to pay for the damages alleged by Postcard.  (FAC, ¶ 45.)  Attached as Exhibit A to the FAC is the operative complaint in the Postcard Action, wherein Postcard alleges damages from Somera's failure to pay two contracts in the amounts of $252,000 and $1,000,000. (FAC: Ex A, ¶¶ 17, 34.)  These amounts exceed the $75,000 threshold, exclusive of interest and costs.

b.  The fact that the amount in controversy exceeds the minimum requirement for diversity jurisdiction can also be determined by the nature of the claims and the amount and type of the damages

sought in the FAC.  Plaintiff alleges that it tendered the lawsuit to Twin City for coverage, and that Twin City extended coverage to Brown under a reservation of rights, but improperly denied a defense to plaintiff.  (FAC, ¶¶ 28, 36-37.)  Plaintiff asserts causes of action that include breach of contract and insurance bad faith.  Plaintiff has produced redacted invoices in discovery showing that the insureds have allegedly incurred defense costs in the underlying action totaling $362,631.61.  Again, this is more than $75,000, exclusive of interest and costs.  Attorney fee damages can be sufficient to invoke the jurisdictional minimum.  *(Simmons v. PCR Technology,* 209 F.Supp.2d 1029 (N.D. Cal. 2002).)  Courts determine the amount in controversy "based on the damages that can reasonably be anticipated at the time of removal . . . the measure of fees should be the amount that can reasonably be anticipated at the time of removal, not merely those already incurred."  *(Id.* at 1035; see also *Galt G/S v. JSS Scandinavia*, 142 F.3d 1150, 1155-56 (9th Cir. 1998).)

c. Plaintiff seeks punitive damages.  (FAC, p. 12:17.)  Even if the Court adopts a "due process multiplier" of just one times actual damages, the amount in controversy would be more than $75,000, exclusive of interest and costs.  *Johnson v. Ford Motor Co*., 35 Cal.4th 1191 (2005); *Wysinger v. Automobile Club of Southern California*, 157 Cal.App.4th 413 (2007).

d. Plaintiff also seeks recovery of its attorney fees and costs for this action.  (FAC, ¶ 50; p. 12:15-16.)  The claim for attorney fees and costs constitutes an element of plaintiff's special damages on a theory that plaintiff incurred these so-called *Brandt* fees to recover unreasonably withheld policy benefits.  *Brandt v. Superior Court,* 37 Cal.3d 813 (1985.)  It is likely that plaintiff's damages for *Brandt* fees and costs through trial would exceed the $75,000, exclusive of interest and costs, amount in controversy requirement in and of themselves.  Attorney fees recoverable under *Brandt* can be considered in determining whether the amount in controversy exceeds the jurisdictional amount.  (*Richmond v. Allstate Insurance Co.*, 897 F.Supp. 447, 450 (S.D.Cal. 1995).)

8. **Diversity is Satisfied**

a. At the time of the commencement of this action, and at all times since, Twin City has been, and still is, a corporation of the State of Indiana, being incorporated under the laws of Indiana, and has

had and continues to have its principal place of business in Connecticut.

b. Plaintiff is an LLC.  Its principal place of business has been, and still is, in California.  Per the Statement of Information on the California Secretary of State website, its members are David Brown and Steve Firestone.  Per the Statement of Information, Mr. Brown and Mr. Firestone are both citizens of California.

c. This action was brought in the State of California.  This corporate defendant is not, at the time of the institution of this action, and is not now, a corporation incorporated under the laws of the State of California, and does not have at the time of the institution of this action, and does not have now, its principal place of business in California.

9.   **This Notice of Removal is Timely Due to Plaintiff's Bad Faith**

a. Although this action has been pending for more than one year, it was not removable until May 6, 2020 when plaintiff dismissed the non-diverse defendant, Swett.  Twin City is removing this action pursuant to 28 U.S.C. § 1446 (c)(1), because plaintiff acted in bad faith in adding Swett as a defendant to prevent Twin City from removing this case to federal court.

b. Similar to the plaintiff in *Heller v. American States Insurance Company* 2016 WL 1170891 (C.D. Cal., Mar. 25, 2016, No. CV159771DMGJPRX), where plaintiff's motion to remand was denied due to bad faith, Plaintiff Somera Capital Management, LLC ("Somera") has not actively litigated this matter against non-diverse defendant Swett:

1) **Somera Did Not Require Swett to Answer or Make a General Appearance**

a) Somera filed its complaint against Twin City and Swett in December 2018.  By Somera naming Swett in the lawsuit, it destroyed diversity.

b) Somera did not serve the summons and complaint upon Swett until April 2019, and even then, the proof of service has never been filed with the Court and does not appear on the Court's docket.

c) Swett never answered the complaint and, yet, Somera did not take their default.  The most likely scenario is that Somera gave Swett an open-ended extension to respond to

the complaint because Somera never planned to actively litigate the case against Swett.

    d) Swett never made a general appearance in the state court action.  Swett made one special appearance at a case management conference.  Swett did not participate in the meet and confer between counsel in advance of that case management conference.

## 2) Somera Did Not Ask for Swett to Participate in any Case Management or Settlement Communications

    a) Twin City and Somera have exchanged extensive meet and confer and other correspondence throughout the state court action.  Swett was not copied on these communications.  Somera has made no attempt to involve Swett in any meet and confer discussions with Twin City regarding hearings or discovery.

    b) In January, 2020, Twin City and Somera argued cross-motions for summary judgment and/or summary adjudication in the state court action.  Swett did not attend the hearing.

    c) Somera and Twin City participated in mediation in April 2020.  Swett did not attend.  Somera made no attempt to involve Swett in mediation or any other settlement opportunities throughout the state court action.

## 3) Somera Did Not Make Any Effort to Obtain Discovery Regarding Swett's Potential Liability

    a) Somera's counsel have never expressed to Twin City's counsel that Swett had any potential liability.

    b) Somera never served written discovery on Swett, nor has Somera propounded any discovery on Twin City regarding Swett.

    c) Somera never noticed any depositions of Swett.

    (Declaration of Stephen M. Hayes ("Hayes Decl.,") ¶ 4.)

# **DEMAND FOR JURY TRIAL**

Twin City Fire Insurance Company hereby demands a trial by jury.

Dated:  May 11, 2020

HAYES SCOTT BONINO ELLINGSON
GUSLANI SIMONSON & CLAUSE, LLP

By:  _/s/ Stephen M. Hayes_
STEPHEN M. HAYES
RYAN Z. KELLER
TYLER R. AUSTIN
Attorneys for Defendant
Twin City Fire Insurance Company

**DEFENDANT TWIN CITY'S NOTICE OF REMOVAL OF CIVIL ACTION UNDER 28 U.S.C. SECTIONS
1332, 1441, AND 1446 [DIVERSITY JURISDICTION]; DEMAND FOR JURY TRIAL**

# EXHIBIT 1

SUM-100



# SUMMONS
## (CITACION JUDICIAL)

| | FOR COURT USE ONLY<br>(SOLO PARA USO DE LA CORTE) |
|---|---|

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*

Twin City Fire Ins. Co.; The Swett & Crawford Group, Inc., and Does 1 through 10

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*

Somera Capital Management, LLC

ELECTRONICALLY FILED
Superior Court of California
County of Santa Barbara
Darrel E. Parker, Executive Officer
12/14/2018 4:50 PM
By: Narzralli Baksh, Deputy

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or a phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association. NOTE: The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

| The name and address of the court is:<br>(El nombre y dirección de la corte es:) | CASE NUMBER:<br>(Número del Caso): 18CV06147 |
|---|---|

Superior Court of California, County of Santa Barbara, Anacapa Division

1100 Anacapa Street. Santa Barbara, CA 93101

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*

KASOWITZ BENSON TORRES, LLP; Jerold Oshinsky (SBN 250771); Kirsten C. Jackson (SBN 265952)

2029 Century Park East, Suite 2000, Los Angeles, CA 90067.  (424) 288-7900

| DATE:<br>(Fecha)  12/14/2018 | Clerk, by<br>(Secretario) /s/ Narzralli Baksh | , Deputy<br>(Adjunto) |
|---|---|---|

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citación use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED:** You are served

1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*

3. ☒ on behalf of *(specify):* TWIN CITY Fire Ins. Co

under: ☒ CCP 416.10 (corporation)  ☐ CCP 416.60 (minor)
☐ CCP 416.20 (defunct corporation)  ☐ CCP 416.70 (conservatee)
☐ CCP 416.40 (association or partnership)  ☐ CCP 416.90 (authorized person)

☐ other *(specify):*

4. ☒ by personal delivery on *(date):* 12/21/18

Page 1 of 1

| Form Adopted for Mandatory Use<br>Judicial Council of California<br>SUM-100 [Rev. July 1, 2009] | **SUMMONS** | Code of Civil Procedure §§ 412.20, 465<br>www.courtinfo.ca.gov |
|---|---|---|

Jerold Oshinsky (Cal. Bar No. 250771)
joshinsky@kasowitz.com
Kirsten C. Jackson (Cal. Bar No. 265952)
kjackson@kasowitz.com
KASOWITZ BENSON TORRES LLP
2029 Century Park East, Suite 2000
Los Angeles, CA 90067
Telephone: (424) 288-7900
Facsimile: (424) 288-7901

Attorneys for Plaintiffs

ELECTRONICALLY FILED
Superior Court of California
County of Santa Barbara
Darrel E. Parker, Executive Officer
12/14/2018 4:50 PM
By: Narzralli Baksh, Deputy

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## FOR THE COUNTY OF SANTA BARBARA

## ANACAPA DIVISION

| | |
|---|---|
| SOMERA CAPITAL MANAGEMENT, LLC, a California Limited Liability Company,<br><br>Plaintiff,<br><br>vs.<br><br>TWIN CITY FIRE INSURANCE COMPANY, an Indiana Corporation; THE SWETT & CRAWFORD GROUP, INC., a California Corporation; and DOES 1 through 10,<br><br>Defendants. | CASE NO.:  18CV06147<br><br>**COMPLAINT FOR**<br><br>**(1) BREACH OF CONTRACT;**<br><br>**(2) TORTIOUS BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING;**<br><br>**(3) DECLARATORY RELIEF.**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff complains of defendants and alleges as follows:

### NATURE OF THIS ACTION

1.      This is an action by Plaintiff Somera Capital Management, LLC ("Somera") against Defendant Twin City Fire Insurance Company ("Twin City") and Defendant The Swett & Crawford Group, Inc. ("Swett & Crawford"), in connection with insurance coverage for the lawsuit captioned *Postcard Properties, LLC v. Somera Capital Management, LLC and David A. Brown*, Case No. 17CV04361 (Santa Barbara Superior Court) (the "Underlying Lawsuit").

### THE PARTIES

2.      Somera is a boutique real estate investment firm and California Limited Liability Company whose office is located at 115 W. Canon Perdido St, Santa Barbara, California 93101.

1
**COMPLAINT**

3.     Twin City is an insurance company and Indiana Corporation that is registered to transact business with the California Secretary of State.  Twin City does substantial business in the State of California and the County of Santa Barbara.

4.     Swett & Crawford is an insurance broker and California Corporation whose offices are located at 515 South Figueroa Street, Los Angeles, CA 90071-3301.  Swett & Crawford does substantial business in the State of California and the County of Santa Barbara.

5.     Somera does not currently know the true names and capacities, whether individual, associate, partnership, corporate, or otherwise, of the defendants fictitiously designated as Does 1 through 10 and therefore sues those defendants by these fictitious names.  Somera will seek leave of Court to amend this Complaint when the true names and capacities of these fictitiously named defendants have been ascertained.

6.     Somera is informed and believes, and on that basis alleges, that Does 1 through 10, in some way currently unknown have underwritten, provided, procured, assisted in procuring or communicated regarding insurance coverage for Somera, or have participated in the decision by Twin City to deny coverage to Somera, or are otherwise responsible for the loss and damages alleged herein, and that Does 1 through 10 are authorized to, and are in fact, doing and transacting business in the State of California and the County of Santa Barbara.

## JURISDICTION AND VENUE

7.     Subject matter jurisdiction is proper in the Superior Court of the State of California for the County of Santa Barbara, which is a court of general jurisdiction.

8.     Personal jurisdiction over all Defendants is proper under California Code of Civil Procedure Section 410.10, which provides that California courts are authorized to exercise jurisdiction over parties "on any basis not inconsistent with the Constitution."

9.     Personal jurisdiction over non-resident Twin City is proper, as Twin City has purposeful contacts with the California forum.  Twin City is registered with the California Secretary of State to do business in California, and has offices in California.  Twin City does substantial, continuous and systematic business in the State of California.  Twin City has

1   performed acts and consummated transactions in California giving rise to the allegations and
2   claims in this Complaint, including selling insurance to California resident Somera. Twin City has
3   also performed activities out-of-state that were aimed at and had an effect in California, including
4   denying California resident Somera's claim for insurance coverage.

5       10.    Personal jurisdiction over California resident Swett & Crawford is proper, as Swett
6   & Crawford is incorporated, headquartered and domiciled in California. Swett and Crawford is
7   registered with the California Secretary of State to do business in California. Swett & Crawford
8   does substantial, continuous and systematic business in the State of California. Swett & Crawford
9   has performed acts and consummated transactions in California giving rise to the allegations and
10  claims in this Complaint, including brokering insurance to California resident Somera.

11      11.    Venue is proper under California Code of Civil Procedure Section 393 in the
12  Superior Court of the State of California for the County of Santa Barbara because the wrongful
13  conduct alleged herein took place, in whole or in part, in Santa Barbara County.

14                          **FACTUAL ALLEGATIONS**

15  **The Underlying Lawsuit**

16      12.    On or about September 28, 2017, Postcard Properties, LLC ("Postcard") filed a
17  lawsuit against Somera and its President, David A. Brown ("Mr. Brown") in Santa Barbara
18  Superior Court (the "Underlying Lawsuit"). A true and correct copy of the operative pleading in
19  the Underlying Lawsuit is attached hereto as **Exhibit A**.

20      13.    The Underlying Lawsuit alleges causes of action for (1) breach of written contract,
21  (2) common counts, (3) breach of oral contract, (4) fraud, and (5) declaratory relief.

22      14.    Specifically, the Underlying Lawsuit alleges that Somera and Mr. Brown breached
23  various oral and written agreements with Postcard regarding the development of two commercial
24  real estate projects, the Pismo Beach Project and the Avila Beach Project.

25      15.    The Underlying Lawsuit further alleges that if there were no such agreements,
26  Somera and Mr. Brown owe Postcard "for work, labor, services and materials rendered at the
27  special instance and request of" Somera and Mr. Brown and for alleged fraud committed by

28

1   Somera and Mr. Brown.

2   **The Policy**

3      16.    Through its insurance broker, Defendant Swett & Crawford, Somera purchased
4   insurance coverage to protect itself in the event of a lawsuit such as the Underlying Lawsuit.

5      17.    Twin City issued to Somera Private Equity Choice Policy No. 72 DB 0240050-17
6   (the "Policy"), which provides coverage for the Policy Period from February 21, 2017 to February
7   21, 2018.

8      18.    The Policy's Private Equity Fund Management and Professional Liability
9   ("PEFM&P") Coverage Part provides "(A) Insured Person Liability" coverage for "Loss on behalf
10  of the Insured Persons, which such Insured Persons become legally obligated to pay, resulting
11  from a Claim first made during the Policy Period . . . against the Insured Persons for a Wrongful
12  Act by the Insured Persons which takes place during or prior to the Policy Period, except for Loss
13  that the Insured Entity pays to or on behalf of the Insured Persons as indemnification."

14     19.    The Policy's PEFM&P Coverage Part provides "(B) Insured Entity
15  Reimbursement" coverage for "Loss on behalf of an Insured Entity for which such Insured Entity
16  has, to the extent permitted or required by law, indemnified the Insured Persons, which such
17  Insured Persons become otherwise legally obligated to pay, resulting from a Claim first made
18  during the Policy Period . . . against the Insured Persons for a Wrongful Act by the Insured Persons
19  which takes place during or prior to the Policy Period."

20     20.    The Policy's PEFM&P Coverage Part provides "(C) Insured Entity Liability"
21  coverage for "Loss on behalf of an Insured Entity, which such Insured Entity becomes legally
22  obligated to pay, resulting from a Claim first made during the Policy Period . . . against such
23  Insured Entity for a Wrongful Act by the Insured Entity which takes place during or prior to the
24  Policy Period."

25     21.    The Policy defines "Claim" in relevant part as "a civil proceeding . . . for civil
26  damages or other civil relief, first made upon receipt by an Insured of a written notice of a
27  complaint or similar pleading."

28

22.    The Policy defines "Loss" in relevant part as "Damages and Defense Costs."

23.    The Policy defines "Insured Person" in relevant part as "Manager," including the "President" of the "Insured Entity."

24.    The Policy defines "Insured Entity" in relevant part as the "Named Entity," Somera Capital Management LLC.

25.    The Policy defines "Wrongful Act" in relevant part as "any actual or alleged error, misstatement, misleading statement, act, omission, neglect or breach of duty," including "in the rendering of Professional Services."

26.    The Policy defines "Professional Services" in relevant part to include "consulting, advisory, management, or administrative services."

27.    Based on the above policy language and definitions, there is coverage for the Underlying Lawsuit.

**Twin City's Shifting Coverage Positions**

28.    Somera timely tendered the Underlying Lawsuit to Twin City for coverage.

29.    In correspondence dated February 2, 2018, Twin City acknowledged that "the PEFM&P Coverage Part affords coverage" for the Underlying Lawsuit.  A true and correct copy of that correspondence is attached hereto as **Exhibit B**.

30.    However, Twin City's February 2, 2018, letter then asserted that two exclusions operated to exclude coverage afforded by the PEFM&P Coverage Part.

31.    The First Exclusion—Section IV. Exclusions Applicable to All Insuring Agreements, Paragraph (B) Exclusions without Exceptions, as amended by Endorsement No. 3— provides that the Insurer shall not pay Loss in connection with any Claim: "based upon, arising from, or in any way related to an Insured engaging in business relating to real property management, including, without limitation, engaging in any activities in the capacity of, giving advice in connection with or rendering or failing to render professional services as a property manager, real estate broker, or advisor in connection with the management of real property."

32.    The Second Exclusion—Section V. Exclusion Applicable to Insuring Agreement

(C), as amended by Endorsement 6—provides that "Pursuant to Section V., ADVANCEMENT AND ALLOCATION OF DEFENSE COSTS, AND Section VI., ALLOCATION OF DAMAGES, of the Common Terms and Conditions, the Insurer shall not pay Loss under Insuring Agreement (C) in connection with any Claim based upon, arising from, or in any way related to any actual or alleged breach of contract or agreement other than that portion of such Loss which would have attached even in the absence of such contract or agreement, or that directly results from: (A) the organizational, management, monitoring or advisory documents of an Insured Entity, including but not limited to, a partnership agreement, limited partnership agreement, operating agreement, limited liability company agreement, other advisory, monitoring and/or management agreement or subscription agreement; (B) a contract for Professional Services. . . ." Twin City asserted that Part B of the Second Exclusion applied to bar coverage, despite the fact that an exclusion for Professional Services wouldn't make any sense in a professional liability policy.

33.     In correspondence dated May 11, 2018, Somera explained to Twin City that neither the First Exclusion nor the Second Exclusion applied.   A true and correct copy of this correspondence is attached hereto as **Exhibit C**.

34.     Specifically, Somera explained that the First Exclusion for "property management" did not apply, "because the *Postcard Properties* lawsuit does not even allege property management services of any kind."

35.     Somera also explained that the Second Exclusion could not apply to Mr. Brown, as by its express terms it "states that it only applies to Coverage Part C, 'Insured Entity Liability' coverage for Somera as an entity, not Coverage Parts A and B, which cover 'Insured Person' liability and thus protect Mr. Brown." Somera further explained that the exception for "Loss which would have attached in the absence of [a] contract or agreement" applied to Somera as an entity, as "the Complaint alleges several 'common counts' that do not sound in contract."

36.     In response to Somera's May 11, 2018 letter, in correspondence dated June 19, 2018, Twin City "withdr[ew] its coverage denial as to Mr. Brown and acknowledge[d] coverage for him in accordance with this reservation of rights."   A true and correct copy of this

1    correspondence is attached hereto as **Exhibit D**.

2         37.    However, Twin City continued to incorrectly deny coverage for Somera on the

3    basis of the Second Exclusion for certain contractual liability, asserting that this exclusion still

4    applied to "'Common Counts' alleged in the Complaint [that] may have arisen in the absence of

5    Somera's alleged contracts or agreements."

6         38.    In correspondence dated August 22, 2018, Somera provided Twin City with black

7    letter California case law which made clear that "a common count cause of action is specifically

8    available 'where no contractual relationship is involved.'" Thus, the Second Exclusion for certain

9    contractual liability could not apply.  A true and correct copy of this correspondence is attached

10   hereto as **Exhibit E**.

11        39.    Furthermore, in correspondence dated September 21, 2018, Somera noted that by

12   its express terms, the Second Exclusion contained an exception for the "contract[s] for Professional

13   Services" at issue in the Underlying Lawsuit. Somera thus explained to Twin City that "the policy

14   language provides coverage for Somera directly resulting from a contract for Professional

15   Services, and does not exclude coverage as" Twin City contends. A true and correct copy of this

16   correspondence is attached hereto as **Exhibit F**.

17        40.    Nonetheless, despite being presented with ample evidence that the Second

18   Exclusion is wholly inapplicable, in correspondence dated October 5, 2018, Twin City continued

19   to wrongfully "stand by [its] denial of coverage as to Somera." In so doing, Twin City essentially

20   asserted that the exception to the Second Exclusion didn't matter. Twin City also asserted that it

21   would only advance "25% of the Defense Costs on a current basis that Somera submits to Twin

22   City for payment," purportedly based on an allocation of the "relative legal exposure of Somera

23   and Mr. Brown." A true and correct copy of this correspondence is attached hereto as **Exhibit G**.

24        41.    Twin City's allocation is entirely arbitrary and ignores that California Supreme

25   Court precedence requires an insurer to pay all defense costs in an action that involves insured and

26   uninsured parties and/or claims, except defense costs that can be allocated solely to claims that are

27   unequivocally not subject to coverage.

28

42.     Twin City has already rescinded its improper denial of coverage for Mr. Brown, which caused Somera to unnecessarily incur costs fighting for coverage to which it is entitled. Twin City's determination that the claims against Somera are not even potentially entitled coverage and, further, that a whopping 75% of the defense costs are solely attributable to such claims, is merely another attempt to deny Somera the bargained-for coverage. The claims against Somera are at least potentially covered given the common counts alleged in the Underlying Lawsuit and the "Professional Services" exception to the Second Exclusion. Twin City's acknowledgment of coverage for Mr. Brown obligates it to advance the entire defense costs.

## FIRST CAUSE OF ACTION

**(Breach of Contract – Against Twin Fire Insurance Company and Does 1-5)**

43.     Somera realleges and incorporates by reference herein each allegation contained in paragraphs 1 through 42 above.

44.     Defendants had duties under the Policy, the law, and insurance industry custom and practice to, among other things, pay for a full defense of the Underlying Lawsuit. Defendants were likewise obligated to conduct a thorough investigation of all bases that might support Somera's claim for coverage.

45.     Defendants breached their duties under the Policy by, among other things, failing to pay for a full defense of the Underlying Lawsuit; asserting grounds to avoid or limit coverage that they knew were not supported by, and are contrary to, the terms of the Policy, the law, industry custom and practice, the parties' course of dealings, and the facts; failing to conduct an adequate investigation of the Underlying Lawsuit and asserting grounds to avoid coverage based on their inadequate investigation; failing to fully inquire into possible bases that might support coverage for the Underlying Lawsuit; and by giving greater consideration to their own interests than they gave to Somera's interests. Demonstrative of Defendants' failures, the initial letter denying coverage referred to the Underlying Lawsuit as a proceeding in Denver Colorado with what appears to be the case number of a proceeding in Denver Colorado.

As a direct and proximate result of Defendants' breach of contract, Somera has suffered, and

1  continues to suffer, damages in an amount in excess of the Court's jurisdictional limits. When the

2  precise amount of Somera's damages are known, it will assert those damages accordingly.

3  ## SECOND CAUSE OF ACTION

4  **(Breach of the Covenant of Good Faith and Fair Dealing – Against Twin City and Does 1-**

5  **5)**

6  46.    Somera realleges and incorporates by reference herein each allegation contained in

7  paragraphs 1 through 42 above.

8  47.    In breach of the implied covenant of good faith and fair dealing, Defendants did the

9  things and committed the acts alleged above for the purpose of consciously withholding from

10  Somera the rights and benefits to which it is entitled under the Policy and without considering

11  Somera's interests at least to the same extent as Defendants considered their own interests.

12  48.    As a direct and proximate result of Defendants' acts, Somera has been damaged in

13  an amount in excess of the Court's jurisdictional limits. The actual amount of damages has not

14  yet been precisely ascertained. When the precise amount of Somera's damages are known, it will

15  assert those damages accordingly.

16  49.    Defendants' acts are inconsistent with Somera's reasonable expectations, and are

17  contrary to established claims practices and legal requirements, and constitute bad faith.

18  50.    Pursuant to the holding in *Brandt v. Superior Court*, 37 Cal. 3d 813 (1985), Somera

19  is entitled to recover all attorneys' fees that it reasonably has incurred, and is incurring, in its efforts

20  to obtain the benefits of the coverage that Defendants wrongfully have withheld, and are

21  withholding, in bad faith, plus interest. The total amount of these attorneys' fees is currently

22  unknown. When the precise amount of Somera's damages are known, it will assert those damages

23  accordingly.

24  51.    Defendants' conduct is despicable and has been done with a conscious disregard of

25  Somera's rights, constituting oppression, fraud, and/or malice. Defendants engaged in a series of

26  acts designed to deny wrongfully the benefits due under the policies. Specifically, Defendants, by

27  acting as alleged above, in light of the information, facts, and law to the contrary, consciously

28

disregarded Somera's rights and forced it to incur substantial financial loss, without sufficient assistance from it, thereby inflicting substantial financial damage on Somera.  Defendants ignored Somera's interests and concerns, with the requisite intent to injure, and acted fraudulently, within the meaning of California Civil Code 3294.  Therefore, Somera is entitled to recover punitive damages from Defendants in an amount sufficient to punish and to make an example of them and in order to deter similar conduct.

## THIRD CAUSE OF ACTION

### (Negligence – Against Swett & Crawford and Does 6- 10)

52.     Somera realleges and incorporates by reference herein each allegation contained in paragraphs 1 through 42 above.

53.     Swett and Crawford held itself out to Somera as having the knowledge, skill and authority to obtain insurance that would protect Somera against professional services risks.

54.     If Twin City prevails on its no coverage position, the Defendants would have been negligent in procuring insurance coverage for Somera.  Indeed, Swett & Crawford was tasked with procuring a policy that would protect Somera against professional services risks and Twin City contends that the Policy excludes disputes arising from contracts for professional services.

55.     As a direct and proximate result of Defendants' negligence, Somera has suffered, and continues to suffer, damages in an amount in excess of the Court's jurisdictional limits.  When the precise amount of Somera's damages are known, it will assert those damages accordingly.

## FOURTH CAUSE OF ACTION

### (Negligent Misrepresentation – Against Swett & Crawford and Does 6-10)

56.     Somera realleges and incorporates by reference herein each allegation contained in paragraphs 1 through 42 above.

57.     Defendants represented to Somera that they would obtain insurance that would protect Somera against personal services risks.

58.     If Twin City prevails on its no coverage position, then Somera will have been harmed by its reasonable reliance on Defendants' representations.

**COMPLAINT**

59.     As a direct and proximate result of Defendants' negligent misrepresentations, Somera has suffered, and continues to suffer, damages in an amount in excess of the Court's jurisdictional limits.  When the precise amount of Somera's damages are known, it will assert those damages accordingly.

### FIFTH CAUSE OF ACTION

**(In the Alternative, Declaratory Relief – Against Swett & Crawford and Does 6-10)**

60.     Somera realleges and incorporates by reference herein each allegation contained in paragraphs 1 through 42 above.

61.     Somera and Defendant Swett & Crawford have had, and continue to have, an ongoing special relationship for many years.  Somera relied upon Swett & Crawford to procure insurance to protect its special needs as a boutique real estate investment firm.  Indeed, Swett & Crawford held itself out as having expertise in brokering insurance coverage for real estate companies.

62.     Prior to the issuance of the Policy, Somera had requested that Defendant Swett & Crawford procure insurance coverage to protect against professional services risks.

63.     Defendant Swett & Crawford assumed the duty to use reasonable care, diligence, and judgment in procuring the insurance coverage needed by Somera to protect its business interests.

64.     Somera had a reasonable expectation that it would be covered for professional services risks of the nature alleged in the Underlying Lawsuit.

65.     Defendant Swett & Crawford also assumed the duty to fully explain to Somera the key terms of the Policy prior to its issuance, and Somera reasonably relied on its explanation.  However, at no point prior to the issuance of the Policy did Swett & Crawford ever suggest that the kinds of professional services risks alleged in the Underlying Lawsuit would not be covered under the Policy.

66.     Twin City asserts, and Somera disputes, that the Policy does not provide coverage for Somera for the Underlying Lawsuit.

67.     If Twin City prevails on its no coverage assertions, then Defendant Swett & Crawford will not have satisfied its duties to Somera.

68.     An actual and justiciable controversy exists between Somera, on the one hand, and Defendants Swett & Crawford and Does 6-10, on the other hand, as to Defendants' obligations in the alternative event that the Court finds no coverage under the Policy.  Somera seeks a judicial declaration as to its rights and obligations against Defendant Swett & Crawford in connection with insurance coverage for the Underlying Lawsuit.

## **PRAYER FOR RELIEF**

### **ON THE FIRST CAUSE OF ACTION**

1.     For damages, plus pre- and post-judgment interest, according to proof at the time of trial;

### **ON THE SECOND CAUSE OF ACTION**

2.     For damages, plus pre- and post-judgment interest, according to proof at the time of trial;

3.     For reasonable attorneys' fees incurred in obtaining the benefits due under the Policy, plus interest;

4.     For punitive damages.

### **ON THE THIRD CAUSE OF ACTION**

5.     For damages, plus pre- and post-judgment interest, according to proof at the time of trail;

### **ON THE FOURTH CAUSE OF ACTION**

6.     For damages, plus pre- and post-judgment interest, according to proof at the time of trail;

### **ON THE FIFTH CAUSE OF ACTION**

7.     For a declaration in accordance with Somera's contentions stated above; and

### **ON ALL CAUSES OF ACTION**

8.      For such other, further, and/or different relief as may be just and proper.


DATED:     December 14, 2018               KASOWITZ BENSON TORRES LLP


                                           By:____/s/ Kirsten C. Jackson_____

                                                Kirsten C. Jackson
                                                Attorneys for Plaintiff

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury in this action.

DATED:    December 14, 2018         KASOWITZ BENSON TORRES LLP


By:    /s/ Kirsten C. Jackson

Kirsten C. Jackson
Attorneys for Plaintiff

14
**COMPLAINT**

| | |
|---|---|
| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):*<br>Jerold Oshinsky (Cal. Bar No. 250771); Kirsten C. Jackson (Cal. Bar No. 265952)<br>KASOWITZ BENSON TORRES LLP<br>2029 Century Park East, Suite 2000<br>Los Angeles, CA 90067 | FOR COURT USE ONLY |
| TELEPHONE NO.: (424) 288-7900    FAX NO.: (424) 288-7901<br>ATTORNEY FOR *(Name):* SOMERA CAPITAL MANAGEMENT, LLC | ELECTRONICALLY FILED<br>Superior Court of California<br>County of Santa Barbara |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF Santa Barabara
STREET ADDRESS: 1100 Anacapa Street
MAILING ADDRESS: P.O. Box 21107
CITY AND ZIP CODE: Santa Barbara, CA 93101
BRANCH NAME: Anacapa Division

Darrel E. Parker, Executive Officer
12/20/2018 1:33 PM
By: Narzralli Baksh, Deputy

CASE NAME:
Somera Capital Management, LLC v. Twin City Fire Ins. Co. et. al

| CIVIL CASE COVER SHEET | Complex Case Designation | CASE NUMBER:<br>18CV06147 |
|---|---|---|
| ✔ Unlimited (Amount demanded exceeds $25,000)   ☐ Limited (Amount demanded is $25,000 or less) | ☐ Counter   ☐ Joinder<br>Filed with first appearance by defendant<br>(Cal. Rules of Court, rule 3.402) | JUDGE:<br>DEPT: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check one box below for the case type that best describes this case:

| Auto Tort | Contract | Provisionally Complex Civil Litigation<br>(Cal. Rules of Court, rules 3.400–3.403) |
|---|---|---|
| ☐ Auto (22)<br>☐ Uninsured motorist (46) | ☐ Breach of contract/warranty (06)<br>☐ Rule 3.740 collections (09)<br>☐ Other collections (09)<br>✔ Insurance coverage (18)<br>☐ Other contract (37) | ☐ Antitrust/Trade regulation (03)<br>☐ Construction defect (10)<br>☐ Mass tort (40)<br>☐ Securities litigation (28)<br>☐ Environmental/Toxic tort (30) |
| **Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**<br>☐ Asbestos (04)<br>☐ Product liability (24)<br>☐ Medical malpractice (45)<br>☐ Other PI/PD/WD (23) | **Real Property**<br>☐ Eminent domain/Inverse condemnation (14)<br>☐ Wrongful eviction (33)<br>☐ Other real property (26) | ☐ Insurance coverage claims arising from the above listed provisionally complex case types (41) |
| **Non-PI/PD/WD (Other) Tort**<br>☐ Business tort/unfair business practice (07)<br>☐ Civil rights (08)<br>☐ Defamation (13)<br>☐ Fraud (16)<br>☐ Intellectual property (19)<br>☐ Professional negligence (25)<br>☐ Other non-PI/PD/WD tort (35) | **Unlawful Detainer**<br>☐ Commercial (31)<br>☐ Residential (32)<br>☐ Drugs (38)<br>**Judicial Review**<br>☐ Asset forfeiture (05)<br>☐ Petition re: arbitration award (11)<br>☐ Writ of mandate (02) | **Enforcement of Judgment**<br>☐ Enforcement of judgment (20)<br>**Miscellaneous Civil Complaint**<br>☐ RICO (27)<br>☐ Other complaint *(not specified above)* (42)<br>**Miscellaneous Civil Petition**<br>☐ Partnership and corporate governance (21) |
| **Employment**<br>☐ Wrongful termination (36)<br>☐ Other employment (15) | ☐ Other judicial review (39) | ☐ Other petition *(not specified above)* (43) |

2. This case ☐ is ✔ is not complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. ☐ Large number of separately represented parties
   b. ☐ Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
   c. ☐ Substantial amount of documentary evidence
   d. ☐ Large number of witnesses
   e. ☐ Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   f. ☐ Substantial postjudgment judicial supervision

3. Remedies sought *(check all that apply):* a. ✔ monetary   b. ✔ nonmonetary; declaratory or injunctive relief   c. ☐ punitive

4. Number of causes of action *(specify):* 1. Breach of Contract; 2. Tortious Breach of Implied Covenant of Good Faith & Fair Dealing; 3. Declaratory Relief

5. This case ☐ is ✔ is not a class action suit.

6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*

Date: December 14, 2018

Kirsten C. Jackson
(TYPE OR PRINT NAME)                                           ▶ _____
                                                              (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

| | | |
|---|---|---|
| Form Adopted for Mandatory Use<br>Judicial Council of California<br>CM-010 [Rev. July 1, 2007] | **CIVIL CASE COVER SHEET** | Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;<br>Cal. Standards of Judicial Administration, std. 3.10<br>*www.courtinfo.ca.gov* |

CM-010

## INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you must complete and file, along with your first paper, the *Civil Case Cover Sheet* contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check one box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the primary cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases, parties must also use the *Civil Case Cover Sheet* to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

### CASE TYPES AND EXAMPLES

**Auto Tort**
- Auto (22)–Personal Injury/Property Damage/Wrongful Death
- Uninsured Motorist (46) (*if the case involves an uninsured motorist claim subject to arbitration, check this item instead of Auto*)

**Other PI/PD/WD (Personal Injury/ Property Damage/Wrongful Death) Tort**
- Asbestos (04)
  - Asbestos Property Damage
  - Asbestos Personal Injury/ Wrongful Death
- Product Liability (*not asbestos or toxic/environmental*) (24)
- Medical Malpractice (45)
  - Medical Malpractice– Physicians & Surgeons
  - Other Professional Health Care Malpractice
- Other PI/PD/WD (23)
  - Premises Liability (e.g., slip and fall)
  - Intentional Bodily Injury/PD/WD (e.g., assault, vandalism)
  - Intentional Infliction of Emotional Distress
  - Negligent Infliction of Emotional Distress
  - Other PI/PD/WD

**Non-PI/PD/WD (Other) Tort**
- Business Tort/Unfair Business Practice (07)
- Civil Rights (e.g., discrimination, false arrest) (*not civil harassment*) (08)
- Defamation (e.g., slander, libel) (13)
- Fraud (16)
- Intellectual Property (19)
- Professional Negligence (25)
  - Legal Malpractice
  - Other Professional Malpractice (*not medical or legal*)
- Other Non-PI/PD/WD Tort (35)

**Employment**
- Wrongful Termination (36)
- Other Employment (15)

**Contract**
- Breach of Contract/Warranty (06)
  - Breach of Rental/Lease Contract (*not unlawful detainer or wrongful eviction*)
  - Contract/Warranty Breach–Seller Plaintiff (*not fraud or negligence*)
  - Negligent Breach of Contract/ Warranty
  - Other Breach of Contract/Warranty
- Collections (e.g., money owed, open book accounts) (09)
  - Collection Case–Seller Plaintiff
  - Other Promissory Note/Collections Case
- Insurance Coverage (*not provisionally complex*) (18)
  - Auto Subrogation
  - Other Coverage
- Other Contract (37)
  - Contractual Fraud
  - Other Contract Dispute

**Real Property**
- Eminent Domain/Inverse Condemnation (14)
- Wrongful Eviction (33)
- Other Real Property (e.g., quiet title) (26)
  - Writ of Possession of Real Property
  - Mortgage Foreclosure
  - Quiet Title
  - Other Real Property (*not eminent domain, landlord/tenant, or foreclosure*)

**Unlawful Detainer**
- Commercial (31)
- Residential (32)
- Drugs (38) (*if the case involves illegal drugs, check this item; otherwise, report as Commercial or Residential*)

**Judicial Review**
- Asset Forfeiture (05)
- Petition Re: Arbitration Award (11)
- Writ of Mandate (02)
  - Writ–Administrative Mandamus
  - Writ–Mandamus on Limited Court Case Matter
  - Writ–Other Limited Court Case Review
- Other Judicial Review (39)
  - Review of Health Officer Order
  - Notice of Appeal–Labor Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal. Rules of Court Rules 3.400–3.403)**
- Antitrust/Trade Regulation (03)
- Construction Defect (10)
- Claims Involving Mass Tort (40)
- Securities Litigation (28)
- Environmental/Toxic Tort (30)
- Insurance Coverage Claims (*arising from provisionally complex case type listed above*) (41)

**Enforcement of Judgment**
- Enforcement of Judgment (20)
  - Abstract of Judgment (Out of County)
  - Confession of Judgment (*non-domestic relations*)
  - Sister State Judgment
  - Administrative Agency Award (*not unpaid taxes*)
  - Petition/Certification of Entry of Judgment on Unpaid Taxes
  - Other Enforcement of Judgment Case

**Miscellaneous Civil Complaint**
- RICO (27)
- Other Complaint (*not specified above*) (42)
  - Declaratory Relief Only
  - Injunctive Relief Only (*non-harassment*)
  - Mechanics Lien
  - Other Commercial Complaint Case (*non-tort/non-complex*)
  - Other Civil Complaint (*non-tort/non-complex*)

**Miscellaneous Civil Petition**
- Partnership and Corporate Governance (21)
- Other Petition (*not specified above*) (43)
  - Civil Harassment
  - Workplace Violence
  - Elder/Dependent Adult Abuse
  - Election Contest
  - Petition for Name Change
  - Petition for Relief From Late Claim
  - Other Civil Petition

**CIVIL CASE COVER SHEET**

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(NAME AND ADDRESS)*:<br>Jerold Oshinsky (SBN 230771); Kirsten C. Jackson (SBN 265952)<br>KASOWITZ BENSON TORRES LLP<br>2029 Century Park East, Suite 2000. Los Angeles, CA 90067 | TELEPHONE NO.:<br>424-288-7900 | FOR COURT USE ONLY |
|---|---|---|
| ATTORNEY FOR *(NAME)*: Somera Capital Management, LLC | | ELECTRONICALLY FILED<br>Superior Court of California<br>County of Santa Barbara |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF SANTA BARBARA

STREET ADDRESS: 1100 Anacapa Street
MAILING ADDRESS: P.O. Box 21107
CITY AND ZIP CODE: Santa Barbara, CA 93121-1107
BRANCH NAME: Anacapa

Darrel E. Parker, Executive Officer
12/20/2018 12:44 PM
By: Terri Chavez, Deputy

PLAINTIFF: Somera Capital Management, LLC

DEFENDANT: Twin City Fire Ins. Co., The Swett & Crawford Group, Inc., et. al

| DECLARATION OF PREJUDICE CCP 170.6<br>(PEREMPTORY CHALLENGE) | CASE NUMBER:<br>18CV06147 |
|---|---|

---

_____Kirsten C. Jackson_____ declares
(NAME OF DECLARANT)

that he/ she is [ attorney for Somera Capital Management, LLC ] a party to the within action hereinafter
(INSERT "ATTORNEY FOR" OR LEAVE BLANK)

called "case" therein as follows:

__Somera Capital Management, LLC v. Twin City Fire Ins. Co., The Swett & Crawford Group, Inc. & Does 1-10__
(NAME OR NAMES OF PARTIES)

that ___the Honorable Colleen K. Sterne___, the Judge, Court Commissioner or Referee to
(NAME OF JUDGE/COMMISSIONER/REFEREE BEING DISQUALIFIED)

whom the case has been assigned is prejudiced against the _____Plaintiff_____ or the interest
(PLAINTIFF OR DEFENDANT)

of the _____Plaintiff_____ so that Declarant cannot or believes that he/she cannot have a fair
(PLAINTIFF OR DEFENDANT)

and impartial trial or hearing before such Judge, Court Commissioner or Referee.

I DECLARE UNDER PENALTY OF PERJURY THAT THE FOREGOING IS TRUE AND CORRECT.

Dated: _____December 20, 2018_____      _____
(SIGNATURE OF DECLARANT)

SC-1002 [Rev. July 1 ,1999]

**DECLARATION OF PREJUDICE CCP 170.6**
**(PEREMPTORY CHALLENGE)**

CCP 170.6

| SUPERIOR COURT OF CALIFORNIA, COUNTY OF SANTA BARBARA | FOR COURT USE ONLY |
|---|---|
| STREET ADDRESS:  1100 Anacapa Street<br>CITY AND ZIP CODE:  Santa Barbara CA  93101<br>BRANCH NAME:  Anacapa | **FILED**<br>SUPERIOR COURT of CALIFORNIA<br>COUNTY of SANTA BARBARA<br>**12/17/2018**<br>Darrel E. Parker, Executive Officer<br>BY  Baksh, Narzralli<br>Deputy Clerk |
| CAPTION:<br><br>**Somera Capital Management, LLC vs   Twin City Fire Insurance Company et al** | |
| **ORDER AND NOTICE OF CASE ASSIGNMENT;**<br>**NOTICE OF CASE MANAGEMENT CONFERENCE** | CASE NUMBER:<br>**18CV06147** |

The above case is hereby assigned to Judge **Colleen K Sterne** for ALL purposes, including trial.  All future matters, including ex-parte matters, are to be scheduled with the assigned judge.  Counsel shall include the name of the assigned judge in the caption of every document filed with the court.  The above-entitled case is hereby ordered set for:

**Case Management Conference on 04/15/2019 at 8:30 AM in SB Dept 5 at the court address above.**

PLAINTIFF SHALL GIVE NOTICE of this assignment to ALL parties brought into the case, including but not limited to defendants, cross-defendants and intervenors.  A Proof of Service of this ORDER & NOTICE OF CASE ASSIGNMENT is to be filed with the Court within five (5) working days after service.  Failure to give notice and file proof thereof or failure to appear may result in the imposition of sanctions.  Pursuant to California Rule of Court 3.725, no later than fifteen (15) calendar days before the date set for the Case Management Conference, each party must file a Case Management Statement (Judicial Council form CM110).  In lieu of each party filing a separate Case Management Statement, any two or more parties may file a joint statement.

At the Court's discretion counsel, parties and insurance representatives (if any) with full settlement authority may be required to attend a CADRe Information Meeting within ten (10) days of the Conference date.

Dated:   12/17/2018

_____
Judge of the Superior Court
Michael Carrozzo

---

### CLERK'S CERTIFICATE OF MAILING

I certify that I am not a party to this action and that a true copy of the foregoing was mailed first class, postage prepaid, in a sealed envelope addressed as shown, and that the mailing of the foregoing and execution of this certificate occurred at (*place*): Santa Barbara, California on: 12/17/18.

Kristen C Jackson
Kasowitz Benson Torres LLP
2029 Century Park E Ste 2000
Los Angeles CA  90067-3006

| Darrel E. Parker, Executive Officer | By | Narzralli Baksh | Deputy Clerk |
|---|---|---|---|

| SC-2028 (Rev. 7/1/02) | ORDER & NOTICE OF CASE ASSIGNMENT<br>NOTICE OF CASE MANAGEMENT CONFERENCE | Local Rule 1309<br>CRC 3.222 |
|---|---|---|

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(NAME AND ADDRESS):* ___ TELEPHONE NO.: | FOR COURT USE ONLY |
|---|---|
| Jerold Oshinsky (SBN 250771); Kirsten C. Jackson (SBN 265952) | |

Jerold Oshinsky (SBN 250771); Kirsten C. Jackson (SBN 265952)
KASOWITZ BENSON TORRES LLP
2029 Century Park East, Suite 2000
Los Angeles, CA 90067      (424) 288-7900
ATTORNEY FOR *(NAME):* SOMERA CAPITAL MANAGEMENT, LLC,

**FOR COURT USE ONLY**

ELECTRONICALLY FILED
Superior Court of California
County of Santa Barbara
Darrel E. Parker, Executive Officer
12/20/2018 1:33 PM
By: Narzralli Baksh, Deputy

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF SANTA BARBARA**

☒ Santa Barbara–Anacapa    ☐ Santa Maria-Cook    ☐ Lompoc Division
    1100 Anacapa Street     312-C East Cook Street    115 Civic Center Plaza
    Santa Barbara, CA 93101     Santa Maria, CA 93454    Lompoc, CA 93436

PLAINTIFF:   Somera Capital Management, LLC

DEFENDANT: Twin City Fire Ins. Co.; The Swett & Crawford Group, Inc.

| **CIVIL CASE COVER SHEET ADDENDUM** | CASE NUMBER: 18CV06147 |
|---|---|

Santa Barbara County Superior Court Local Rule, rule 201 divides Santa Barbara County geographically into two separate regions referred to as "South County" and "North County," the boundaries of which are more particularly defined in rule 201. "South County" includes the cities of Carpinteria, Santa Barbara, and Goleta; "North County" includes the cities of Santa Maria, Lompoc, Buellton and Solvang. A map depicting this geographical division is contained in Appendix 1 to the local rules.

Local Rule 203 provides: "When, under California law, 'North County' would be a 'proper county' for venue purposes, all filings for such matters shall be in the appropriate division of the Clerk's office in North County. All other filings shall be made in the Clerk's office in the appropriate division of the Court in South County. The title of the Court required to be placed on the first page of documents pursuant to CRC 2.111 includes the name of the appropriate Court division."

A plaintiff filing a new complaint or petition is required by Local Rule 1310 to complete and file this Civil Case Cover Sheet Addendum to state the basis for filing in North County or South County.

The undersigned represents to the Court:

This action is filed in  ☐ North County  ☒ South County   because venue is proper in this region for the following reason(s):

☐ A defendant resides or has its principal place of business in this region at: _____

☒ The personal injury, damage to property, or breach of contract that is claimed in the complaint occurred in this region at: or near 115 W. Canon Perdido St, Santa Barbara, California 93101 _____

☐ There is a related case filed with the court in this region (e.g., the related personal injury action to a petition to transfer structured settlement payments) [identify case, including case number]: _____

☐ Venue is otherwise proper in this region because [explain]: _____

Dated:   December 14, 2018         _____
                                 *Signature of Plaintiff or Plaintiff's Counsel*

# EXHIBIT 2



1  STEPHEN M. HAYES (SBN 83583)
   RYAN Z. KELLER (SBN 249193)
2  TYLER R. AUSTIN (SBN 293977)
3  HAYES SCOTT BONINO & ELLINGSON
   GUSLANI SIMONSON & CLAUSE, LLP
4  999 Skyway Road, Suite 310
   San Carlos, California 94070
5  Telephone: (650) 637-9100
   Facsimile: (650) 637-8071
6
7  Attorneys for Defendant
   Twin City Fire Insurance Company
8
9         SUPERIOR COURT OF THE STATE OF CALIFORNIA
10           IN AND FOR THE COUNTY OF SANTA BARBARA
11                    ANACAPA DIVISION
12 SOMERA CAPITAL MANAGEMENT, LLC,        CASE NO.: 18CV06147
   a California Limited Liability Company,
13                                        DEFENDANT TWIN CITY FIRE
                Plaintiffs,               INSURANCE COMPANY'S ANSWER TO
14                                        PLAINTIFF'S COMPLAINT
        v.
15
16 TWIN CITY FIRE INSURANCE COMPANY,
   an Indiana Corporation; THE SWEET &
17 CRAWFORD GROUP, INC., a California
   Corporation; and DOES 1 through 10,   Date Action Filed:   December 14, 2018
18                                        Trial Date:          Not yet set
                Defendants.
19
20
21
22
23
24
25
26
27
28
   919917

ELECTRONICALLY FILED
Superior Court of California
County of Santa Barbara
Darrel E. Parker, Executive Officer
1/22/2019 3:12 PM
By: Elizabeth Spann, Deputy

1  STEPHEN M. HAYES (SBN 83583)
   RYAN Z. KELLER (SBN 249193)
2  TYLER R. AUSTIN (SBN 293977)
3  HAYES SCOTT BONINO & ELLINGSON
   GUSLANI SIMONSON & CLAUSE, LLP
4  999 Skyway Road, Suite 310
   San Carlos, California 94070
5  Telephone:  (650) 637-9100
   Facsimile:  (650) 637-8071
6
7  Attorneys for Defendant
   Twin City Fire Insurance Company
8
                    SUPERIOR COURT OF THE STATE OF CALIFORNIA
9
                    IN AND FOR THE COUNTY OF SANTA BARBARA
10
                              ANACAPA DIVISION
11

| | |
|---|---|
| 12  SOMERA CAPITAL MANAGEMENT, LLC, a California Limited Liability Company, | **CASE NO.: 18CV06147** |
| 13                              Plaintiffs, | **DEFENDANT TWIN CITY FIRE INSURANCE COMPANY'S ANSWER TO PLAINTIFF'S COMPLAINT** |
| 14                         v. | |
| 15  TWIN CITY FIRE INSURANCE COMPANY, an Indiana Corporation; THE SWEET & CRAWFORD GROUP, INC., a California Corporation; and DOES 1 through 10, | |
| 16 | |
| 17 | **Date Action Filed:**   December 14, 2018 |
| 18                              Defendants. | **Trial Date:**              Not yet set |

1    Defendant, Twin City Fire Insurance Company ("Twin City" or "Defendant") in answering

2    the Complaint filed by Plaintiff, Somera Capital Management, LLC ("Somera" or "Plaintiff,") sets

3    forth the following:

## GENERAL DENIAL

5    Defendant, in answer to the unverified Complaint of Plaintiff herein, herewith denies each

6    and every, all and singular, generally and specifically the allegations of the unverified Complaint,

7    and in this connection Defendant denies that Plaintiff has been injured or damaged in any of the

8    sums mentioned in the Complaint, or in any sum, or at all as the result of any act or omission of this

9    answering Defendant.

## AFFIRMATIVE DEFENSES

11    Without waiving any of the foregoing answers or defenses, as and for its affirmative

12    defenses to the Complaint, Defendant alleges as follows:

13    AS A FIRST SEPARATE DEFENSE TO THE COMPLAINT ON FILE HEREIN, AND TO

14    EACH ALLEGED CAUSE OF ACTION CONTAINED THEREIN, this answering Defendant

15    alleges that the Complaint fails to state facts sufficient to constitute a cause of action against this

16    answering Defendant.

17    AS A SECOND SEPARATE DEFENSE TO THE COMPLAINT ON FILE HEREIN, AND

18    TO EACH ALLEGED CAUSE OF ACTION CONTAINED THEREIN, this answering Defendant

19    alleges that Plaintiff has waived and is estopped and barred from alleging the matters set forth in the

20    Complaint.

21    AS A THIRD SEPARATE DEFENSE TO THE COMPLAINT ON FILE HEREIN, AND

22    TO EACH ALLEGED CAUSE OF ACTION CONTAINED THEREIN, this answering Defendant

23    alleges that Plaintiff's claims are barred by the doctrine of judicial estoppel.

24    AS A FOURTH SEPARATE DEFENSE TO THE COMPLAINT ON FILE HEREIN, AND

25    TO EACH ALLEGED CAUSE OF ACTION CONTAINED THEREIN, this answering Defendant

26    alleges that at all times and places mentioned in the Complaint herein, Plaintiff failed to perform

27    certain conditions precedent that were imposed upon the Plaintiff by contract.  The conditions

28    precedent not satisfied by Plaintiff include, but are not limited to, the failure to cooperate and

1   provide information under Common Terms and Conditions of the Policy, Section IX, CONSENT

2   AND SETTLEMENT, as amended by Endorsement No. 9.  The non-performance of said conditions

3   excused Defendant's obligations under the contract.

4       AS A FIFTH SEPARATE DEFENSE TO THE COMPLAINT ON FILE HEREIN, AND

5   TO EACH ALLEGED CAUSE OF ACTION CONTAINED THEREIN, this answering Defendant

6   alleges that at all times and places mentioned in the Complaint herein, Plaintiff failed to mitigate

7   the amount of its damages.  The damages claimed by Plaintiff could have been mitigated by due

8   diligence on its part or by one acting under similar circumstances.  The Plaintiff's failure to mitigate

9   is a bar to its recovery under the Complaint.

10       AS A SIXTH SEPARATE DEFENSE TO THE COMPLAINT ON FILE HEREIN, AND

11   TO EACH ALLEGED CAUSE OF ACTION CONTAINED THEREIN, this answering Defendant

12   alleges that the injuries allegedly sustained by Plaintiff were either wholly or in part caused by

13   Plaintiff or persons, firms, corporations or entities other than this answering Defendant, and whose

14   acts or omissions are imputed to Plaintiff as a matter of law.

15       AS A SEVENTH SEPARATE DEFENSE TO THE COMPLAINT ON FILE HEREIN,

16   AND TO EACH ALLEGED CAUSE OF ACTION CONTAINED THEREIN, this answering

17   Defendant alleges on information and belief that Plaintiff cannot assert any contractual claims set

18   forth in its Complaint because Plaintiff prevented performance of said contract.

19       AS AN EIGHTH SEPARATE DEFENSE TO THE COMPLAINT ON FILE HEREIN,

20   AND TO EACH ALLEGED CAUSE OF ACTION CONTAINED THEREIN, this answering

21   Defendant alleges on information and belief that Plaintiff cannot assert any of the contractual claims

22   contained in its Complaint because Plaintiff materially breached said contract.

23       AS A NINTH SEPARATE DEFENSE TO THE COMPLAINT ON FILE HEREIN, AND

24   TO EACH ALLEGED CAUSE OF ACTION CONTAINED THEREIN, this answering Defendant

25   alleges that Plaintiff's Complaint, to the extent that it seeks exemplary or punitive damages

26   pursuant to §3294 of the Civil Code, violates Defendant's right to procedural due process under the

27   Fourteenth Amendment of the United States Constitution, and the Constitution of the State of

28

1  California, and therefore fails to state a cause of action upon which either punitive or exemplary

2  damages can be awarded.

3        AS A TENTH SEPARATE DEFENSE TO THE COMPLAINT ON FILE HEREIN, AND

4  TO EACH ALLEGED CAUSE OF ACTION CONTAINED THEREIN, this answering Defendant

5  alleges that Plaintiff's Complaint, to the extent that it seeks punitive or exemplary damages

6  pursuant to §3294 of the Civil Code, violates Defendant's rights to protection from "excessive

7  fines" as provided in the Eighth Amendment of the United States Constitution and Article I, Section

8  17, of the Constitution of the State of California, and violates Defendant's rights to substantive due

9  process as provided in the Fifth and Fourteenth Amendments of the United States Constitution and

10  the Constitution of the State of California, and therefore fails to state a cause of action supporting

11  the punitive or exemplary damages claimed.

12        AS AN ELEVENTH SEPARATE DEFENSE TO THE COMPLAINT ON FILE HEREIN,

13  AND TO EACH ALLEGED CAUSE OF ACTION CONTAINED THEREIN, this answering

14  Defendant alleges that Plaintiff has consented and acquiesced to the matters alleged in the

15  Complaint.

16        AS A TWELFTH SEPARATE DEFENSE TO THE COMPLAINT ON FILE HEREIN,

17  AND TO EACH ALLEGED CAUSE OF ACTION CONTAINED THEREIN, this answering

18  Defendant alleges that any and all damages sustained by Plaintiff, if at all, were proximately caused

19  by the acts or omissions of parties other than Defendant, including third parties, and, therefore, any

20  award against Defendant should be reduced by the comparative or contributory fault of those other

21  parties.

22        AS A THIRTEENTH SEPARATE DEFENSE TO THE COMPLAINT ON FILE HEREIN,

23  AND TO EACH ALLEGED CAUSE OF ACTION CONTAINED THEREIN, this answering

24  Defendant alleges that any acts or omissions by Twin City were not a substantial factor in bringing

25  about Plaintiff's alleged damages and, therefore, were not a contributing cause thereof, but were

26  superseded by the acts or omissions of Plaintiff and/or its officers, directors, agents, servants,

27  employees or representatives or by the acts or omissions of third parties which were independent,

28  intervening, and proximate causes of any injury or damages suffered by Plaintiff.

1    AS A FOURTEENTH SEPARATE DEFENSE TO THE COMPLAINT ON FILE HEREIN,

2    AND TO EACH ALLEGED CAUSE OF ACTION CONTAINED THEREIN, this answering

3    Defendant alleges that the policy at issue in the Complaint (Private Equity Choice Policy No. 72 DB

4    0240050-17 issued to Somera Capital Management, LLC with effective dates from February 21,

5    2017 to February 21, 2018) (the "Policy") is subject to insuring agreements and various terms,

6    definitions, exclusions, conditions, limitations, provisions and endorsements.  This answering

7    Defendant alleges that its liability to Plaintiff, if any, is subject to these as interpreted by California

8    law and they preclude coverage for the claims asserted and the damages alleged in the Complaint.

9    AS A FIFTEENTH SEPARATE DEFENSE TO THE COMPLAINT ON FILE HEREIN,

10   AND TO EACH ALLEGED CAUSE OF ACTION CONTAINED THEREIN, this answering

11   Defendant alleges that there is no duty to advance and no duty to indemnify under the Policy

12   because Plaintiff cannot satisfy their burden of proof to show a Wrongful Act under the Private

13   Equity Fund Management and Professional Liability Coverage Part (the "PEFM&P Coverage Part")

14   Insuring Agreements.

15   AS A SIXTEENTH SEPARATE DEFENSE TO THE COMPLAINT ON FILE HEREIN,

16   AND TO EACH ALLEGED CAUSE OF ACTION CONTAINED THEREIN, this answering

17   Defendant alleges that there is no duty to advance and no duty to indemnify under the Policy due to

18   California's public policy of ensuring that the insured does not breach its contracts with impunity

19   with the expectation of passing off the cost of not paying its contract bills off to the insurer and/or it

20   would create a moral hazard to insure this Claim.

21   AS A SEVENTEENTH SEPARATE DEFENSE TO THE COMPLAINT ON FILE

22   HEREIN, AND TO EACH ALLEGED CAUSE OF ACTION CONTAINED THEREIN, this

23   answering Defendant alleges that there is no duty to advance and no duty to indemnify under the

24   Policy because the insureds' refusal to make payment on a contract is not what is within the

25   reasonable expectations of what would be covered.

26   AS A EIGHTEENTH SEPARATE DEFENSE TO THE COMPLAINT ON FILE HEREIN,

27   AND TO EACH ALLEGED CAUSE OF ACTION CONTAINED THEREIN, this answering

28

1   Defendant alleges that there is no duty to advance and no duty to indemnify Plaintiff under the

2   Policy because there is no fortuity.

3        AS A NINETEENTH SEPARATE DEFENSE TO THE COMPLAINT ON FILE HEREIN,

4   AND TO EACH ALLEGED CAUSE OF ACTION CONTAINED THEREIN, this answering

5   Defendant alleges that coverage is excluded under the Policy by Section IV.D.2. of the PEFM&P

6   Coverage Part, Exclusions Applicable to Damages but not Defense Costs, as amended by

7   Endorsement No. 8, because this Claim seeks Damages that are based upon or arising from, or in

8   any way related to the gaining of any personal profit, remuneration or financial advantage to which

9   the Insureds are not legally entitled and David Brown's (defendant in the underlying action,

10   *Postcard Properties, LLC v. Somera Capital Management, LLC*, et al., Santa Barbara Superior

11   Court Case No. 17CV04361) ("Brown") Wrongful Acts are imputed to Plaintiff.

12        AS A TWENTIETH SEPARATE DEFENSE TO THE COMPLAINT ON FILE HEREIN,

13   AND TO EACH ALLEGED CAUSE OF ACTION CONTAINED THEREIN, this answering

14   Defendant alleges that coverage is excluded under the Policy by Section IV.D.3. of the PEFM&P

15   Coverage Part, Exclusions Applicable to Damages but not Defense Costs, as amended by

16   Endorsement No. 8, because this Claim seeks Damages that are based upon or arising from, or in

17   any way related to a willful violation of a statute or regulation or a deliberately fraudulent act or

18   omission by an Insured and Brown's Wrongful Acts are imputed to Plaintiff.

19        AS A TWENTY FIRST SEPARATE DEFENSE TO THE COMPLAINT ON FILE

20   HEREIN, AND TO EACH ALLEGED CAUSE OF ACTION CONTAINED THEREIN, this

21   answering Defendant alleges that there is no duty to defend under the Policy under Section V.A of

22   the PEFM&P Coverage Part, Advancement and Allocation of Defense Costs.

23        AS A TWENTY SECOND SEPARATE DEFENSE TO THE COMPLAINT ON FILE

24   HEREIN, AND TO EACH ALLEGED CAUSE OF ACTION CONTAINED THEREIN, this

25   answering Defendant alleges that under Section V.B of the PEFM&P Coverage Part, Advancement

26   and Allocation of Defense Costs, there is no duty to advance Defense Costs for any Claim that is

27   not "covered" by this Policy.

28

919917                                   -5-
**DEFENDANT TWIN CITY FIRE INSURANCE COMPANY'S ANSWER TO PLAINTIFF'S COMPLAINT**
**– CASE NO.: 18CV06147**

1    AS A TWENTY THIRD SEPARATE DEFENSE TO THE COMPLAINT ON FILE

2  HEREIN, AND TO EACH ALLEGED CAUSE OF ACTION CONTAINED THEREIN, this

3  answering Defendant alleges that there is no duty to advance and no duty to indemnify Plaintiff

4  under the Policy under Insurance Code section 533.

5    AS A TWENTY FOURTH SEPARATE DEFENSE TO THE COMPLAINT ON FILE

6  HEREIN, AND TO EACH ALLEGED CAUSE OF ACTION CONTAINED THEREIN, this

7  answering Defendant alleges that there is no duty to advance and no duty to indemnify under the

8  Policy under Section V, of the PEFM&P Coverage Part, Exclusions Applicable to Insuring

9  Agreement (C), as amended by Endorsement No. 8, because this Claim is for Loss is based upon,

10  arising from, or in any way related to any actual or alleged breach of contract or agreement and the

11  exceptions do not apply.

12    AS A TWENTY FIFTH SEPARATE DEFENSE TO THE COMPLAINT ON FILE

13  HEREIN, AND TO EACH ALLEGED CAUSE OF ACTION CONTAINED THEREIN, this

14  answering Defendant alleges that the Larger Settlement Rule does not apply to Defense Costs to the

15  extent an allocation is applicable because the Policy provides under Section V. of the PEFM&P

16  Coverage Part, Advancement and Allocation of Defense Costs, as amended by Endorsement No. 9,

17  that any allocation of Defense Costs is based on "relative legal exposure."

18    AS A TWENTY SIXTH SEPARATE DEFENSE TO THE COMPLAINT ON FILE

19  HEREIN, AND TO EACH ALLEGED CAUSE OF ACTION CONTAINED THEREIN, this

20  answering Defendant alleges that the Larger Settlement Rule does not apply to Damages to the

21  extent an allocation is applicable because the Policy provides under Section VI. of the PEFM&P

22  Coverage Part, Allocation of Damages that any allocation of Damages, as amended by Endorsement

23  No. 9, is based on "relative legal exposure."

24    AS A TWENTY SEVENTH SEPARATE DEFENSE TO THE COMPLAINT ON FILE

25  HEREIN, AND TO EACH ALLEGED CAUSE OF ACTION CONTAINED THEREIN, this

26  answering Defendant alleges that the Complaint is barred by the doctrine of laches.

27    AS A TWENTY EIGHTH SEPARATE DEFENSE TO THE COMPLAINT ON FILE

28  HEREIN, AND TO EACH ALLEGED CAUSE OF ACTION CONTAINED THEREIN, this

**DEFENDANT TWIN CITY FIRE INSURANCE COMPANY'S ANSWER TO PLAINTIFF'S COMPLAINT
– CASE NO.: 18CV06147**

1   answering Defendant alleges that the alleged causes of action set forth in the Complaint are, and

2   each of them is, barred by the statute of limitations.

3        AS A TWENTY NINTH SEPARATE DEFENSE TO THE COMPLAINT ON FILE

4   HEREIN, AND TO EACH ALLEGED CAUSE OF ACTION CONTAINED THEREIN, this

5   answering Defendant alleges that a disagreement as to Plaintiff's claim created a "genuine dispute."

6        AS A THIRTIETH SEPARATE DEFENSE TO THE COMPLAINT ON FILE HEREIN,

7   AND TO EACH ALLEGED CAUSE OF ACTION CONTAINED THEREIN, this answering

8   Defendant alleges that there is no coverage because the relief sought does not satisfy the Policy's

9   definition of Loss and/or Damages.

10       AS A THIRTY FIRST SEPARATE DEFENSE TO THE COMPLAINT ON FILE HEREIN,

11   AND TO EACH ALLEGED CAUSE OF ACTION CONTAINED THEREIN, this answering

12   Defendant alleges that there is no duty to advance and no duty to indemnify under the Policy

13   because the Claim was first made before the Policy Period.

14       AS A THIRTY SECOND SEPARATE DEFENSE TO THE COMPLAINT ON FILE

15   HEREIN, AND TO EACH ALLEGED CAUSE OF ACTION CONTAINED THEREIN, this

16   answering Defendant alleges that there is no duty to advance and no duty to indemnify under the

17   Policy under Section IV. of the PEFM&P Coverage Part, Exclusions Applicable to All Insuring

18   Agreements, B, Exclusions without Exceptions, as amended by Endorsement No.3, because this

19   Claim seeks Loss based upon, arising from, or in any way related to an Insured engaging in business

20   relating to real property management.

21       AS A THIRTY THIRD SEPARATE DEFENSE TO THE COMPLAINT ON FILE

22   HEREIN, AND TO EACH ALLEGED CAUSE OF ACTION CONTAINED THEREIN, this

23   answering Defendant alleges that there is no duty to advance and no duty to indemnify under the

24   Policy under Section XII.C. of the Policy, Common Terms and Conditions, as amended by

25   Endorsement No. 9, because this Policy is excess to other insurance.

26       AS A THIRTY FOURTH SEPARATE DEFENSE TO THE COMPLAINT ON FILE

27   HEREIN, AND TO EACH ALLEGED CAUSE OF ACTION CONTAINED THEREIN, this

28

**DEFENDANT TWIN CITY FIRE INSURANCE COMPANY'S ANSWER TO PLAINTIFF'S COMPLAINT**
**– CASE NO.: 18CV06147**

answering Defendant alleges that there is no duty to advance and no duty to indemnify because the applicable Retention has not been satisfied.

## PRAYER FOR RELIEF

WHEREFORE, this answering Defendant prays for judgment against Plaintiff as follows:

1. That Plaintiff take nothing by its Complaint;

2. That Plaintiff's Complaint be dismissed with prejudice;

3. That judgment is entered in favor of Defendant on Plaintiff's Complaint;

4. For costs of suit incurred herein; and

5. For such other and further relief as the Court deems proper.

Dated:  January 22, 2019

HAYES SCOTT BONINO & ELLINGSON
GUSLANI SIMONSON & CLAUSE, LLP


By: _____
STEPHEN M. HAYES
RYAN Z. KELLER
TYLER R. AUSTIN
Attorneys for Defendant
Twin City Fire Insurance Company

919917

-8-

**DEFENDANT TWIN CITY FIRE INSURANCE COMPANY'S ANSWER TO PLAINTIFF'S COMPLAINT
– CASE NO.: 18CV06147**

1

## **DEMAND FOR JURY TRIAL**

2

Defendant Twin City Fire Insurance Company, hereby demands a jury trial on all issues.

3

4

Dated:  January 22, 2019

HAYES SCOTT BONINO & ELLINGSON
GUSLANI SIMONSON & CLAUSE, LLP

5

6

7

By: _____
STEPHEN M. HAYES
RYAN Z. KELLER
TYLER R. AUSTIN
Attorneys for Defendant
Twin City Fire Insurance Company

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**DEFENDANT TWIN CITY FIRE INSURANCE COMPANY'S ANSWER TO PLAINTIFF'S COMPLAINT**
**– CASE NO.: 18CV06147**

**CASE NAME:   Somera Capital Management, LLC v. Twin City Fire Insurance Company**
**CASE NO.:        Santa Barbara Action No.: 18CV06147**

<u>**PROOF OF SERVICE**</u>

I am a resident of the State of California.  My business address is 999 Skyway Road, Suite 310, San Carlos 94070.  I am employed in the County of San Mateo where this service occurs.  I am over the age of 18 years, and not a party to the within cause.  I am readily familiar with my employer's normal business practice for collection and processing of correspondence for mailing with the U.S. Postal Service, and that practice is that correspondence is deposited with the U.S. Postal Service the same day as the day of collection in the ordinary course of business.

On the date set forth below, following ordinary business practice, I served a true copy of the foregoing document(s) described as:

**DEFENDANT TWIN CITY FIRE INSURANCE COMPANY'S**
**ANSWER TO PLAINTIFF'S COMPLAINT**

X        (BY MAIL) I caused such envelope(s) with postage thereon fully prepaid to be placed in the United States mail at San Carlos, California.

X        (BY E-MAIL) by transmitting via electronic mail the document(s) listed above to the email address(es) set forth below, or as stated on the attached service list, on this date before 5:00 p.m.

| | |
|---|---|
| Jerold Oshinsky, Esq. | ***Attorneys for Plaintiff*** |
| joshinsky@kasowitz.com | ***Somera Capital Management,*** |
| Kirsten C. Jackson, Esq. | ***LLC, a California Limited*** |
| kjackson@kasowitz.com | ***Liability Company*** |
| KASOWITZ BENSON TORRES, LLP | |
| 2029 Century Park East, Suite 2000 | |
| Los Angeles, California 90067 | |
| Telephone: 424.288.7900 | |
| Facsimile: 424.288.7901 | |

X     *(State)* I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

Executed on January 22, 2019, at San Carlos, California.

*Dolores A. Mayorga*
_____
Dolores A Mayorga

900190                                                            -1-

# EXHIBIT 3

Jerold Oshinsky (Cal. Bar No. 250771)
joshinsky@kasowitz.com
Kirsten C. Jackson (Cal. Bar No. 265952)
kjackson@kasowitz.com
KASOWITZ BENSON TORRES LLP
2029 Century Park East, Suite 2000
Los Angeles, CA 90067
Telephone: (424) 288-7900
Facsimile: (424) 288-7901

Attorneys for Plaintiffs

ELECTRONICALLY FILED
Superior Court of California
County of Santa Barbara
Darrel E. Parker, Executive Officer
5/9/2019 3:13 PM
By: Elizabeth Spann, Deputy

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## FOR THE COUNTY OF SANTA BARBARA

## ANACAPA DIVISION

| | |
|---|---|
| SOMERA CAPITAL MANAGEMENT, LLC, a California Limited Liability Company,<br><br>Plaintiff,<br><br>vs.<br><br>TWIN CITY FIRE INSURANCE COMPANY, an Indiana Corporation; THE SWETT & CRAWFORD GROUP, INC., a California Corporation; and DOES 1 through 10,<br><br>Defendants. | **CASE NO.: 18CV06147**<br><br>**FIRST AMENDED COMPLAINT FOR**<br><br>**(1) BREACH OF CONTRACT;**<br><br>**(2) TORTIOUS BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING;**<br><br>**(3) DECLARATORY RELIEF.**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff complains of defendants and alleges as follows:

## NATURE OF THIS ACTION

1.      This is an action by Plaintiff Somera Capital Management, LLC ("Somera") against Defendant Twin City Fire Insurance Company ("Twin City") and Defendant The Swett & Crawford Group, Inc. ("Swett & Crawford"), in connection with insurance coverage for the lawsuit captioned *Postcard Properties, LLC v. Somera Capital Management, LLC and David A. Brown*, Case No. 17CV04361 (Santa Barbara Superior Court) (the "Underlying Lawsuit").

## THE PARTIES

2.      Somera is a boutique real estate investment firm and California Limited Liability Company whose office is located at 115 W. Canon Perdido St, Santa Barbara, California 93101.

3.     Twin City is an insurance company and Indiana Corporation that is registered to transact business with the California Secretary of State.  Twin City does substantial business in the State of California and the County of Santa Barbara.

4.     Swett & Crawford is an insurance broker and California Corporation whose offices are located at 515 South Figueroa Street, Los Angeles, CA 90071-3301.  Swett & Crawford does substantial business in the State of California and the County of Santa Barbara.

5.     Somera does not currently know the true names and capacities, whether individual, associate, partnership, corporate, or otherwise, of the defendants fictitiously designated as Does 1 through 10 and therefore sues those defendants by these fictitious names.  Somera will seek leave of Court to amend this Complaint when the true names and capacities of these fictitiously named defendants have been ascertained.

6.     Somera is informed and believes, and on that basis alleges, that Does 1 through 10, in some way currently unknown have underwritten, provided, procured, assisted in procuring or communicated regarding insurance coverage for Somera, or have participated in the decision by Twin City to deny coverage to Somera, or are otherwise responsible for the loss and damages alleged herein, and that Does 1 through 10 are authorized to, and are in fact, doing and transacting business in the State of California and the County of Santa Barbara.

## **JURISDICTION AND VENUE**

7.     Subject matter jurisdiction is proper in the Superior Court of the State of California for the County of Santa Barbara, which is a court of general jurisdiction.

8.     Personal jurisdiction over all Defendants is proper under California Code of Civil Procedure Section 410.10, which provides that California courts are authorized to exercise jurisdiction over parties "on any basis not inconsistent with the Constitution."

9.     Personal jurisdiction over non-resident Twin City is proper, as Twin City has purposeful contacts with the California forum.  Twin City is registered with the California Secretary of State to do business in California, and has offices in California.  Twin City does substantial, continuous and systematic business in the State of California.  Twin City has

performed acts and consummated transactions in California giving rise to the allegations and claims in this Complaint, including selling insurance to California resident Somera.  Twin City has also performed activities out-of-state that were aimed at and had an effect in California, including denying California resident Somera's claim for insurance coverage.

10.     Personal jurisdiction over California resident Swett & Crawford is proper, as Swett & Crawford is incorporated, headquartered and domiciled in California.  Swett and Crawford is registered with the California Secretary of State to do business in California.  Swett & Crawford does substantial, continuous and systematic business in the State of California.  Swett & Crawford has performed acts and consummated transactions in California giving rise to the allegations and claims in this Complaint, including brokering insurance to California resident Somera.

11.     Venue is proper under California Code of Civil Procedure Section 393 in the Superior Court of the State of California for the County of Santa Barbara because the wrongful conduct alleged herein took place, in whole or in part, in Santa Barbara County.

## FACTUAL ALLEGATIONS

### The Underlying Lawsuit

12.     On or about September 28, 2017, Postcard Properties, LLC ("Postcard") filed a lawsuit against Somera and its President, David A. Brown ("Mr. Brown") in Santa Barbara Superior Court (the "Underlying Lawsuit").  A true and correct copy of the operative pleading in the Underlying Lawsuit is attached hereto as **Exhibit A**.

13.     The Underlying Lawsuit alleges causes of action for (1) breach of written contract, (2) common counts, (3) breach of oral contract, (4) fraud, and (5) declaratory relief.

14.     Specifically, the Underlying Lawsuit alleges that Somera and Mr. Brown breached various oral and written agreements with Postcard regarding the development of two commercial real estate projects, the Pismo Beach Project and the Avila Beach Project.

15.     The Underlying Lawsuit further alleges that if there were no such agreements, Somera and Mr. Brown owe Postcard "for work, labor, services and materials rendered at the special instance and request of" Somera and Mr. Brown and for alleged fraud committed by

Somera and Mr. Brown.

**The Policy**

16.   Through its insurance broker, Defendant Swett & Crawford, Somera purchased insurance coverage to protect itself in the event of a lawsuit such as the Underlying Lawsuit.

17.   Twin City issued to Somera Private Equity Choice Policy No. 72 DB 0240050-17 (the "Policy"), which provides coverage for the Policy Period from February 21, 2017 to February 21, 2018.

18.   The Policy's Private Equity Fund Management and Professional Liability ("PEFM&P") Coverage Part provides "(A) Insured Person Liability" coverage for "Loss on behalf of the Insured Persons, which such Insured Persons become legally obligated to pay, resulting from a Claim first made during the Policy Period . . . against the Insured Persons for a Wrongful Act by the Insured Persons which takes place during or prior to the Policy Period, except for Loss that the Insured Entity pays to or on behalf of the Insured Persons as indemnification."

19.   The Policy's PEFM&P Coverage Part provides "(B) Insured Entity Reimbursement" coverage for "Loss on behalf of an Insured Entity for which such Insured Entity has, to the extent permitted or required by law, indemnified the Insured Persons, which such Insured Persons become otherwise legally obligated to pay, resulting from a Claim first made during the Policy Period . . . against the Insured Persons for a Wrongful Act by the Insured Persons which takes place during or prior to the Policy Period."

20.   The Policy's PEFM&P Coverage Part provides "(C) Insured Entity Liability" coverage for "Loss on behalf of an Insured Entity, which such Insured Entity becomes legally obligated to pay, resulting from a Claim first made during the Policy Period . . . against such Insured Entity for a Wrongful Act by the Insured Entity which takes place during or prior to the Policy Period."

21.   The Policy defines "Claim" in relevant part as "a civil proceeding . . . for civil damages or other civil relief, first made upon receipt by an Insured of a written notice of a complaint or similar pleading."

22.     The Policy defines "Loss" in relevant part as "Damages and Defense Costs."

23.     The Policy defines "Insured Person" in relevant part as "Manager," including the "President" of the "Insured Entity."

24.     The Policy defines "Insured Entity" in relevant part as the "Named Entity," Somera Capital Management LLC.

25.     The Policy defines "Wrongful Act" in relevant part as "any actual or alleged error, misstatement, misleading statement, act, omission, neglect or breach of duty," including "in the rendering of Professional Services."

26.     The Policy defines "Professional Services" in relevant part to include "consulting, advisory, management, or administrative services."

27.     Based on the above policy language and definitions, there is coverage for the Underlying Lawsuit.

**Twin City's Shifting Coverage Positions**

28.     Somera timely tendered the Underlying Lawsuit to Twin City for coverage.

29.     In correspondence dated February 2, 2018, Twin City acknowledged that "the PEFM&P Coverage Part affords coverage" for the Underlying Lawsuit.  A true and correct copy of that correspondence is attached hereto as **Exhibit B**.

30.     However, Twin City's February 2, 2018, letter then asserted that two exclusions operated to exclude coverage afforded by the PEFM&P Coverage Part.

31.     The First Exclusion—Section IV. Exclusions Applicable to All Insuring Agreements, Paragraph (B) Exclusions without Exceptions, as amended by Endorsement No. 3— provides that the Insurer shall not pay Loss in connection with any Claim: "based upon, arising from, or in any way related to an Insured engaging in business relating to real property management, including, without limitation, engaging in any activities in the capacity of, giving advice in connection with or rendering or failing to render professional services as a property manager, real estate broker, or advisor in connection with the management of real property."

32.     The Second Exclusion—Section V. Exclusion Applicable to Insuring Agreement

(C), as amended by Endorsement 6—provides that "Pursuant to Section V., ADVANCEMENT AND ALLOCATION OF DEFENSE COSTS, AND Section VI., ALLOCATION OF DAMAGES, of the Common Terms and Conditions, the Insurer shall not pay Loss under Insuring Agreement (C) in connection with any Claim based upon, arising from, or in any way related to any actual or alleged breach of contract or agreement other than that portion of such Loss which would have attached even in the absence of such contract or agreement, or that directly results from: (A) the organizational, management, monitoring or advisory documents of an Insured Entity, including but not limited to, a partnership agreement, limited partnership agreement, operating agreement, limited liability company agreement, other advisory, monitoring and/or management agreement or subscription agreement; (B) a contract for Professional Services. . . ." Twin City asserted that Part B of the Second Exclusion applied to bar coverage, despite the fact that an exclusion for Professional Services wouldn't make any sense in a professional liability policy.

33.    In correspondence dated May 11, 2018, Somera explained to Twin City that neither the First Exclusion nor the Second Exclusion applied.  A true and correct copy of this correspondence is attached hereto as **Exhibit C**.

34.    Specifically, Somera explained that the First Exclusion for "property management" did not apply, "because the *Postcard Properties* lawsuit does not even allege property management services of any kind."

35.    Somera also explained that the Second Exclusion could not apply to Mr. Brown, as by its express terms it "states that it only applies to Coverage Part C, 'Insured Entity Liability' coverage for Somera as an entity, not Coverage Parts A and B, which cover 'Insured Person' liability and thus protect Mr. Brown." Somera further explained that the exception for "Loss which would have attached in the absence of [a] contract or agreement" applied to Somera as an entity, as "the Complaint alleges several 'common counts' that do not sound in contract."

36.    In response to Somera's May 11, 2018 letter, in correspondence dated June 19, 2018, Twin City "withdr[ew] its coverage denial as to Mr. Brown and acknowledge[d] coverage for him in accordance with this reservation of rights."  A true and correct copy of this

1  correspondence is attached hereto as **Exhibit D**.

2       37.    However, Twin City continued to incorrectly deny coverage for Somera on the

3  basis of the Second Exclusion for certain contractual liability, asserting that this exclusion still

4  applied to "'Common Counts' alleged in the Complaint [that] may have arisen in the absence of

5  Somera's alleged contracts or agreements."

6       38.    In correspondence dated August 22, 2018, Somera provided Twin City with black

7  letter California case law which made clear that "a common count cause of action is specifically

8  available 'where no contractual relationship is involved.'" Thus, the Second Exclusion for certain

9  contractual liability could not apply. A true and correct copy of this correspondence is attached

10 hereto as **Exhibit E**.

11      39.    Furthermore, in correspondence dated September 21, 2018, Somera noted that by

12 its express terms, the Second Exclusion contained an exception for the "contract[s] for Professional

13 Services" at issue in the Underlying Lawsuit. Somera thus explained to Twin City that "the policy

14 language provides coverage for Somera directly resulting from a contract for Professional

15 Services, and does not exclude coverage as" Twin City contends. A true and correct copy of this

16 correspondence is attached hereto as **Exhibit F**.

17      40.    Nonetheless, despite being presented with ample evidence that the Second

18 Exclusion is wholly inapplicable, in correspondence dated October 5, 2018, Twin City continued

19 to wrongfully "stand by [its] denial of coverage as to Somera." In so doing, Twin City essentially

20 asserted that the exception to the Second Exclusion didn't matter. Twin City also asserted that it

21 would only advance "25% of the Defense Costs on a current basis that Somera submits to Twin

22 City for payment," purportedly based on an allocation of the "relative legal exposure of Somera

23 and Mr. Brown." A true and correct copy of this correspondence is attached hereto as **Exhibit G**.

24      41.    Twin City's allocation is entirely arbitrary and ignores that California Supreme

25 Court precedent requires an insurer to pay all defense costs in an action that involves insured and

26 uninsured parties and/or claims, except defense costs that can be allocated solely to claims that are

27 unequivocally not subject to coverage.

28

42.     Twin City has already rescinded its improper denial of coverage for Mr. Brown, which caused Somera to unnecessarily incur costs fighting for coverage to which it is entitled. Twin City's determination that the claims against Somera are not even potentially entitled coverage and, further, that a whopping 75% of the defense costs are solely attributable to such claims, is merely another attempt to deny Somera the bargained-for coverage.  The claims against Somera are at least potentially covered given the common counts alleged in the Underlying Lawsuit and the "Professional Services" exception to the Second Exclusion. Twin City's acknowledgment of coverage for Mr. Brown obligates it to advance the entire defense costs.

## FIRST CAUSE OF ACTION

### (Breach of Contract – Against Twin Fire Insurance Company and Does 1-5)

43.     Somera realleges and incorporates by reference herein each allegation contained in paragraphs 1 through 42 above.

44.     Defendants had duties under the Policy, the law, and insurance industry custom and practice to, among other things, pay for a full defense of the Underlying Lawsuit.  Defendants were likewise obligated to conduct a thorough investigation of all bases that might support Somera's claim for coverage.

45.     Defendants breached their duties under the Policy by, among other things, failing to pay for a full defense of the Underlying Lawsuit; asserting grounds to avoid or limit coverage that they knew were not supported by, and are contrary to, the terms of the Policy, the law, industry custom and practice, the parties' course of dealings, and the facts; failing to conduct an adequate investigation of the Underlying Lawsuit and asserting grounds to avoid coverage based on their inadequate investigation; failing to fully inquire into possible bases that might support coverage for the Underlying Lawsuit; and by giving greater consideration to their own interests than they gave to Somera's interests.  Demonstrative of Defendants' failures, the initial letter denying coverage referred to the Underlying Lawsuit as a proceeding in Denver Colorado with what appears to be the case number of a proceeding in Denver Colorado.

As a direct and proximate result of Defendants' breach of contract, Somera has suffered, and

continues to suffer, damages in an amount in excess of the Court's jurisdictional limits.  When the precise amount of Somera's damages are known, it will assert those damages accordingly.

### SECOND CAUSE OF ACTION

### (Breach of the Covenant of Good Faith and Fair Dealing – Against Twin City and Does 1-5)

46.     Somera realleges and incorporates by reference herein each allegation contained in paragraphs 1 through 42 above.

47.     In breach of the implied covenant of good faith and fair dealing, Defendants did the things and committed the acts alleged above for the purpose of consciously withholding from Somera the rights and benefits to which it is entitled under the Policy and without considering Somera's interests at least to the same extent as Defendants considered their own interests.

48.     As a direct and proximate result of Defendants' acts, Somera has been damaged in an amount in excess of the Court's jurisdictional limits.  The actual amount of damages has not yet been precisely ascertained.  When the precise amount of Somera's damages are known, it will assert those damages accordingly.

49.     Defendants' acts are inconsistent with Somera's reasonable expectations, and are contrary to established claims practices and legal requirements, and constitute bad faith.

50.     Pursuant to the holding in *Brandt v. Superior Court*, 37 Cal. 3d 813 (1985), Somera is entitled to recover all attorneys' fees that it reasonably has incurred, and is incurring, in its efforts to obtain the benefits of the coverage that Defendants wrongfully have withheld, and are withholding, in bad faith, plus interest.  The total amount of these attorneys' fees is currently unknown.  When the precise amount of Somera's damages are known, it will assert those damages accordingly.

51.     Defendants' conduct is despicable and has been done with a conscious disregard of Somera's rights, constituting oppression, fraud, and/or malice.  Defendants engaged in a series of acts designed to deny wrongfully the benefits due under the policies.  Specifically, Defendants, by acting as alleged above, in light of the information, facts, and law to the contrary, consciously

disregarded Somera's rights and forced it to incur substantial financial loss, without sufficient assistance from it, thereby inflicting substantial financial damage on Somera.  Defendants ignored Somera's interests and concerns, with the requisite intent to injure, and acted fraudulently, within the meaning of California Civil Code 3294.  Therefore, Somera is entitled to recover punitive damages from Defendants in an amount sufficient to punish and to make an example of them and in order to deter similar conduct.

## THIRD CAUSE OF ACTION

### (Negligence – Against Swett & Crawford and Does 6- 10)

52.     Somera realleges and incorporates by reference herein each allegation contained in paragraphs 1 through 42 above.

53.     Swett and Crawford held itself out to Somera as having the knowledge, skill and authority to obtain insurance that would protect Somera against professional services risks.

54.     If Twin City prevails on its no coverage position, the Defendants would have been negligent in procuring insurance coverage for Somera.  Indeed, Swett & Crawford was tasked with procuring a policy that would protect Somera against professional services risks and Twin City contends that the Policy excludes disputes arising from contracts for professional services.

55.     As a direct and proximate result of Defendants' negligence, Somera has suffered, and continues to suffer, damages in an amount in excess of the Court's jurisdictional limits.  When the precise amount of Somera's damages are known, it will assert those damages accordingly.

## FOURTH CAUSE OF ACTION

### (Negligent Misrepresentation – Against Swett & Crawford and Does 6-10)

56.     Somera realleges and incorporates by reference herein each allegation contained in paragraphs 1 through 42 above.

57.     Defendants represented to Somera that they would obtain insurance that would protect Somera against personal services risks.

58.     If Twin City prevails on its no coverage position, then Somera will have been harmed by its reasonable reliance on Defendants' representations.

59.     As a direct and proximate result of Defendants' negligent misrepresentations, Somera has suffered, and continues to suffer, damages in an amount in excess of the Court's jurisdictional limits.  When the precise amount of Somera's damages are known, it will assert those damages accordingly.

## FIFTH CAUSE OF ACTION

### (In the Alternative, Declaratory Relief – Against Swett & Crawford and Does 6-10)

60.     Somera realleges and incorporates by reference herein each allegation contained in paragraphs 1 through 42 above.

61.     Somera and Defendant Swett & Crawford have had, and continue to have, an ongoing special relationship for many years.  Somera relied upon Swett & Crawford to procure insurance to protect its special needs as a boutique real estate investment firm.  Indeed, Swett & Crawford held itself out as having expertise in brokering insurance coverage for real estate companies.

62.     Prior to the issuance of the Policy, Somera had requested that Defendant Swett & Crawford procure insurance coverage to protect against professional services risks.

63.     Defendant Swett & Crawford assumed the duty to use reasonable care, diligence, and judgment in procuring the insurance coverage needed by Somera to protect its business interests.

64.     Somera had a reasonable expectation that it would be covered for professional services risks of the nature alleged in the Underlying Lawsuit.

65.     Defendant Swett & Crawford also assumed the duty to fully explain to Somera the key terms of the Policy prior to its issuance, and Somera reasonably relied on its explanation.  However, at no point prior to the issuance of the Policy did Swett & Crawford ever suggest that the kinds of professional services risks alleged in the Underlying Lawsuit would not be covered under the Policy.

66.     Twin City asserts, and Somera disputes, that the Policy does not provide coverage for Somera for the Underlying Lawsuit.

67.     If Twin City prevails on its no coverage assertions, then Defendant Swett & Crawford will not have satisfied its duties to Somera.

68.     An actual and justiciable controversy exists between Somera, on the one hand, and Defendants Swett & Crawford and Does 6-10, on the other hand, as to Defendants' obligations in the alternative event that the Court finds no coverage under the Policy.  Somera seeks a judicial declaration as to its rights and obligations against Defendant Swett & Crawford in connection with insurance coverage for the Underlying Lawsuit.

## **PRAYER FOR RELIEF**

### **ON THE FIRST CAUSE OF ACTION**

1.     For damages, plus pre- and post-judgment interest, according to proof at the time of trial;

### **ON THE SECOND CAUSE OF ACTION**

2.     For damages, plus pre- and post-judgment interest, according to proof at the time of trial;

3.     For reasonable attorneys' fees incurred in obtaining the benefits due under the Policy, plus interest;

4.     For punitive damages.

### **ON THE THIRD CAUSE OF ACTION**

5.     For damages, plus pre- and post-judgment interest, according to proof at the time of trail;

### **ON THE FOURTH CAUSE OF ACTION**

6.     For damages, plus pre- and post-judgment interest, according to proof at the time of trail;

### **ON THE FIFTH CAUSE OF ACTION**

7.     For a declaration in accordance with Somera's contentions stated above; and

### **ON ALL CAUSES OF ACTION**

8.      For such other, further, and/or different relief as may be just and proper.


DATED:      December 14, 2018                KASOWITZ BENSON TORRES LLP


                                            By:    /s/ Kirsten C. Jackson

                                                Kirsten C. Jackson
                                                Attorneys for Plaintiff

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury in this action.

DATED:     December 14, 2018              KASOWITZ BENSON TORRES LLP


By:___/s/ Kirsten C. Jackson_____

Kirsten C. Jackson
Attorneys for Plaintiff

14
**COMPLAINT**

EXHIBIT A

Craig S. Granet, State Bar #071020
FELL, MARKING, ABKIN, MONTGOMERY,
GRANET & RANEY, LLP
222 East Carrillo Street, Suite 400
Santa Barbara, California 93101-2142
(805) 963-0755

Attorneys for Plaintiff

# SUPERIOR COURT OF THE STATE OF CALIFORNIA

## FOR THE COUNTY OF SANTA BARBARA

### ANACAPA DIVISION

| | |
|---|---|
| POSTCARD PROPERTIES, LLC, a California limited liability company, | Case No. 17CV04361 |
| Plaintiff, | **FIRST AMENDED COMPLAINT FOR BREACH OF WRITTEN CONTRACT, ON COMMON COUNTS, FOR BREACH OF ORAL CONTRACT, FOR FRAUD AND FOR DECLARATORY RELIEF** |
| vs. | |
| SOMERA CAPITAL MANAGEMENT, LLC, a California limited liability company; DAVID A. BROWN; and DOES ONE through TWENTY, inclusive, | **Assigned Judge:**<br>**The Honorable Colleen K. Sterne** |
| Defendants. | |

COMES NOW Plaintiff POSTCARD PROPERTIES, LLC, a California limited liability company (hereinafter referred to as "Postcard"), by and through its attorneys, Fell, Marking, Abkin, Montgomery, Granet & Raney, LLP, and, for causes of action against Defendants, alleges as follows:

### GENERAL ALLEGATIONS

1.     Defendant SOMERA CAPITAL MANAGEMENT, LLC, is a California limited liability company, with its principal place of business in Santa Barbara, California (hereinafter

1

FIRST AMENDED COMPLAINT FOR BREACH OF WRITTEN CONTRACT, ON COMMON COUNTS,
FOR BREACH OF ORAL CONTRACT, FOR FRAUD AND FOR DECLARATORY RELIEF

referred to as "Somera").  Somera and DOES ONE through TEN are hereinafter referred to as the "Somera Defendants."

2.      Defendant DAVID A. BROWN (hereinafter referred to as "Brown") is an individual residing in Santa Barbara, California, and, at all times relevant hereto, was the President of Somera.

3.      The true names and capacities of Defendants DOES ONE through TWENTY are unknown to Postcard, and Postcard will amend this First Amended Complaint to allege such names and capacities as soon as they are ascertained.

4.      Postcard is informed and believes and thereupon alleges that Defendants are and were the agents, servants, employees, employers, partners, co-venturers, or, in some manner, agents or principals, or both, for each other, and were acting within the course and scope of their agency and employment in performing the acts hereinafter alleged.  The acts and conduct herein alleged of each of the Defendants were known to, authorized by, and ratified by each of the other Defendants.

5.      The matters that are the subject of this action are the developments of two hotel projects, one in Pismo Beach, California (the "Pismo Beach Project") and the other in Avila Beach, California (the "Avila Beach Project").

6.      The development of the Pismo Beach Project is being done by an entity known as SCM Pismo Pier Partners, LLC (hereinafter referred to as "Pismo Pier Partners").  Postcard is an investor in Pismo Pier Partners and has, to date, invested $149,380.00 in Pismo Pier Partners, and, as a result, Postcard has an ownership interest in Pismo Pier Partners based upon that investment.

7.      The development of the Avila Beach Project is being done by an entity known as SCM Avila Beach Partners, LLC (hereinafter referred to as "Avila Beach Partners").  Postcard is an investor in Avila Beach Partners and has, to date, invested $50,000.00 in Avila Beach Partners, and, as a result, Postcard has an ownership interest in Avila Beach Partners based upon that investment.

/ / /

FIRST AMENDED COMPLAINT FOR BREACH OF WRITTEN CONTRACT, ON COMMON COUNTS, FOR BREACH OF ORAL CONTRACT, FOR FRAUD AND FOR DECLARATORY RELIEF

## FIRST CAUSE OF ACTION
## FOR BREACH OF WRITTEN CONTRACT
## AGAINST THE SOMERA DEFENDANTS

8.      Postcard incorporates by this reference each and every allegation contained in Paragraphs 1 through 7 of this First Amended Complaint as fully as set forth at length herein.

9.      In early 2012, Postcard located a privately-owned site for a potential hotel development in Pismo Beach, California (hereinafter referred to as the "Pismo Beach Property"). While Postcard had the knowledge and experience required to get that hotel approved and built, Postcard did not have the capacity to finance the development and construction of that project. Postcard then approached the Somera Defendants with that opportunity, and the Somera Defendants agreed to go forward with Postcard on that project.

10.     In or about December 2012, Postcard and the Somera Defendants entered into an oral agreement that, among other things, the Somera Defendants would enter into escrow to purchase the Pismo Beach Property; Postcard would be primarily responsible for the project management and developer services required to entitle and construct the hotel; and Postcard and the Somera Defendants would share the project management and developer services fees generated by the project.

11.     Escrow on the Pismo Beach Property closed on or about December 28, 2012. Thereafter, Postcard continued its project management and developer services for the Pismo Beach Project, which included, but was not limited to, the following:  identifying third party project consultants and vendors, negotiating and managing their contracts, coordinating their work efforts with other project team members, and managing their efforts consistent with the project schedule, budget and quality standards; developing the predevelopment project budget and scheduling and managing the resultant work plan; interfacing with numerous public agencies, utility districts and vendors, and other project stakeholders to advance the planning effort and entitlement strategy; creating sustainable relationships with key governmental officials so as to impact positively entitlement outcomes; and keeping the Somera Defendants fully

/ / /

3

FIRST AMENDED COMPLAINT FOR BREACH OF WRITTEN CONTRACT, ON COMMON COUNTS,
FOR BREACH OF ORAL CONTRACT, FOR FRAUD AND FOR DECLARATORY RELIEF

1    informed of and participating with the Somera Defendants on all significant developments

2    through weekly meetings and otherwise.

3        12.    During this period, Postcard and the Somera Defendants determined to

4    memorialize their oral agreement with a written agreement.  On or about January 31, 2014,

5    Postcard and the Somera Defendants entered into a written agreement regarding the development

6    of the Pismo Beach Project (hereinafter referred to as the "Pismo Beach Project Agreement").  A

7    copy of the Pismo Beach Project Agreement is attached hereto as Exhibit "A" and is

8    incorporated herein by this reference.

9        13.    Among other things, the Pismo Beach Project Agreement provides (a) that,

10   pursuant to Section 1(a), Postcard is to receive 65% of all Project Management Fees and

11   Developer Services Fees paid on the project; and (b) that, pursuant to Section 3(a), Postcard is to

12   receive 35% of the Somera Defendants' interest in and to the Somera Defendants' Managing

13   Member Subordinated Cash Flow and Profits Interest payments.

14       14.    Postcard has performed all obligations to the Somera Defendants pursuant to the

15   Pismo Beach Project Agreement, except those obligations Postcard was prevented or excused

16   from performing.

17       15.    Pursuant to Section 1(a) of the Pismo Beach Project Agreement, the Somera

18   Defendants agreed to diligently pursue payment of the Project Management Fees and Developer

19   Services Fees due to Postcard pursuant to said Agreement.

20       16.    Commencing within the last four years, and continuing thereafter, the Somera

21   Defendants breached the Pismo Beach Project Agreement by, among other things, failing to

22   diligently pursue the payment of the Project Management Fees and Developer Services Fees due

23   to Postcard pursuant to said Agreement.

24       17.    Postcard suffered damages legally (proximately) caused by said breaches by the

25   Somera Defendants of the Pismo Beach Project Agreement in an amount in excess of

26   $252,000.00, according to proof, including, but not limited to, damages for the nonpayment of all

27   sums due to Postcard.

28   ///

---

## SECOND CAUSE OF ACTION

## ON COMMON COUNTS AGAINST THE SOMERA DEFENDANTS

18. Postcard incorporates by this reference each and every allegation contained in Paragraphs 1 through 11 of this First Amended Complaint as fully as set forth at length herein.

19. Within the last four years, in connection with the Pismo Beach Project, the Somera Defendants became indebted to Postcard in an amount in excess of $252,000.00, according to proof, for work, labor, services and materials rendered at the special instance and request of the Somera Defendants and for which the Somera Defendants promised to obtain payments for Postcard. Said amount is due and unpaid despite Postcard's demand.

## THIRD CAUSE OF ACTION

## ON COMMON COUNTS AGAINST THE SOMERA DEFENDANTS

20. Plaintiff incorporates by this reference each and every allegation contained in Paragraphs 1 through 11 of this First Amended Complaint, as fully as though set forth at length herein.

21. Within the last four years, in connection with the Pismo Beach Project, the Somera Defendants became indebted to Postcard in an amount in excess of $252,000.00, according to proof, on an open book account for money due. Said amount is due and unpaid despite Postcard's demand.

## FOURTH CAUSE OF ACTION

## ON COMMON COUNTS AGAINST THE SOMERA DEFENDANTS

22. Postcard incorporates by this reference each and every allegation contained in Paragraphs 1 through 11 of this First Amended Complaint as fully as set forth at length herein.

23. Within the last four years, in connection with the Pismo Beach Project, the Somera Defendants became indebted to Postcard in an amount in excess of $252,000.00, according to proof, on a book account which was stated in writing by and between Postcard and the Somera Defendants. Said amount is due and unpaid despite Postcard's demand.

24.     Pursuant to Section 1717.5 of the Civil Code, Postcard is entitled to recover reasonable attorneys' fees from the Somera Defendants.

## FIFTH CAUSE OF ACTION
## FOR BREACH OF ORAL CONTRACT
## AGAINST THE SOMERA DEFENDANTS

25.     Postcard incorporates by this reference each and every allegation contained in Paragraphs 1 through 13 of this First Amended Complaint as fully as set forth at length herein.

26.     In or about May 2013, Postcard located an approximately 22-acre bluff-top site for a potential high-end resort hotel development in Avila Beach, California (hereinafter referred to as the "Avila Beach Property").  As with the Pismo Beach Project, while Postcard had the knowledge and experience required to get that hotel approved and built, Postcard did not have the capacity to finance the development and construction of that project.  Postcard then approached the Somera Defendants with that opportunity, and the Somera Defendants agreed to go forward with Postcard on that project.  In or about the Fall of 2013, the Somera Defendants opened an escrow to purchase the Avila Beach Property.

27.     In or about mid-February 2014, with the close of escrow on the Avila Beach Property scheduled only about two weeks later on February 28, 2014, Brown, on behalf of the Somera Defendants, and Dana Severy (hereinafter referred to as "Severy"), on behalf of Postcard, met in the conference room of the offices of the Somera Defendants.  During that meeting, Brown, on behalf of the Somera Defendants, made an offer to Severy, on behalf of Postcard, that the Somera Defendants and Postcard proceed with the Avila Beach Project on the same basis as the parties had agreed for the Pismo Beach Project as reflected in the Pismo Beach Project Agreement, which had just been agreed to about two weeks earlier.  Severy, on behalf of Postcard, accepted that offer (hereinafter referred to as the "Avila Beach Project Agreement").

28.     Escrow on the Avila Beach Property closed on or about February 28, 2014. Thereafter, Postcard performed its project management and developer services for the Avila Beach Project, which included, but was not limited to, the following:  identifying third party

6

project consultants and vendors, negotiating and managing their contracts, coordinating their work efforts with other project team members, and managing their efforts consistent with the project schedule, budget and quality standards; developing the predevelopment project budget and scheduling and managing the resultant work plan; interfacing with numerous public agencies, utility districts and vendors, and other project stakeholders to advance the planning effort and entitlement strategy; creating sustainable relationships with key governmental officials so as to impact positively entitlement outcomes; and keeping the Somera Defendants fully informed of and participating with the Somera Defendants on all significant developments through weekly meetings and otherwise.

29.     Among other things, the Avila Beach Project Agreement, as with the Pismo Beach Project Agreement, provides (a) that, pursuant to Section 1(a), Postcard is to receive 65% of all Project Management Fees and Developer Services Fees paid on the project; and (b) that, pursuant to Section 3(a), Postcard is to receive 35% of the Somera Defendants' interest in and to the Somera Defendants' Managing Member Subordinated Cash Flow and Profits Interest payments.

30.     Since the period of performance by Postcard pursuant to the Avila Beach Project Agreement was indefinite, and since the ownership interest provided by the Avila Beach Project Agreement provided for ownership in a limited liability company and did not involve the sale of any interest in real property, the Avila Beach Project Agreement is not subject to the Statute of Frauds.  However, even if it were, the Somera Defendants would be estopped from asserting it as a defense to the enforcement of the Avila Beach Project Agreement.  During the approximately 20 months between in or about mid-February 2014 and October 2015, Postcard, in reliance on the Avila Beach Project Agreement, changed its position by performing the services set forth in Paragraph 28 above for the benefit of the Avila Beach Project with the full knowledge of and participation by the Somera Defendants, and, at no time during that period, did the Somera Defendants ever indicate to Postcard that it did not intend to be bound by the terms of the Avila Beach Project Agreement.  As a result, given that change of position by Postcard, and the services it provided during those approximately 20 months, it would suffer unconscionable

injury were the Avila Beach Project Agreement not enforced.  Moreover, without such enforcement, the Somera Defendants, having accepted the benefits of those services provided by Postcard, would be unjustly enriched.

31.     Postcard has performed all obligations to the Somera Defendants pursuant to the Avila Beach Project Agreement, except those obligations Postcard was prevented or excused from performing.

32.     Pursuant to the Avila Beach Project Agreement, among other things, Postcard was to provide project management and developer services for the Avila Beach Project.

33.     In or about October 2015, and continuing thereafter, the Somera Defendants breached the Avila Beach Project Agreement by, among other things, terminating Postcard from its involvement in the Avila Beach Project and thereby preventing Postcard from continuing to provide project management and developer services for the Avila Beach Project.  In addition, said actions by the Somera Defendants constituted a breach of the implied covenant of good faith and fair dealing in the Avila Beach Project Agreement.

34.     Postcard suffered damages legally (proximately) caused by said breaches by the Somera Defendants of the Avila Beach Project Agreement in an amount in excess of $1,000,000.00, according to proof, including, but not limited to, damages for the nonpayment of all sums due to Postcard.

## SIXTH CAUSE OF ACTION

## ON COMMON COUNTS AGAINST THE SOMERA DEFENDANTS

35.     Postcard incorporates by this reference each and every allegation contained in Paragraphs 1 through 11 and 26 through 28 of this First Amended Complaint as fully as set forth at length herein.

36.     Within the last two years, in connection with the Avila Beach Project, the Somera Defendants became indebted to Postcard in an amount in excess of $500,000.00, according to proof, for work, labor, services and materials rendered at the special instance and request of the

/ / /

Somera Defendants and for which the Somera Defendants promised to obtain payments for Postcard.  Said amount is due and unpaid despite Postcard's demand.

## SEVENTH CAUSE OF ACTION
## FOR FRAUD AGAINST ALL DEFENDANTS

37.     Postcard incorporates by this reference each and every allegation contained in Paragraphs 1 through 11 and 26 through 28 of this First Amended Complaint as fully as set forth at length herein.

38.     In or about mid-February 2014, Defendants made representations, either explicitly or implicitly, of material facts to Postcard in connection with the Avila Beach Project; said representations included, but were not limited to, the representations set forth in Paragraphs 27 and 37 above that the Somera Defendants would be bound by the oral agreement with Postcard for the development of the Avila Beach Project on the same basis as the Somera Defendants and Postcard had agreed to in the Pismo Beach Project Agreement.

39.     The representations referred to in Paragraph 38 above were in fact false.  With respect to the specific representations set forth in Paragraph 27 and 37 above, the truth was that the Somera Defendants did not intend to be bound by the oral agreement with Postcard for the development of the Avila Beach Project on the same basis as the Somera Defendants and Postcard had agreed to in the Pismo Beach Project Agreement.

40.     When Defendants made the representations to Postcard referred to in Paragraphs 27 and 37 above, Defendants knew those representations were false.

41.     Defendants made the representations referred to in Paragraph 38 above with the intent to defraud and induce Postcard to provide work, labor, and services to the benefit of Defendants for the development of the Avila Beach Project.  At the times Postcard acted, Postcard did not know that said representations were false and believed that they were true. Postcard acted in justifiable reliance upon the truth of said representations.

/ / /

/ / /

9

42.     In justifiable reliance upon the conduct of Defendants, Postcard was induced to act and proceeded with providing work, labor and services for 20 months, until the Somera Defendants terminated Postcard's work, labor and services on the Avila Beach Project.

43.     While the initial misrepresentations referred to in Paragraph 38 above were made by Defendants more than three years before the filing of the Complaint in this action, such misrepresentations were not discovered by Postcard to be misrepresentations until in or about October 2015.  Postcard could not with due diligence have discovered that such additional misrepresentations were misrepresentations until said time because Postcard had no way of knowing and could not determine the true facts prior to said time, and because Defendants concealed the true facts prior to said time.  Moreover, as set forth in Paragraphs 30 and 37 above, within the last three years, Defendants have continued to make such misrepresentations to Postcard that they intended to be bound by the Avila Breach Project Agreement by their statements and conduct during their participation in the development of the Avila Beach Project while knowing that Postcard was providing services under the belief that Defendants intended to be bound by said Agreement.

44.     As a result of Postcard's reliance upon the conduct of Defendants, Postcard has suffered damages in an amount in excess of $500,000.00, according to proof, including, but not limited to, damages for the value of the work, labor and services provided by Postcard for the benefit of Defendants.

45.     In doing the acts alleged in this cause of action, Defendants acted maliciously and oppressively toward Postcard in that Defendants knew that they could induce Postcard to perform necessary work, labor and services on the Avila Beach Project by promising to be bound by an oral agreement with Postcard, because Postcard and the Somera Defendants had proceeded on that basis on the Pismo Beach Project, where the written Pismo Beach Project Agreement was not entered into until after Postcard had performed substantial work, labor and services on the Pismo Beach Project for more than a year.  As a result of the foregoing, Defendants' actions constitute malice as conduct which was intended by them to cause injury to Postcard or despicable conduct carried on by them with a willful and conscious disregard of the rights or

safety of others, and/or Defendants' actions constitute oppression as despicable conduct subjecting Postcard to cruel and unjust hardship in conscious disregard of Postcard's rights. Postcard is therefore entitled to exemplary and punitive damages against Defendants in an amount according to proof.

## EIGHTH CAUSE OF ACTION
## FOR FRAUD AGAINST ALL DEFENDANTS

46.     Postcard incorporates by this reference each and every allegation contained in Paragraphs 1 through 11 and 26 through 28 of this First Amended Complaint as fully as set forth at length herein.

47.     In our about February 2014, Defendants made promises, either explicitly or implicitly, to Postcard about material matters in connection with the Avila Beach Project without any intention of performing said promises; said promises included, but were not limited to, the promises set forth in Paragraphs 27 and 46 above that the Somera Defendants would be bound by the oral agreement with Postcard for the development of the Avila Beach Project on the same basis as the Somera Defendants and Postcard had agreed to in the Pismo Beach Project Agreement.

48.     Defendants made the promises without any intention of performance referred to in Paragraph 47 above with the intent to defraud and induce Postcard to rely upon them and to provide work, labor and services to the benefit of Defendants for the development of the Avila Beach Project.  At the times Postcard acted, Postcard was unaware of the intention of Defendants not to perform said promises.  Postcard acted in justifiable reliance upon said promises.

49.     In justifiable reliance upon the conduct of Defendants, Postcard was induced to act and proceeded with providing work, labor and services for 20 months, until the Somera Defendants terminated Postcard's work, labor and services on the Avila Beach Project.

50.     While the initial promises without any intention of performance referred to in Paragraph 47 above were made by Defendants more than three years before the filing of the Complaint in this action, such promises without any intention of performance were not

FIRST AMENDED COMPLAINT FOR BREACH OF WRITTEN CONTRACT, ON COMMON COUNTS, FOR BREACH OF ORAL CONTRACT, FOR FRAUD AND FOR DECLARATORY RELIEF

discovered by Postcard to be such promises until in or about October 2015.  Postcard could not with due diligence have discovered that such additional promises without any intention of performance were such promises until said time because Postcard had no way of knowing and could not determine the true facts prior to said time, and because Defendants concealed the true facts prior to said time.  Moreover, as set forth in Paragraphs 30 and 46 above, within the last three years, Defendants have continued to make such promises to Postcard that they intended to be bound by the Avila Breach Project Agreement by their statements and conduct during their participation in the development of the Avila Beach Project while knowing that Postcard was providing services under the belief that Defendants intended to be bound by said Agreement.

51.     As a result of Postcard's reliance upon the conduct of Defendants, Postcard has suffered damages in an amount in excess of $500,000.00, according to proof, including, but not limited to, damages for the value of the work, labor and services provided by Postcard for the benefit of Defendants.

52.     In doing the acts alleged in this cause of action, Defendants acted maliciously and oppressively toward Postcard in that Defendants knew that they could induce Postcard to perform necessary work, labor and services on the Avila Beach Project by promising to be bound by an oral agreement with Postcard, because Postcard and the Somera Defendants had proceeded on that basis on the Pismo Beach Project, where the written Pismo Beach Project Agreement was not entered into until after Postcard had performed substantial work, labor and services on the Pismo Beach Project for more than a year.  As a result of the foregoing, Defendants' actions constitute malice as conduct which was intended by them to cause injury to Postcard or despicable conduct carried on by them with a willful and conscious disregard of the rights or safety of others, and/or Defendants' actions constitute oppression as despicable conduct subjecting Postcard to cruel and unjust hardship in conscious disregard of Postcard's rights. Postcard is therefore entitled to exemplary and punitive damages against Defendants in an amount according to proof.

/ / /

FIRST AMENDED COMPLAINT FOR BREACH OF WRITTEN CONTRACT, ON COMMON COUNTS,
FOR BREACH OF ORAL CONTRACT, FOR FRAUD AND FOR DECLARATORY RELIEF

### NINTH CAUSE OF ACTION

### FOR DECLARATORY RELIEF AGAINST THE SOMERA DEFENDANTS

53.     Postcard incorporates by this reference each and every allegation contained in Paragraphs 1 through 17 and 25 through 34 of this First Amended Complaint as fully as set forth at length herein.

54.     An actual controversy has arisen and now exists between Postcard and the Somera Defendants in that Postcard contends, and the Somera Defendants deny, the following:

        (a)     That Postcard has ownership interests in Pismo Pier Partners pursuant to both (1) Its Managing Member Subordinated Cash Flow and Profits Interest pursuant to Section 3 of the Pismo Beach Project Agreement, and (2) Its investment in Pismo Pier Partners in the amount of $149,380.00, which may in the future be increased; and

        (b)     That Postcard has ownership interests in Avila Beach Partners pursuant to both (1) Its Managing Member Subordinated Cash Flow and Profits Interest pursuant to the Avila Beach Project Agreement; and (2) Its investment in Avila Beach Partners in the amount of $50,000.00, which may in the future be increased.

55.     Postcard desires a judicial determination that it has those ownership interests in Pismo Pier Partners and in Avila Beach Partners.

56.     Such a declaration is necessary and appropriate at this time in order that Postcard may ascertain the nature and extent of its ownership interests in Pismo Pier Partners and in Avila Beach Partners.

WHEREFORE, Postcard prays judgment against Defendants and each of them as follows:

        1.     With respect to the First Cause of Action, against the Somera Defendants, for damages in an amount in excess of $252,000.00, according to proof;

        2.     With respect to the Second Cause of Action, against the Somera Defendants, for damages in an amount in excess of $252,000.00, according to proof;

/ / /

3.     With respect to the Third Cause of Action, against the Somera Defendants, for damages in an amount in excess of $252,000.00, according to proof;

4.     With respect to the Fourth Cause of Action, against the Somera Defendants, for damages in an amount in excess of $252,000.00, according to proof;

5.     With respect to the Fifth Cause of Action, against the Somera Defendants, for damages in an amount in excess of $1,000,000.00, according to proof;

6.     With respect to the Sixth Cause of Action, against the Somera Defendants, for damages in an amount in excess of $500,000.00, according to proof;

7.     With respect to the Seventh Cause of Action, against all Defendants, as follows:

    (a)     For damages in an amount in excess of $500,000.00, according to proof; and

    (b)     For exemplary and punitive damages in an amount according to proof;

8.     With respect to the Eighth Cause of Action, against all Defendants, as follows:

    (a)     For damages in an amount in excess of $500,000.00, according to proof; and

    (b)     For exemplary and punitive damages in an amount according to proof;

9.     With respect to the Ninth Cause of Action, against the Somera Defendants, for a declaration as follows:

    (a)     With respect to the Pismo Beach Project, that Postcard has ownership interests in Pismo Pier Partners pursuant to both (1) Its Managing Member Subordinated Cash Flow and Profits Interest pursuant to Section 3 of the Pismo Beach Project Agreement; and (2) Its investment in Pismo Pier Partners in the amount of $149,380.00, which may in the future be increased; and

14

1

2

3

4

5

6

     (b)     With respect to the Avila Beach Project, that Postcard has ownership interests in Avila Beach Partners pursuant to both (1) Its Managing Member Subordinated Cash Flow and Profits Interest pursuant to the Avila Beach Project Agreement; and (2) Its investment in Avila Beach Partners in the amount of $50,000.00, which may in the future be increased;

7     10.     For interest on all amounts due at the maximum rate allowable;

8     11.     For Postcard's costs of suit, including reasonable attorneys' fees, incurred

9     herein, in an amount according to proof; and

10     12.     For such other and further relief as the Court may deem proper.

11

12     FELL, MARKING, ABKIN, MONTGOMERY,

13     GRANET & RANEY, LLP

14

Dated:  November 30, 2017     By: _____

15

16     Craig S. Granet

Attorneys for Plaintiff

17

18

19

20

21

22

23

24

25

26

27

28

15

FIRST AMENDED COMPLAINT FOR BREACH OF WRITTEN CONTRACT, ON COMMON COUNTS,
FOR BREACH OF ORAL CONTRACT, FOR FRAUD AND FOR DECLARATORY RELIEF

# EXHIBIT A

# EXHIBIT A

# EXHIBIT A

# EXHIBIT A

# EXHIBIT A

**Somera Capital Management, LLC**
**115 W. Canon Perdido Street**
**Santa Barbara, CA 93101**

January 31, 2014

Dana Severy
Postcard Properties
127 El Paseo
Santa Barbara, CA 93101

RE:   *SCM Pismo Pier Partners, LLC Profit Splits and Fee Sharing between Somera Capital Management, Postcard Properties, and Postcard Management Company*

Dear Dana:

This letter, when countersigned by Postcard Properties, LLC ("Postcard Properties") and Postcard Management Company, LLC ("Postcard Management Company"), is our agreement regarding the participation of Postcard Properties in the profits of SCM Pismo Pier Partners, LLC (the "Company") and the allocation and distribution of certain fees payable to Somera Capital Management ("SCM") by the Company, pursuant to the Company's Operating Agreement.

1. Project Management and Developer Services Fees and Services.

(a)   SCM will pay to Postcard Properties 65% of all Project Management Fees and Developer Services Fees within 30 days following actual receipt by SCM (collectively, "Postcard's Development Fees").   SCM agrees to diligently pursue payment of its Project Management Fees and Developer Services Fees in accordance with the projected payment schedule attached hereto as Exhibit A).

(b)   The contemplated Project Management Fee is 3.25% of Project Hard Costs.

(c)   The term "Project Hard Costs" means the cost of all materials, labor, equipment (including HVAC equipment, elevators and other equipment incorporated into the

**EXHIBIT "A"**

Dana Severy
January 31, 2014
Page 2

real property improvements), machinery, and appliances necessary to complete construction of the hotel to be constructed at 601 Cypress Street, Pismo Beach, California (the "Hotel") and includes, without limitation, the general contractor's fee and the cost of the general contractor's general conditions necessary to complete all site work and off-site work, parking facilities, and buildings, and install all hardscape and landscaping of the Hotel property. "Project Hard Costs" do not include third party design and engineering consultant costs and furniture, fixtures and equipment that will be purchased and used in connection with the Hotel's operation after construction is completed.

(d)    The contemplated Developer Services Fee is 3% of all costs incurred to construct the Hotel including hardscape and landscaping costs, but excluding the cost of land, land acquisition loan interest, real property taxes attributable to the Hotel, and the Developer Services Fee.

(e)    In consideration for payment of Postcard's Development Fees, Postcard Properties will be required to provide project management and developer services as described in the Scope of Project Management and Development Services attached hereto as Exhibit B.

(f)    SCM will provide all accounting support and services required to compile, monitor, report, and document the Hotel's financial condition and performance and related financial matters necessary to comply with and satisfy the reporting requirements of the Company, lenders, and tax authorities.  SCM will also be responsible for the processing and payment of all payables, including taxes, related to the Hotel, and will obtain and maintain insurance coverage required by the Company and/or its lenders.

(g)    Nothing set forth herein will preclude the Company from selling the project at any time including prior to completing construction of the Hotel.

2.  <u>Property Management and Asset Management Fees and Services</u>.

(a)    At such time as SCM and Postcard Management Company deem appropriate prior to the date the Hotel is open to the public for business, SCM and Postcard Management Company will form PMC, LLC, a California limited liability company ("PMC"), to provide property and asset management services for the Hotel. PMC will be owned 50% by Postcard Management Company and 50% by SCM or an affiliate of SCM, but at all times SCM or its affiliate will be the Manager of and responsible for all decisions made by PMC so that PMC will be controlled by SCM so as to be an Affiliate of SCM as defined in the Securities Act of 1934. Subject to SCM's authority as the managing member of the Company and as provided in paragraph 2(f), the Company will retain PMC to provide property and asset management

Dana Severy
January 31, 2014
Page 3

services for the Hotel and will pay all Property Management Fees, all Asset Management Fees and incentive fees, if any, to PMC.

(b)     Within 30 days following actual receipt by PMC of Property Management Fees, Asset Management Fees or incentive fees, if any (PMC being obligated to diligently pursue payment of such fees), and after retaining reasonable reserves for anticipated expenses, PMC shall distribute 50% of such fees to Postcard Management Company and 50% of such fees to SCM or its affiliate.

(c)     The contemplated Property Management Fee is 3% of the Company's gross revenue from the Hotel.

(d)     The contemplated Asset Management Fee is 1% of the Company's gross revenue from the Hotel.

(e)     The Operating Agreement of PMC shall provide that Postcard Management Company and SCM or its affiliate shall each respectively undertake the services, obligations, responsibilities and functions in each party's capacity as a member of PMC as described in the Scope of Property and Asset Management Services attached hereto as Exhibit C as required to enable PMC to provide property management and asset management services to the Hotel.

(f)     Nothing set forth herein will preclude the Company from selling the project at any time including prior to commencing operations at the Hotel, or preclude SCM, as the managing member of the Company, from deciding that it is in the best interests of the Company to subcontract some part or all the property management services to a third party other than PMC if SCM determines that PMC is not qualified, or does not possess sufficient experience and resources, to provide the property management services in a manner and with the skills expected by a passive investor in a hotel property.

3. Managing Member Subordinated Cash Flow and Profits Interest.

(a)     SCM shall be contractually obligated to pay to Postcard Properties, within 30 days of receipt from the Company, 35% of SCM's interest in and to SCM's Managing Member Subordinated Cash Flow and Profits Interest payments.

(b)     SCM shall use its best efforts to report the tax characterization of such payments (as ordinary income or capital gain) to Postcard Properties from SCM as the same tax character as SCM reports its receipt of such payments from the Company, provided acceptance of such characterization by the Internal Revenue Service for income tax purposes cannot be

Dana Severy
January 31, 2014
Page 4

assured by SCM, and further provided when reporting such payments for federal income tax purposes, SCM will direct its' Certified Public Accountants ("CPAs") to characterize payments to Postcard Properties as being of the same character as SCM reports such payments from the Company. Should the CPAs determine in good faith that such reporting will likely result in a disallowance of such characterization by the Internal Revenue Service, SCM and Postcard Properties will accept the CPAs determination.

4.     Additional Provisions.

(a)     Postcard Properties and Postcard Management Company acknowledge and agree that SCM, as Managing Member of the Company, has assumed certain duties, including as a fiduciary, to the Company, and that in carrying out these duties, is solely responsible for all decisions relating to Company activities, provided, however, SCM will not agree to a reduction in Project Management Fees or Developer Services Fees without the written consent of Postcard Properties, which consent will not be unreasonably withheld, and SCM will not agree to a reduction in Property Management Fees, Asset Management Fees or any incentive fees without first consulting with Postcard Properties.

(b)     Postcard Properties and Postcard Management Company agree that they have no authority to obligate, bind or otherwise encumber the Company or SCM, or to interfere with SCM's performance of its duties pursuant to the Company Operating Agreement or otherwise assumed by SCM with respect to the Hotel, the Company or any related activities.

(c)     If Postcard Properties does not cure a failure to perform the services described in the Scope of Management and Development Services attached hereto as Exhibit B, or if Postcard Management Company does not cure a failure to perform the services it is to perform as described in the Scope of Property and Asset Management Services attached hereto as Exhibit C, within 21 days after being notified in writing of such failure by SCM, payment of the fees for such services described in paragraphs 1 or 2, as the case may be, may be suspended by SCM during the continuation of such failure and, if eventually payable, shall be reduced by any costs incurred by the Company or SCM as a result of Postcard Properties' or Postcard Management Company's nonperformance, and in the event that such fees are suspended for a period of three consecutive months, the obligation to pay such fees shall be discharged and SCM shall have no further obligation to pay such fees. If Postcard Management Company's failure to perform the services as described in the preceding sentence due solely to the physical or mental disability of Dana Severy preventing him from substantially performing the services required, the three month period referred to in the preceding sentence shall be extended to six months.

Dana Severy
January 31, 2014
Page 5

(d)    Should a dispute arise out of or concerning the provisions of this letter agreement, the parties agree to participate in confidential mediation conducted by a mediator mutually selected by SCM and Postcard Properties to seek to resolve such dispute.

(e)    The definitions of Project Management Fees, Developer Services Fees, Property Management Fees, Asset Management Fees, Managing Member Subordinated Cash Flow and Profits Interest as used herein, shall be the same as the definitions of such terms set forth in the Company Operating Agreement that SCM has delivered to you, except to the extent of a conflict between such terms in the Company's Operating Agreement and as defined herein, the definition herein shall control.

If the above meets with your approval, please sign where provided below.

Sincerely,
**Somera Capital Management, LLC**
**A California Limited Liability Company**

David A. Brown
President

READ AND AGREED TO:

Postcard Properties, LLC

By: _____
Dana Severy, Managing Member
Date: _____ FEB 5 2014

Postcard Management Company, LLC

By: _____
Dana Severy, Managing Member
Date: _____ FEB 5 2014

EXHIBIT "A"

Page 1 of 2

<u>Protocol for the Payment of the Project Management Fee and Developer Services Fee</u>

Payment of the Project Management Fee and Developer Services Fee (collectively, the "Fees") shall be paid in thirty-one (31) installments, thirty (30) of which shall be in equal amounts paid on the first business day of the month commencing upon the first business day of the month after an architect has been authorized in writing by SCM and Postcard Properties to complete the Schematic Design documents for the Hotel. The thirty-first (31st) and final payment of Fees will be paid as provided in paragraph (d) below. Based upon the hotel room count of 108 rooms and the projected attendant construction and related development costs, the parties agree that an estimated project management fee of $389,232 (the "Projected Project Management Fee") and developer services fee of $574,918 (the "Projected Developer Services Fee") are reasonable good faith projections (these fees being collectively referred to as the "Projected Fees"), it being acknowledged that variation in costs of construction as projected will alter the amount of the Projected Fees.  As such, the monthly payment protocol of the first thirty payments of Fees to Postcard Properties shall be as follows:

($389,232 Projected Project Management Fee less a Reserve Budget of $353,997 amount + $574,918 Projected Developer Services Fee) = $610,153 multiplied by Postcard Properties 65% share = $396,599 divided by 30 months = $13,220 Projected Fees payable monthly to Postcard Properties

    (a)  Upon completion of detailed contractor pricing of (a) the completed Schematic Design documents and (b) the completed Construction Documents, the total  and  monthly payment of Projected Fees shall be adjusted (decreased or increased) to reflect the change in projected construction and related costs upon which Project Management Fee and Developer Services Fee are based.

    (b)  It is understood and agreed by SCM and Postcard Properties that some project management services and activities (such as construction supervision) may be provided by unrelated third parties, and that payment to such unrelated third parties will be made from the $353,997 Reserve Budget, thereby reducing the final thirty-first (31st) payment of Fees otherwise payable by the amounts paid such unrelated third parties to perform such project management services and activities.

    (c)  Further, project management related reimbursable expenses (e.g. printing, travel outside Santa Barbara County) incurred by SCM and Postcard Properties will also be paid out of the Reserve Budget.

EXHIBIT "A"

Page 2 of 2

(d) After all Hotel improvements have been completed, and upon determination of the final actual Project Hard Costs and those applicable Hotel project costs utilized to calculate the Developer Services Fee, SCM and Postcard Properties will determine the actual total Project Management Fee and Developer Services Fee and Postcard Properties shall be paid the final thirty-first (31st) payment subject to reconciliation as follows.  SCM and the Company shall reconcile between each other any overpayment or underpayment of the applicable Fees as follows: (i) if the Projected Project Management Fee and/or Projected Developer Services Fee paid to SCM and Postcard Properties exceeds the actual total Fees, then SCM and Postcard Properties will remit their respective pro rata portions of any overpayment amounts to the Company within thirty (30) days of such determination and written notice thereof and (ii)  if the Projected Project Management Fee and/or Projected Developer Services Fee paid to SCM and Postcard Properties is less than the actual total Fees, then the Company shall pay SCM any shortfall in the Fee amount within thirty (30) days of such determination and written notice thereof and SCM shall promptly upon receipt of the shortfall amount  from the Company pay Postcard Properties its pro rata share of the shortfall in the Fee amount. Notwithstanding the foregoing, in all events the final thirty-first (31st) payment shall be paid Postcard Properties within three (3) months of the issuance of the Hotel's Certificate of Occupancy by the City of Pismo Beach.

EXHIBIT "B"

Page 1 of 3

Scope of Project Management and Development Services

"Project Management and Development Services" provided to the Company by Postcard Properties, LLC (the "Development Manager") pursuant to paragraph 1 of the letter agreement between Postcard Properties, LLC, Postcard Management Company, LLC and Somera Capital Management to which this Exhibit "B" is attached shall be subject at all times to the full oversight, approval and control by Somera Capital Management and shall include the following:

(a)   Perform and/or direct on behalf of SCM Pismo Pier Partners, LLC (the "Company") at the Company's cost all entitlement, planning, and design activities and construction of on-site and off-site improvements required for an approximately 108-room hotel project at 601 Cypress Street in Pismo Beach, San Luis Obispo County, California (the "Project"), all in accordance with the Company approved schedule, budget, contracts, plans and specifications, including the following:

   (i)      Supervise and coordinate the activities of architects, engineers, construction managers, attorneys, and other professional consultants to facilitate the entitlement, planning, design, and construction of the Project;

   (ii)     On behalf of the Company for Company's approval and execution, negotiate any necessary agreements with public bodies, utility companies, and utility districts relating to access, traffic control, utility services, flood control, and other matters affecting the Project;

   (iii)    Review and recommend for approval by the Company (with proposed modifications, if any) preliminary and final plans and specifications relating to the Project's site and off-site improvements for compliance with established design and budget criteria;

   (iv)    In coordination with the construction manager review contract and sub-contract bids received from general contractors and sub-contractors on all phases of construction in accordance with the applicable construction contracts (the Company shall specify whether to use guaranteed maximum price or other contract form);

   (v)     Negotiate for the Company's approval and execution, and once executed, administer all contractual documents relating to planning, design, entitlement, and construction of the Project, including the review of all progress payments before they are processed for payment by the Company

   (vi)    Establish construction schedule in collaboration with general contractors and others for the Company's written approval, and coordinate with construction manager and others to help effect compliance with the schedule;

EXHIBIT "B"
Page 2 of 3

(vii)   Obtain, review and present to the Company for approval evidence of insurance from the general contractors and subcontractors as is required by the Company or its lenders and in accordance with the construction contracts;

(viii)  Maintain a central control file of all design, engineering, and construction documents, including contracts, plans and specifications;

(ix)    Coordinate with the construction manager and others to seek to assure construction of the improvements commence in a timely manner and thereafter diligently proceed to completion, in a good and workmanlike manner in accordance with the Company approved plans and specifications;

(x)     Maintain all contracts and sub-contracts for labor and materials relating to the Project for inspection by the Company upon the Company's written request, and provide copy of same to the Company;

(xi)    Promptly upon completion of any portion of the improvements at the Project, cause the same to be inspected by each appropriate governmental body, coordinate the correction of any defects and deficiencies with the construction manager which may be disclosed by any such inspection, and cause to be duly issued all licenses, certificates of occupancy, permits and authorizations necessary for the final approval of any such work;

(xii)   At the Company's written request and as a Project cost, obtain bonds from all contractors identified in such request and furnish to the Company bonds wherein Project contractors are the principals and the Company is the oblige, and in instances where an identified contractor fails to furnish a requested bond notify the Company and request the Company's direction whether to continue to retain such non-bonded contractor.  Such bonds shall cover the faithful and full performance of the Project contracts, the payment of all obligations arising there under, and the lien-free completion of the Project contracts and improvements. The bonds shall be on forms and with a surety acceptable to the Company; and

(xiii)  Provide the Company with a written monthly Project update report that summarizes the status and progress of the Project in terms of planning, design, entitlement, and construction activities with respect to schedule, budget, and quality criteria.

(b) Where legal assistance is needed to assist in the furtherance of the Company's planning, entitlement, design, and construction objectives for the Project, the Development Manager shall retain counsel designated or approved by the Company as a Project cost.

EXHIBIT "B"

Page 3 of 3

(c) Notwithstanding anything herein to the contrary, the Development Manager shall not approve or permit any change order or other deviation from the Hotel budget where the cost is Two Thousand Five Hundred Dollars ($2,500.00) or more.

**EXHIBIT "C"**
Page 1 of 3

Scope of Property and Asset Management Services

"Property and Asset Management Services" provided by Postcard Management Company as a member of PMC with respect to the approximately 108-room hotel at 601 Cypress Street in Pismo Beach, San Luis Obispo County, California (the "Hotel") pursuant to paragraph 2 of the letter agreement between Postcard Properties, LLC, Postcard Management Company, LLC and Somera Capital Management ("SCM") to which this Exhibit "C" is attached shall be subject at all times to the full oversight, approval and control by Somera Capital Management and shall include the following:

(a) Sales & Marketing
    (i)    In conjunction with SCM identify suitable candidates and facilitate the hiring of a Director of Sales & Marketing;
    (ii)    Review of annual Sales & Marketing Plan and related budget prepared by General Manager and Director of Sales & Marketing;
    (iii)    Review of annual advertising plan and related budget prepared by General Manager and Director of Sales & Marketing;
    (iv)    In conjunction with SCM identify and evaluate candidate advertising agencies;
    (v)    Review of website design developed by provider selected by Postcard Management Company and SCM;
    (vi)    Review of periodic sales and marketing activity reports compiled by General Manager and Director of Sales & Marketing;
    (vii)    In conjunction with SCM evaluate all capital improvement projects proposed by Director of Sales & Marketing;
    (viii)    Visit and inspect the Hotel monthly and participate in regular sales & marketing update meetings with Director of Sales & Marketing scheduled during monthly visit;

(b) Operations
    (i)    In conjunction with SCM identify suitable candidates and facilitate the hiring of a General Manager, Director of Human Resources, and other senior management positions;
    (ii)    Review of initial standard Hotel operational practices and protocols developed by General Manager and periodic updates thereto;
    (iii)    Evaluate in conjunction with SCM initial F&B menu compiled by General Manager and periodic updates thereto;
    (iv)    Review initial employee manual and guidelines, and staff training regimen and program(s) developed by General Manager and Director of Human Resources;
    (v)    Evaluate staff uniform options proposed by General Manager;

EXHIBIT "C"
Page 2 of 3

 (vi) Review financial reports prepared by General Manager;

 (vii) Review of initial 5-Year Operational Budget prepared by General Manager and updates thereto;

 (viii) Review of initial 5-year Capital Plans prepared by General Manager and updates thereto;

 (ix) Meet with General Manager monthly for business update on Hotel operations;

(c) Accounting

 (i) Review of financial reports compiled by General Manager and SCM;

(d) Purchasing & Capital Improvements

 (i) Evaluation of FF&E upgrade and capital improvement projects including landscaping enhancements proposed by General Manager and/or Director of Sales & Marketing;

 (ii) In conjunction with SCM identify and evaluate candidate design, architectural, engineering, and contracting firms for Company approved capital projects; and

 (iii) Conduct periodic site visits to Hotel to review the progress of significant capital improvement projects;

Property and Asset Management Services provided by SCM as a member of PCM are the following:

 (i) Provide all accounting support and services required to compile, monitor, track, report, service, and document the Hotel's financial condition and performance, cash flow requirements, accounts payable, accounts receivable, general ledger, food & beverage costing, inventory management & purchasing, maintenance & work order management, payroll and benefits, and related financial matters necessary to satisfy the reporting requirements of the Company, PCM, lenders, tax authorities, and other governmental agencies or entities;

 (ii) Procure and maintain all insurance coverage required by the Company and/or its lenders as a Hotel cost;

 (iii) Procure and maintain all insurance coverage required by PCM;

 (iv) Process and pay all invoices for labor and materials associated with the operations of the Hotel and any improvements thereto as a Hotel cost;

 (v) As a Hotel cost, process and pay all real property taxes, assessments, and levies imposed by governmental bodies, agencies, and entities with respect to the Hotel;

 (vi) Contract administration of all loans from lenders and process and pay all amounts due and provide any other information required under said loans as a Hotel cost; and

**EXHIBIT "C"**

Page 1 of 3

(vii)   Compile and submit all financial information regarding PCM necessary to satisfy the reporting requirements of tax authorities and any other governmental agencies or entities.

# PROOF OF SERVICE

*Postcard Properties, LLC; SBSC Case No. 17CV04361*

STATE OF CALIFORNIA, COUNTY OF SANTA BARBARA

    I am employed by the law firm of Fell, Marking, Abkin, Montgomery, Granet & Raney, LLP, in the County of Santa Barbara, State of California. I am over the age of 18 and not a party to the within action. My business address is 222 East Carrillo Street, Fourth Floor, Santa Barbara, California 93101-2142.

    On **November 30, 2017,** I served the document described as **FIRST AMENDED COMPLAINT FOR BREACH OF WRITTEN CONTRACT, ON COMMON COUNTS, FOR BREACH OF ORAL CONTRACT, FOR FRAUD AND FOR DECLARATORY RELIEF** on the interested parties in this action by placing a ☐ original ■ true copy thereof enclosed in a sealed envelope addressed as follows:

    A. Barry Cappello, Esq.
    Wendy Welkom, Esq.
    CAPPELLO & NOEL LLP
    831 State Street
    Santa Barbara, CA 93101

■    **BY MAIL**

    ■    I deposited such envelopes in the firm's mailing system. I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing with the U.S. Postal Service. Under that practice, in the ordinary course of business it would be deposited with the U.S. Postal Service in Santa Barbara, California, on that same day, with first class delivery postage fully prepaid. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

☐    **(BY PERSONAL SERVICE)** by delivery of such envelope by hand to the offices of the addressee.

☐    **(BY EMAIL-PDF TRANSMISSION)** I transmitted the document to the email address as indicated above. This transmission included a PDF attachment of the foregoing document(s).

☐    **(BY OVERNIGHT DELIVERY SERVICE)** I deposited such envelope in a box or other facility in Santa Barbara, California, regularly maintained by Federal Express, in an envelope or package designated by Federal Express, addressed as indicated above, with overnight delivery fees paid.

■    **(STATE)** I declare under penalty of perjury, under the laws of the State of California, that the above is true and correct.

    Executed on **November 30, 2017**, at Santa Barbara, California.

    **Susie Hernandez**                              Signature

EXHIBIT B



February 2, 2018

**VIA E-MAIL ONLY**
joe@josephcolelaw.com

Mr. Joseph Cole
Cole Law
1470 East Valley Road, Suite T
Montecito, CA 93108

**Vullnet Kolari, Esq.**
Claims Consultant
Telephone (212) 277-0442
Facsimile (844) 823-3673
vullnet.kolari@thehartford.com

|  |  |  |
|---|---|---|
| **Re:** | **Policyholder:** | **Somera Capital Management, LLC** |
|  | **Insurer:** | **Twin City Insurance Company** |
|  | **Policy:** | **The Hartford Private Equity Choice Policy** |
|  | **Policy No:** | **72 DB 0240050-17** |
|  | **Matter:** | ***Postcard Properties, LLC*** |
|  | **Ref. No.:** | **17416872** |

Dear Mr. Cole:

Hartford Financial Products is responsible for the handling of matters reported under The Hartford Private Equity Choice Policy No. 72 DB 0240050-17 ("Policy") on behalf of Twin City Insurance Company ("Twin City").  This letter follows our previous correspondence, which acknowledged receipt of an October 23, 2017 email correspondence from Christine DeLeon of Sullivan Curtis Monroe that contained a copy of the Complaint titled *Postcard Properties, LLC v. Somera Capital Management, LLC and David A. Brown*, filed in the District Court, City and County of Denver, Colorado, Case No. 2017CV031974 (the "Complaint").

This letter shall also serve to acknowledge receipt of the First Amended Complaint ("FAC"), submitted by Wendy D. Welkom of Cappello & Noel, LLP on December 7, 2017[1].

We understand that you are acting as the authorized representative of Somera Capital Management, LLC ("Somera") and any other **Insureds**[2] under the Policy.  If you are not please direct us to the appropriate contact.

---

[1] Per Section III of the Common Terms and Conditions, Claims Made and Interrelationship of Claims, the Complaint and the First Amended Complaint are deemed to be a single **Claim** made no later than October 17, 2017. Twin City, however, specifically reserves its rights to interrelate this matter to an earlier **Claim** should it later be determined that one was made prior to September 28, 2017.
[2] Terms in bold but not otherwise defined herein have the meaning assigned to them in the Policy.

**Claims Department**
**Hartford Financial Products**
**277 Park Avenue**
**16th Floor**
**New York, NY 10172**

February 2, 2018
Page 2

This letter addresses coverage for Somera and Mr. Brown.  Based upon our review of the FAC and as explained in further detail below, we regret to inform you that there is no coverage for this matter due to the professional services exclusion, Endorsement No. 3 and breach of contract exclusion, Endorsement No. 6.  If you or the **Insureds** disagree with this analysis, we invite you to provide us with any materials or information that would support a contrary conclusion.

### A.  Brief Alleged Facts

Plaintiff, Postcard Properties, LLC ("Postcard"), an alleged project manager and developer, alleges it approached Somera with two separate opportunities to acquire land and build hotels located in Pismo Beach, California and Avila Beach, California, respectively.  According to publicly available information Plaintiff and Somera, as hotel development firms, launched two joint-ventures to acquire, develop and manage the hotels in these two locations.

The parties allegedly agreed to build the first hotel in Pismo Beach California, after Plaintiff first approached Somera in early 2012 for the opportunity and for which oral agreements were not reduced in writing until January 31, 2014 ("Pismo Beach Agreement").  According to the Agreement, the parties agreed to create an LLC, which ultimately was known as SCM Pismo Pier Partners, LLC ("Pismo Pier LLC"), with each party having 50% ownership in the LLC and Somera being the Manager[3].  The Agreement provides for an allocation and distribution of Project Management and Developer Services Fees and Services between Somera and Plaintiff, which among other things, entitles Plaintiff to 65% of all Project Management Fees and Developer Services Fees paid on the project and 35% of "Somera Defendants' interest in and to the Somera Defendants' Managing Member Subordinated Cash Flow and Profits Interest payments." Plaintiff alleges Somera failed to pursue these payments.  Plaintiff purportedly also invested $149,380 in Pismo Pier LLC.

Plaintiff alleges that Somera breached the Agreement by among other things, failing to "diligently pursue the payment of the Project Management Fees and Developer Services Fees" due to Plaintiff within the last four years of filing of the Complaint, thus causing it damages in excess of $252,000.  Moreover, Plaintiff alleges that the defendants also became indebted to Postcard for damages as a result of "work, labor, services and materials" performed/provided at the request of Somera.

Similarly to the Pismo Beach project, Plaintiff avers that the parties entered into a verbal agreement to build the second hotel in Avila Beach.  Specifically, Plaintiff alleges that in February of 2014 Mr. Brown, "on behalf of the Somera Defendants" verbally agreed to build the second hotel under the "same basis as the parties had agreed for the Pismo Beach." Based on the parties prior agreements and acts, Somera created SCM Avila Beach Partners, LLC ("Avila Beach"), with Plaintiff investing $50,000.

---

[3] According to the Operating Agreement of SCM Pismo Pier Partners, LLC, Somera, as Managing Member owns 30% of the "Percentage Interests" in the company and will be paid certain fees, including "additional standard fees for entitling the hotel project, supervising construction and managing the hotel, including, without limitation, a development fee of three percent (3%)."

February 2, 2018
Page 3

Plaintiff alleges Somera breached its verbal agreement for the Avila Beach project by terminating it from the "project" and as such "preventing" it from continuing to provide project management and developer services, causing it damages in excess of $1M.  Similarly to Pismo Beach, Plaintiff alleges it performed "work, labor, services and materials rendered" at the request of Somera and as such it is owed $500,000.  Plaintiff alleges that Somera's modus operandi is to induce it to perform substantial work before the agreements could be reduced to writing and that such conduct is willful and oppressive thus entitling Plaintiff to "exemplary and punitive damages".

For causes of action, Plaintiff asserts breach of oral and written contracts and Fraud.  Plaintiff also seeks declaratory relief from the court, seeking a determination of the ownership interest in the hotels and rights of "managing member subordinated cash flow and profits interest" for each entity.

### B.   **The Policy**

The Policy is a claims made and reported policy issued to Somera for the **Policy Period** February 21, 2017 to February 21, 2018.  The Policy affords coverage under a Private Equity Fund Management and Professional Liability Coverage Part (the "PEFM&P Coverage Part") and a Private Equity Employment Practices Liability Coverage Part[4].  The Combined Aggregate Limit of Liability under the Policy is $2 million in the aggregate for all Liability Coverage Parts. We have reviewed this matter and based on the allegations only the PEFM&P Coverage Part appears to be applicable, which has a Limit of Liability of $2 million, subject to a $250,000 Retention, as the Private Equity Employment Practices Liability Coverage part or the Elective Coverages are not potentially applicable.  The Limit of Liability includes and is depleted by **Defense Costs**.

The PEFM&P Coverage Part affords coverage pursuant to the following Insuring Agreements:

(A) **Insured Person Liability**
The Insurer shall pay **Loss** on behalf of the **Insured Persons,** which such **Insured Persons** become legally obligated to pay, resulting from a **Claim** first made during the **Policy Period** or Extended Reporting Period, if applicable, against the **Insured Persons** for a **Wrongful Act** by the **Insured Persons** which takes place during or prior to the **Policy Period,** except for **Loss** that the **Insured Entity** pays to or on behalf of the **Insured Persons** as indemnification.

(B) **Insured Entity Reimbursement**
The Insurer shall pay **Loss** on behalf of an **Insured Entity** for which such **Insured Entity** has, to the extent permitted or required by law, indemnified the

---

[4] The Policy also provides certain Elective Coverages, selected and provided to Somera, such as Employment Practices Liability and Third Party Liability, Insuring Agreement B; and Private Equity Fiduciary Liability Coverage Part, none of which are applicable to this matter given the allegations.

February 2, 2018
Page 4

**Insured Persons,** which such **Insured Persons** become otherwise legally obligated to pay, resulting from a **Claim** first made during the **Policy Period** or Extended Reporting Period, if applicable, against the **Insured Persons** for a **Wrongful Act** by the **Insured Persons** which takes place during or prior to the **Policy Period.**

(C) **Insured Entity Liability**

The Insurer shall pay **Loss** on behalf of an **Insured Entity,** which such **Insured Entity** becomes legally obligated to pay, resulting from a **Claim** first made during the **Policy Period** or Extended Reported Period, if applicable, against such **Insured Entity** for a **Wrongful Act** by the **Insured Entity** which takes place during or prior to the **Policy Period.**

In addition, Section III, Outside Directorship Liability, of the PEFM&P Coverage Part provides, in relevant part:

(A) **Portfolio Company Capacity Outside Directorship Liability**

Subject to the terms, conditions, definitions and exclusions applicable to this Coverage Part, coverage is afforded for a **Wrongful Act** by the **Insured Persons** which takes place while such person was or is serving in a **Portfolio Company Capacity** provided that as of the date such **Insured Person** first began or begins serving in such **Portfolio Company Capacity,** he or she was not aware of any facts or circumstances that could reasonably be expected to give rise to a **Claim** against an **Insured Person** for such service. Any such coverage shall be specifically excess of, and will not contribute with, any **Portfolio Company Indemnification and Insurance** and the Portfolio Company Outside Directorship Liability Retention in Item 5 of the Declarations. However, **Wrongful Acts** that occur after such **Insured Person** ceases serving in such **Portfolio Company Capacity** shall not be covered hereunder.

## C.  COVERAGE ANALYSIS

Twin City recognizes that the allegations in the FAC have not been proven and you should not interpret the following discussion as a suggestion by us that any of the allegations have any legal or factual merit. The following coverage analysis is based only upon the unsubstantiated allegations against the **Insureds** and is not intended to be exhaustive or exclusive. Based upon the information currently available to Twin City, the Policy affords no coverage for this matter for the following reasons:

First, Section IV. of the PEFM&P Coverage Part, Exclusions Applicable to All Insuring Agreements, B, Exclusions without Exceptions, as amended by Endorsement No.3, provides that the Insurer shall not pay **Loss** in connection with any **Claim**:

February 2, 2018
Page 5

> based upon, arising from, or in any way related to an **Insured** engaging in business relating to real property management, including, without limitation, engaging in any activities in the capacity of, giving advice in connection with or rendering or failing to render professional services as a property manager, real estate broker, or advisor in connection with the management of real property.

Here, the allegations of the FAC are based upon, arise from and directly relate to Somera's business of managing the two hotels. In its role as supervisor and manager of the hotels, Somera is alleged to have had Plaintiff perform work and failed to pay Plaintiff for same, despite repeated requests for payment. Moreover, Plaintiff alleges that Somera failed to "diligently pursue the payment of the Project Management Fees and Developer Services Fees due to Postcard", as contemplated by the Pismo Beach Agreement. As the **Claim** is based upon and arises out of allegations of professional services there is no coverage for this matter pursuant to the aforementioned Policy provision either for Somera or Mr. Brown.

Second, we also draw your attention to Section V., of PEFM&P Coverage Part, Exclusions Applicable to Insuring Agreement (C), as amended by Endorsement No. 6; the Twin City shall not pay **Loss** under Insuring Agreement (C):

> Pursuant to Section V., ADVANCEMENT AND ALLOCATION OF DEFENSE COSTS, and Section VI., ALLOCATION OF DAMAGES, of the Common Terms and Conditions, the Insurer shall not pay **Loss** under Insuring Agreement (C) in connection with any **Claim** based upon, arising from, or in any way related to any actual or alleged breach of contract or agreement other than that portion of such **Loss** which would have attached even in the absence of such contract or agreement, or that directly results from:
>
> **(A)** the organizational, management, monitoring or advisory documents of an **Insured Entity**, including but not limited to, a partnership agreement, limited partnership agreement, operating agreement, limited liability company agreement, other advisory, monitoring and/or management agreement or subscription agreement);
>
> **(B)** a contract for **Professional Services**, or

Here, Plaintiff alleges that Somera has breached its contracts (verbal and written) with Plaintiff. As the **Claim** against Somera is also based upon, arises from and alleges breach of contract(s) or agreement(s), there is no coverage for Somera based on the aforementioned Policy language. We note that subparts A and B of the exclusion also apply in this instance as Somera manages SCM Pismo Pier Partners, LLC and SCM Avila Beach Partners, LLC and Plaintiff seeks to enforce its rights pursuant to the limited partnership agreement and/or operating agreements for these entities; and which also appears to trigger subpart B of the exclusion (a contract for **Professional Services**).

## D. **RESERVATION OF RIGHTS**

Because the Complaint is fully excluded from coverage for the reasons discussed above, we have not sought to set out herein all potential coverage issues and defenses. Twin City expressly reserves all rights available under the Policy, at law and in equity, whether or not specifically referenced herein, including but not limited to the right to deny coverage upon any additional terms, conditions, exclusions, endorsements and other provisions of the Policy, including statements, declarations, and omissions made in connection with the application(s) therefore, as may be found to be applicable. No subsequent action, if any, that may be taken by Twin City is to be construed as a waiver of any position set forth in this letter or any rights otherwise available

February 2, 2018
Page 6

to it pursuant to the Policy, at law and/or in equity. Twin City recognizes that the **Insureds** similarly reserve their rights.

While we hope you would first contact us if you have any concerns regarding Hartford's coverage position, you may be able to have this matter reviewed by the California Department of Insurance.  Its contact information is:

> State of California Department of Insurance
> Claims Services Bureau
> 300 South Spring Street, 11th Floor, South Tower
> Los Angeles, CA 90013
> 800-927-4357 (inside CA)
> 213-897-8921 (outside CA)

Please do not hesitate to call me, should you have any questions or wish to discuss this matter further.  My contact information is as follows:

> Vullnet Kolari, Esq.
> The Hartford
> 277 Park Avenue, 16th Floor
> New York, NY 10172
> Phone: 212-277-0442
> Email: Vullnet.Kolari@thehartford.com

Very truly yours,
**TWIN CITY FIRE INSURANCE COMPANY**

By:

Vullnet Kolari, Esq.

cc:
> Christine DeLeon cdeleon@sullicurt.com
> Julie Lubin jlubin@someracapital.com

EXHIBIT C

# KASOWITZ BENSON TORRES LLP

2029 CENTURY PARK EAST

SUITE 2000

LOS ANGELES, CALIFORNIA 90067

(424) 288-7900

FAX: (424) 288-7901

JEROLD OSHINSKY
DIRECT DIAL: (424) 288-7903
DIRECT FAX: (310) 943-3579
JOSHINSKY@KASOWITZ.COM

ATLANTA
HOUSTON
MIAMI
NEW YORK
NEWARK
SAN FRANCISCO
SILICON VALLEY
WASHINGTON DC

May 11, 2018

Vullnet Kolari, Esq.
The Hartford
277 Park Avenue, 16th Floor
New York, NY  10172
Vullnet.Kolari@thehartford.com

Re:   Policyholder:   Somera Capital Management, LLC
      Insurer:        Twin City Insurance Company
      Policy:         The Hartford Private Equity Choice Policy No. 72 DB 0240050-17
      Matter:         *Postcard Properties, LLC v. Somera Capital Management, LLC
                      and David A. Brown* (Santa Barbara Superior No. 2017CV031974)
                      (the "*Postcard Properties*" Lawsuit)
      Ref. No.:       17416872

Dear Mr. Kolari:

        We are coverage counsel for Somera Capital Management, LLC ("Somera") and David A. Brown.  We write to respond to your February 2, 2018, correspondence denying coverage for the *Postcard Properties* lawsuit based solely on two inapplicable exclusions set forth in 1) Endorsement No. 3 to the Policy and 2) Section V of the Private Equity Fund Management and Professional Liability Coverage Part of the Policy.  As described in greater detail below, neither exclusion applies to preclude coverage for defense costs, or liability, if any.  In providing this response, we do not set out all our disagreements with the "facts"[1] as stated in your letter, but will

---

[1] In fact, we note that many of these "facts" are simply wrong.  For instance, this lawsuit was not filed in the "District court, City and County of Denver, Colorado."  Similarly, the parties do not each have a 50% ownership in Pismo Pier LLC.

# KASOWITZ BENSON TORRES LLP

Vullnet Kolari, Esq.
The Hartford
May 11, 2018
Page 2

focus instead on why your rationale for denying coverage is not supported by the policy language or the complaint.

I.  **The Exclusion Set Forth in Endorsement No. 3 Does Not Apply to the *Postcard Properties* Lawsuit**

Endorsement No. 3 recites that it excludes coverage for Loss in connection with a Claim that is:

> Based upon, arising from, or in any way related to an Insured engaging in business relating to real property management, including, without limitation, engaging in any activities in the capacity of, giving advice in connection with or rendering or failing to render professional services as a property manager, real estate broker, or advisor in connection with the management of real property.

This exclusion plainly does not apply because the *Postcard Properties* lawsuit does not even allege property management services of any kind.  Rather, the Hartford appears to improperly conflate *property management services* (which are the subject of Endorsement No. 3) with *construction project management services* (which are the subject of the *Postcard Properties* lawsuit and are nowhere excluded in the Policy).  However, the two types of services are unrelated.

While the term *property management* is not defined in the Policy, the term is commonly understood to include helping owners advertise rental properties, qualify tenants, collect rent, and maintain properties.  Indeed, other insurance policies have defined the phrase in terms of "physical maintenance of property," "solicitation, evaluation, and securing of tenants," "management of tenant relations, collection of rent and processing evictions," and "personnel administration and record keeping, including tax filings, in connection with a managed property."  *See, e.g., Vierramoore, Inc. v. Continental Casualty Co.*, No. 940 F.Supp.2d 1270, 1273 (E.D. Cal. 2013).  Importantly, these policies have distinguished *property management* from *construction project management*.  *Id.*

By contrast, *construction project management* entails ensuring construction and development is on-time and on-budget.  Before construction begins, the project manager may be responsible for site selection and due diligence (as Plaintiff Postcard Properties claims to have done), securing zoning and entitlements, selecting project team members, and creating a schedule and budget.  Once the project is underway, the project manager is the owner's representative on-site, scheduling contractors, processing payments and managing change orders.  Indeed, other policies have defined construction project management in these terms.  *See, e.g., Vierramore*, No. 2:12-cv-01926-MCE-EFB, Dkt. No. 19-1 (E.D. Cal. Dec. 14, 2012) (contrasting "property manager services" with "construction manager" services, as the latter entails "services in connection in the construction, reconstruction and renovation of real property," including

K A S O W I T Z   B E N S O N   T O R R E S   LLP

Vullnet Kolari, Esq.
The Hartford
May 11, 2018
Page 3

"management of facility construction, reconstruction and renovation plans," "development and management of construction, reconstruction and renovation contracts and subcontracts," and "development of loss control and risk management plans in connection with the construction, reconstruction or renovation").

The Complaint plainly does not relate to *property management*, but rather to *construction project management*: Postcard Properties alleges that it is owed fees as the party allegedly "responsible for the project management and developer services *required to entitle and construct [a] hotel*." ¶ 10. Specifically, the Complaint alleges that Postcard Properties' *construction project management* services included:

> Identifying third party project consultants and vendors, negotiating and managing their contracts, coordinating their work efforts with other project team members, and managing their efforts consistent with the project schedule, budget and quality standards; developing the predevelopment project budget and scheduling and managing the resultant work plan; interfacing with numerous public agencies, utility districts and vendors, and other project stakeholders to advance the planning effort and entitlement strategy; creating sustainable relationships with key governmental officials so as to impact positively entitlement outcomes; and keeping the Somera Defendants fully informed . . . on all significant developments through weekly meetings and otherwise.

*See* ¶¶ 11, 28. These services are not *property management* services as that term is commonly understood. That they are not *property management* services is further demonstrated by the fact that Endorsement No. 3 describes *property management* services as often being performed by a "real estate broker." Here, it is clear that none of the actions described in the Complaint would ordinarily be performed by a real estate broker. Because the Complaint contains no allegations relating to *property management*, the exclusion set forth in Endorsement No. 3 does not apply.

## II.    The Exclusion Set Forth In Section V of the Private Equity Fund Management and Professional Liability Coverage Part Does Not Apply to the *Postcard Properties* Lawsuit

Neither does the exclusion set forth in Section V apply.  Section V provides in relevant part that:

> Pursuant to Section V., ADVANCEMENT AND ALLOCATION OF DEFENSE COSTS, and Section VI., ALLOCATION OF DAMAGES, of the Common Terms and Conditions, the Insurer shall not pay Loss under Insuring Agreement (C) in connection with any Claim based upon, arising from, or in any way related to any actual or alleged breach of contract or agreement *other than that portion of such*

K A S O W I T Z   B E N S O N   T O R R E S   LLP

Vullnet Kolari, Esq.
The Hartford
May 11, 2018
Page 4

> ***Loss which would have attached even in the absence of such contract or agreement***, or that directly results from:
>
> (A) the organizational, management, monitoring or advisory documents of an Insured Entity, including but not limited to, a partnership agreement, limited partnership agreement, operating agreement, limited liability company agreement, other advisory, monitoring and/or management agreement or subscription agreement;
>
> (B) a contract for Professional Services, . . .

As a preliminary matter, Section V expressly states that it only applies to Coverage Part C, "Insured Entity Liability" coverage for Somera as an entity, not Coverage Parts A and B, which cover "Insured Person" liability and thus protect Mr. Brown. Because by its express terms Section V cannot apply to Mr. Brown, the Hartford is plainly mistaken in applying this exclusion to deny him coverage.

Neither does Section V apply to the Somera entity. Section V's exclusion for contractual liability has an important exception: the exclusion does <u>not</u> apply to "such Loss which would have attached even in the absence of such contract or agreement." The Hartford completely ignores that the Complaint alleges several "common counts" that do not sound in contract. Indeed, to recover under a common count, "a party need not prove the existence of a contract," but merely must show "the circumstances were such that the services were rendered under some understanding or expectation of both parties that compensation therefor was to be made." *E.J. Franks Construction, Inc. v. Sahota*, 226 Cal.App.4th 1123, 1127-28 (2014). By pleading common counts, Plaintiff asserts that liability would attach even in the absence of a written or oral contract. Thus, Section V does not apply.[2]

\*     \*     \*

In conclusion, we request that the Hartford immediately withdraw its blatantly incorrect denial of coverage. It is abundantly clear that the facts alleged in the complaint potentially give rise to coverage and therefore require the Hartford to defend Somera and Mr. Brown, including by

---

[2] In any event, the contract claims do not "***directly result***" from a "limited partnership agreement" or a "contract for Professional Services" as the Hartford claims. The Hartford cites the SCM Pismo Pier Partners, LLC and SCM Avila Beach Partners, LLC partnership agreements as the basis for its coverage denial, ignoring that the breach of contract causes of action do not "directly result from" those agreements, but rather purportedly from the January 31, 2014 "Pismo Beach Project Agreement" and a separate oral agreement. Neither do the contract claims "directly result from . . . a contract for Professional Services," which are defined as professional services "provided by an Insured." Because Plaintiff Postcard Properties does not allege that Somera breached a contract *for Somera provide professional services*, this exclusionary language is inapplicable for this further reason, as well.

K A S O W I T Z   B E N S O N   T O R R E S   LLP

Vullnet Kolari, Esq.
The Hartford
May 11, 2018
Page 5

advancing defense fees and costs.  *See, e.g., Okada v. MGIC Indem. Corp.*, 823 F.2d 276, 283 (finding duty to advance defense costs where "the underlying lawsuits alleged several distinct acts potentially covered by the MGIC policy"); *Acacia Research Corp. v. National Union Fire Ins. Co. of Pittsburgh, Pa.*, Case No. SACV 05-501 PSG (MLGx), 2008 WL 4179206, *11 ("Given the broad scope of Defendant's duty to advance defense costs, Defendant was required to advance defense costs for potentially covered claims.").  We request a prompt meeting or conference call to discuss these issues, and to seek Hartford's agreement to pay for the defense of the Postcard Properties case.  Please respond within fifteen (15) days, as required by California Fair Claims Settlement Practice Regulation Section 2695.5.

Very truly yours,

Jerold Oshinsky

cc:  David L. Cousineau, Esq.

EXHIBIT D

June 19, 2018



**VIA E-MAIL ONLY**
jOshinsky@kasowitz.com

**Vullnet Kolari, Esq.**
Claims Consultant
Telephone (212) 277-0442
Facsimile (844) 823-3673
vullnet.kolari@thehartford.com

Mr. Jerold Oshinsky
Kasowitz, Benson, Torres, LLP
2029 Century Park East
Suite 2000
Los Angeles, CA 90067

|        |              |                                          |
|--------|--------------|------------------------------------------|
| **Re:** | **Policyholder:** | **Somera Capital Management, LLC** |
|        | **Insurer:**     | **Twin City Insurance Company**          |
|        | **Policy:**      | **The Hartford Private Equity Choice Policy** |
|        | **Policy No:**   | **72 DB 0240050-17**                     |
|        | **Matter:**      | ***Postcard Properties, LLC***           |
|        | **Ref. No.:**    | **17416872**                             |

Dear Mr. Oshinsky:

As you know Hartford Financial Products is responsible for handling matters on behalf of Twin City Insurance Company ("Twin City") that are reported under The Hartford Private Equity Choice Policy No. 72 DB 0240050-17 ("Policy") issued to Somera Capital Management, LLC ("Somera"). This letter follows up on our prior communications, including our coverage denial letter of February 2, 2018 with respect to **Insureds**[1] Somera and David A. Brown and responds to your May 11, 2018 letter regarding the suit filed against Somera and Mr. Brown, titled _Postcard Properties, LLC v. Somera Capital Management, LLC and David A. Brown_, filed in the Superior Court, Santa Barbara County, California, Case No. 17CV04361 (the "Complaint").[2][3] **This confirms that Twin City withdraws its coverage denial as to Mr. Brown and acknowledges coverage for him in accordance with this reservation of rights.**

Of course, if you or the **Insureds** have any questions or comments regarding our coverage analysis, we would be happy to discuss further and we invite you to provide us with any additional materials or information for our consideration.

---

[1] Terms in bold, but not otherwise defined herein, have the meaning assigned to them in the Policy.

[2] On December 7, 2017, Twin City received a copy of the First Amended Complaint ("FAC"), submitted by Wendy D. Welkom of Cappello & Noel, LLP. Per Section III of the Common Terms and Conditions, Claims Made and Interrelationship of Claims, the Complaint and the First Amended Complaint are deemed to be a single **Claim** made no later than October 5, 2017. Twin City, however, specifically reserves its rights to interrelate this matter to an earlier **Claim** should it later be determined that a **Claim** was made prior to October 5, 2017.

[3] For ease of reference, all references in this letter to "Complaint" are based on the allegations in the FAC.

**Claims Department**
**Hartford Financial Products**
**277 Park Avenue**
**16th Floor**
**New York, NY 10172**

June 19, 2018
Ref. No. 17416872
Page **2** of **14**

### A.  Brief Alleged Facts

Plaintiff, Postcard Properties, LLC ("Postcard"), a purported project manager and developer, alleges it approached Somera with two separate opportunities to acquire land and build hotels located in Pismo Beach, California and Avila Beach, California, respectively.[4]

According to the Complaint, the parties allegedly agreed to build the first hotel in Pismo Beach, after Plaintiff first approached Somera in early 2012 for the opportunity and for which an oral agreement was not reduced in writing until January 31, 2014 (the "Agreement").  Per the verbal understanding, Postcard was to help Somera purchase the Pismo Beach Property; be the primary party responsible for the project management and development of the hotel, i.e., to "entitle and construct the hotel"; and for Plaintiff to share in the project management and developer services fees generated by the project.

According to the Agreement, the parties agreed to create an LLC, which ultimately was known as SCM Pismo Pier Partners, LLC ("Pismo Pier LLC"), with each party having 50% ownership in the LLC and Somera being the Managing Member[5].  The Agreement provides for a certain allocation and distribution of profits between Plaintiff and Somera, related to Pismo Pier LLC, specifically: (a) the Project Management and Developer Services Fees and Services between Somera and Plaintiff, which among other things, entitles Plaintiff to 65% of all Project Management Fees and Developer Services Fees paid on the project and (b) 35% of "Somera Defendants' interest in and to the Somera Defendants' Managing Member Subordinated Cash Flow and Profits Interest payments".[6]

Plaintiff alleges that Somera breached the Agreement by among other things, failing, within the last four years of filing of the Complaint, to secure payment of these fees and interest payments on behalf of Postcard.  Moreover, Plaintiff alleges that the defendants also became indebted to Postcard for damages as a result of "work, labor, services and materials" performed/provided at

---

[4] According to publicly available information, Plaintiff and Somera, as hotel development firms, launched two joint-ventures to acquire, develop and manage the hotels in these two locations.

[5] According to the Operating Agreement of SCM Pismo Pier Partners, LLC, Somera, is the Managing Member and owns 30% of the "Percentage Interests" in the company, while the remaining seventy percent (70%) is owned by others.  The Operating Agreement also states Somera will be paid certain fees, including "additional standard fees for entitling the hotel project, supervising construction and managing the hotel, including, without limitation, a development fee of three percent (3%)."  We also understand from attorney Wendy Welkom, Postcard has a .96% ownership interest in SCM Pismo Pier Partners, LLC, via its $149,380 contribution and a 1.23% ownership interest in SCM Avila Beach Partners, LLC via its $50,000 contribution.

[6] According to the January 31, 2014 Agreement, Somera is "contractually obligated" to pay Plaintiff within 30 days of receipt from SCM Pismo Pier Partners, LLC's "35% of [Somera's] interest in and to [Somera's] Managing Member Subordinated Cash Flow and Profits Interest payments" in SCM Pismo Pier Partners, LLC.  The Operating Agreement of Pismo Pier Partners, LLC indicates that Somera's ownership in the company is thirty-percent (30%).  Accordingly, it appears from the Agreements that Postcard is seeking 35% of Somera's "Subordinate Cash Flow and Profits Interest payments, from Somera's 30% interest in SCM Pismo Pier Partners, LLC.

June 19, 2018
Ref. No. 17416872
Page **3** of **14**

the request of Somera[7].  Lastly, Plaintiff also alleges that it has an ownership interest in Pismo Pier LLC, either through subsection 3 of the Agreement or via its investment in the company through its $149,380 capital contribution.

With regard to the Avila Beach project, as with the Pismo Beach project, Plaintiff alleges that the parties entered into a verbal agreement to build a hotel.  Specifically, Plaintiff alleges that in February of 2014 Mr. Brown, "on behalf of the Somera Defendants" verbally agreed to build the second hotel under the same basis as the parties had agreed for the Pismo Beach Project.  Based on the parties' prior agreements and acts, Somera created SCM Avila Beach Partners, LLC ("Avila Beach"), with Plaintiff investing $50,000.

Plaintiff alleges Somera breached its verbal agreement for the Avila Beach project by terminating it from the project and as such "preventing" it from continuing to provide project management and developer services, causing it damages in excess of $1M.  As with the Pismo Beach project, Plaintiff alleges it performed "work, labor, services and materials rendered" at the request of Somera and as such it is owed $500,000.  Plaintiff also alleges that Somera's *modus operandi* is to induce it to perform substantial work before the agreements could be reduced to writing and that such conduct is willful and oppressive thus entitling Plaintiff to "exemplary and punitive damages".

For causes of action, Plaintiff asserts breach of oral and written contracts and Fraud.  Plaintiff also seeks declaratory relief from the court, seeking a determination of the ownership interest in the hotels and rights of "managing member subordinated cash flow and profits interest" for each entity.

### B.   The Policy

The Policy is a claims made and reported policy issued to Somera for the **Policy Period** February 21, 2017 to February 21, 2018.  In relevant part, the Policy affords coverage under a Private Equity Fund Management and Professional Liability Coverage Part (the "PEFM&P Coverage Part")[8].  The Combined Aggregate Limit of Liability under the Policy is $2 million in the aggregate for all Liability Coverage Parts.  We have reviewed this matter and based on the allegations only the PEFM&P Coverage Part appears to be applicable.  This coverage part has a Limit of Liability of $2 million, subject to a $250,000 Retention.  The Limit of Liability includes and is depleted by **Defense Costs**.

The PEFM&P Coverage Part affords coverage pursuant to the following Insuring Agreements:

(A) **Insured Person Liability**

---

[7] Purportedly, the "work, labor, services and materials" referenced in the FAC relate to Plaintiff's work as the Project Manager and Developer of the hotel.
[8] The Policy also provides certain Elective Coverages, selected and provided to Somera, such as Employment Practices Liability and Third Party Liability, Insuring Agreement B; and Private Equity Fiduciary Liability Coverage Part, none of which are applicable to this matter given the allegations.

June 19, 2018
Ref. No. 17416872
Page **4** of **14**

The Insurer shall pay **Loss** on behalf of the **Insured Persons,** which such **Insured Persons** become legally obligated to pay, resulting from a **Claim** first made during the **Policy Period** or Extended Reporting Period, if applicable, against the **Insured Persons** for a **Wrongful Act** by the **Insured Persons** which takes place during or prior to the **Policy Period,** except for **Loss** that the **Insured Entity** pays to or on behalf of the **Insured Persons** as indemnification.

(B) **Insured Entity Reimbursement**

The Insurer shall pay **Loss** on behalf of an **Insured Entity** for which such **Insured Entity** has, to the extent permitted or required by law, indemnified the **Insured Persons,** which such **Insured Persons** become otherwise legally obligated to pay, resulting from a **Claim** first made during the **Policy Period** or Extended Reporting Period, if applicable, against the **Insured Persons** for a **Wrongful Act** by the **Insured Persons** which takes place during or prior to the **Policy Period.**

(C) **Insured Entity Liability**

The Insurer shall pay **Loss** on behalf of an **Insured Entity,** which such **Insured Entity** becomes legally obligated to pay, resulting from a **Claim** first made during the **Policy Period** or Extended Reported Period, if applicable, against such **Insured Entity** for a **Wrongful Act** by the **Insured Entity** which takes place during or prior to the **Policy Period.**

## C.  COVERAGE ANALYSIS

Twin City recognizes that the allegations in the Complaint have not been proven and by referencing them we make no suggestion that they have any legal or factual merit.  The following coverage analysis is based only upon the unsubstantiated allegations against the **Insureds** and is not intended to be exhaustive or exclusive.

First, we also draw your attention to Section V, of the PEFM&P Coverage Part, Exclusions Applicable to Insuring Agreement (C), as amended by Endorsement No. 8, which states that Twin City shall not pay **Loss** under Insuring Agreement (C):

in connection with any **Claim** based upon, arising from, or in any way related to any actual or alleged breach of contract or agreement other than that portion of such **Loss** which would have attached even in the absence of such contract or agreement, or that directly results from:

(A) the organizational, management, monitoring or advisory documents of an **Insured Entity**, including but not limited to, a partnership agreement, limited partnership agreement, operating agreement, limited liability company agreement, other advisory, monitoring and/or management agreement or subscription agreement); and

June 19, 2018
Ref. No. 17416872
Page **5** of **14**

           **(B)** the rendering of or failure to render **Professional Services**.

Initially, Section V. of the PEFM&P Coverage Part, Exclusions Applicable to Insuring Agreement (C), as amended, applies only to Somera.  In our letter dated February 2, Twin City did not intend to imply that the foregoing contract exclusion applied to Mr. Brown (in fact, we indicated in our February 2 letter that the exclusion applied to Somera.  For emphasis, this confirms our agreement that such exclusion does not apply to Mr. Brown.

As to Somera, the **Claim** (i.e., the Complaint) is certainly based upon, arises from and is related to an "actual or alleged breach of contract(s) or agreement(s)" between Plaintiff and Somera.  Further, and in response to your argument that the scope of the contract exclusion is somehow limited to "direct" contracts, to the contrary the plain language of the exclusion – and here we draw your specific attention to its broad preamble – states that "Twin City shall not pay **Loss** under Insuring Agreement (C) …in connection with any **Claim** based upon, arising from, or in any way related to any actual or alleged breach of contract or agreement…"  The applicability of this entity exclusion applies to "*any* **Claim"** for alleged breach of contract or agreement and does not narrow the exclusion to instances of "direct" contracts as you suggest.

More specifically, in the Complaint, Postcard alleges that the parties' entered into an agreement: to purchase the Pismo Beach Property; that Postcard was supposed to be the primary party responsible for the project management and development of the hotel, i.e., to "entitle and construct the hotel"; and, in consideration thereof, Plaintiff would share in the project management and developer services fees generated by the project.  Similarly, with respect to the Avila Beach project, the parties further agreed, verbally, that they would develop this second project on the same terms as Pismo Beach.  That the **Claim** brought by Plaintiff is based upon, arises from or relates to the parties' Agreement(s) (written or verbal) is plain on the face of the extant pleading.

California Courts have broadly construed similar breach of contract exclusions.  For example, in Oak Park Calabasas Condo. Assn. v. State Farm Fire & Casualty Co.,137 Cal. App. 4th 557 (Cal. Ct. App. 2006), the court held that a D&O policy was not designed and could not be used for the insured's contractual obligations or situations where an insured intentionally attempts to shift the burden for a loss to its insurer by refusing to pay a voluntary obligation.  Similarly, in August Entertainment, Inc. v. Philadelphia Indem. Ins. Co., 52 Cal. Rptr. 3d 908 (Cal. Ct. App. Jan. 8, 2007), the court held that no coverage was available for a breach of contract claim based on both a policy exclusion and public policy. The court further recognized that a company's decision not to honor a contract was not a loss resulting from a wrongful act within the meaning of the policy.

Your letter of May 11 argues that the contract exclusion would not apply, even to Somera, because certain "Common Counts" alleged in the Complaint may have arisen in the absence of Somera's alleged contracts or agreements.  We disagree both as to your reading of the pleading and applicable case law.  To begin with, each of the abbreviated "Common Counts" incorporate, by reference, the preceding breach of contract allegations both as regards the Pismo Beach

June 19, 2018
Ref. No. 17416872
Page **6** of **14**

Project and Avila Beach Project.  Furthermore, the alleged "indebtedness" to which Postcard refers in the Common Counts is attributed to the "work, labor and services" Postcard provided in connection with each project -- payment for which Somera "promised to obtain".   The allegations of the Common Counts appear to substantially overlap with and arise from the "project management and developer services" for which Somera allegedly promised to secure payment in the breach of contract counts.   While the Common Counts are tersely drafted tag-alongs to the more detailed breach of contract counts, it is clear that the alleged liability of Somera arises from these purported agreements.

Relevant insurance coverage cases consistently have interpreted broad form contract exclusions to also apply to related counts, even those that do not expressly sound in contract.   For example, in *Radianse, Inc. v. Twin City Fire Ins. Co.*, 2010 WL 3928620 (D. Mass. Oct. 6, 2010), the United States District Court for the District of Massachusetts, applying Massachusetts law, held that an insurer does not have a duty to defend claims for tortious interference with contractual relations and inducement of breach of contract pursuant to an exclusion for any claim "based upon, arising from, or in any way related to any liability under any contract or agreement."  In so holding, the court rejected arguments that the exclusion did not apply because the insured's liability arose solely out of tort law and that the liability could have occurred absent the contract.

Similarly, in <u>Spirtas Co. v. Federal Ins. Co.</u>, 481 F. Supp. 2d 993 (E.D. Mo. 2007), the court held that a breach of contract exclusion applied to claims for breach of trust, conversion, and unjust enrichment where all of those claims "arose from" the contract.   That decision was affirmed on appeal in <u>Spirtas Co. v. Federal Ins. Co.</u>, 2008 U.S. App. LEXIS 6830 (8th Cir. Apr. 1, 2008). The court of appeals recognized that the term "arising from" had the same broad meaning as "arising out of" and concluded that all of the claims brought against the insured arose from the contractual relationship between the parties, even though some of the claims sounded in tort.

In a more recent example, the United States Court of Appeals for the Seventh Circuit affirmed a trial court's ruling that, under Illinois law, a contract exclusion applied to preclude coverage for a claim stemming from an insured's failure to pay its contractor because all of the claimant's causes of action arose from its contract with the insured. See, <u>*Altom Transp., Inc. v. Westchester Fire Ins. Co.*</u>, 2016 WL 2956834 (7th Cir. May 20, 2016).

The case arose when the insured sought coverage for defense costs and a potential settlement in connection with a claim brought by one of the insured's contractors for failure to pay for his services.   The contractor asserted various causes of action against the insured, including violation of statute, breach of contract, and unjust enrichment.   The insurer denied coverage for the claim based, *inter alia*, on a breach of contract exclusion.

In affirming the district court's ruling in favor of the carrier, the appellate court explained that the "language of the policy is King," and, as such, coverage for claims stemming from the insured's contract with third parties was "unambiguously exclude[d]."   According to the court, the claimant's allegations against the insured, regardless of the legal theory asserted, "rest

June 19, 2018
Ref. No. 17416872
Page **7** of **14**

fundamentally on the lease agreement under which [the claimant] was performing." As a result, the policy's contract exclusion applied. The appellate court further determined that the exception to the exclusion for claims the insured would have been liable for in the absence of a contract did not apply because the claims asserted by the claimant all depended on the content of the agreement.

Here, but for the parties initial agreement to engage in the projects, Plaintiff would not have suffered any of the alleged damages, whether it is (a) the claimed money owed under Subsection 1 of the Agreement; (b) the money and/or interest allegedly owed under Subsection 3 of the Agreement; or (c) the work performed by Postcard as the Project Manager or Developer of the hotels. Accordingly, Twin City shall not pay **Loss** of the **Insured Entity** (Somera) that arises from or is based upon any actual or alleged breach of contract or agreement, pursuant to Section V. of the PEFM&P Coverage Part, as amended.

We have reviewed the case you cite in support of not applying the contract exclusion to Somera, E.J. Franks Construction, Inc. v. Sahota, 226 Cal. App. 4th 1123, 1127-28 (2014), and do not find it persuasive. Sahota stands for the proposition that California Business and Professions Code section 7031 would not bar a contractor corporation from pursuing quantum meruit damages because the predecessor sole proprietorship underwent a change in business entity status. We initially note that, unlike the cases cited above, the Sahota case is not an insurance coverage related decision regarding the scope of a contract exclusion in a professional liability policy. While we take no issue with the theoretical proposition that a quantum meruit claim may lie in the absence of an alleged breach of contract under California Business and Professions Code section 7031, this has limited immediate relevance. Rather, the issue is whether, under a professional liability policy that includes a broad form entity contract exclusion, breach of contract counts and other purportedly non-contract counts that arise therefrom are excluded. In our view, both the plain language of the text of the exclusion and directly relevant case law strongly support the application of the exclusion to Somera.

Accordingly, Twin City respectfully reiterates its denial of coverage, to Somera alone, based upon the contract exclusion and reserves all rights accordingly.

Second, under the PEFM&P Coverage Part, all Insuring Agreements require that a **Claim** first be made against the **Insureds** *during* the **Policy Period,** which pursuant to Item 3 of the Declarations Page is February 21, 2017 to February 21, 2018. Plaintiff alleges that "[w]ithin last four years" Somera defendants became indebted to Postcard in excess of $252,000 in connection with Pismo Beach Project and in excess of $500,000 in connection with the Avila Beach Project, but were not paid despite repeated demands. Please provide Twin City with copies of any and all prior demands made by Plaintiff. In the meantime, Twin City reserves its rights to deny coverage for this matter in the event a **Claim** is *first* made prior to the inception of the **Policy Period.**

June 19, 2018
Ref. No. 17416872
Page **8** of **14**

Third, Section II.B. DEFINITIONS, as amended by Endorsement No. 8 & 11 of the Policy, provides in relevant part, that **Damages** shall not include:

- **(i)** taxes, fines or penalties, other than:
  - **(b)** civil fines or penalties pursuant to Section 2(g)2(B) of the Foreign Corrupt Practices Act (15 U.S.C. § 78dd-2(g)2(B)), or Section 11(1)(a) of the United Kingdom Bribery Act of 2010, Chapter 23, where insurable by law and otherwise covered under this Policy; and
  - **(c)** **Excessive or Unnecessary Taxes** imposed on a customer, client or investor of an **Insured Entity** so long as such **Excessive or Unnecessary Taxes** are part of a settlement or judgment against the **Insured** for which such **Insured** is legally liable;
- **(ii)** non-monetary relief;
- **(iii)** "short-swing" profits made from the purchase or sale by an **Insured** of securities of an **Insured Entity** or a **Portfolio Company** within the meaning of Section 16(b) of the Securities Exchange Act of 1934;
- **(iv)** any principal, interest, fees or other monies representing an obligation, whether characterized as monies committed, accrued, due or otherwise owed, as a result of any actual or proposed (1) investment in, capital contribution or loan to, a **Portfolio Company** or prospective **Portfolio Company**; or (2) acquisition or sale of any ownership interest in a **Portfolio Company** or its assets; provided however, this limitation on **Damages** shall not apply to consequential damages flowing from (iv)(1) or (iv)(2) of this definition;
- **(v)** costs associated with providing any accommodations required by the Americans With Disabilities Act or any similar law; or
- **(vi)** amounts for matters uninsurable pursuant to applicable law, provided, however, that the Insurer shall not assert that **Section 11 or 12 Damages** constitute uninsurable loss, and subject to all other terms, conditions and exclusions of this Policy, shall treat such actual or alleged violations of Section 11, 12, and 15 of the Securities Act of 1933, as amended, as **Wrongful Acts** covered under this Policy pursuant to the laws of any applicable jurisdiction that does not prohibit coverage for such **Section 11 or 12 Damages**.
- **(vii)** Punitive damages are not insurable in California (See, Endorsement No. 11).

Here, Plaintiff seeks, among other things, non-monetary relief, disgorgement and/or restitution and punitive damages. Such disgorgement or restitution is uninsurable as a matter of law. *See* Level 3 Communications, Inc. v. Federal Ins. Co., 272 F.3d 908, 911 (7th Cir. 2001) ("An insured incurs no loss within the meaning of the insurance contract by being compelled to return property.'); St. Paul Mercury Ins. Co. v. Foster, 268 F. Supp. 2d 1035 (C.D. Ill. 2003) (holding that restitutionary relief, which is relief intended to divest the insured of the net benefit of an unlawful act or the restoration of an ill-gotten gain, is uninsurable). Additionally, we note that

June 19, 2018
Ref. No. 17416872
Page **9** of **14**

SCM Pismo Pier Partners, LLC's appears to meet the definition of **Portfolio Company**, and as such, Twin City specifically reserves its rights with respect to subsections (iv) above. Accordingly, it appears that most if not all, of the recovery sought by the Plaintiff falls outside the definition of **Damages**. As such, Twin City shall not be liable for any such amounts or for any other damage or relief that falls outside the definition of **Damages**.

Fourth, Section IV. of the PEFM&P Coverage Part, Exclusions Applicable to All Insuring Agreements, B, Exclusions without Exceptions, as amended by Endorsement No.3, provides that the Insurer shall not pay **Loss** in connection with any **Claim**:

> based upon, arising from, or in any way related to an **Insured** engaging in business relating to real property management, including, without limitation, engaging in any activities in the capacity of, giving advice in connection with or rendering or failing to render professional services as a property manager, real estate broker, or advisor in connection with the management of real property.

The Operating Agreement for Pismo SCM Pismo Pier Partners, LLC's indicates that the purpose of the company is to "develop, construct, own and manage the hotel on the Property", with Somera as the Managing Member. To extent that the Complaint is based upon, arises from or in any way relates to an **Insured** engaging in business relating to real property management, Twin City reserves its rights pursuant to aforementioned Policy provision.

Fifth, Section IV.D.2. of the PEFM&P Coverage Part, Exclusions Applicable to **Damages** but not **Defense Costs**, as amended by Endorsement No. 8, provides that the Insurer shall not pay **Loss** in connection with any **Claim:**

> **(2)** based upon arising from, or in any way related to the gaining of any personal profit, remuneration or financial advantage to which such **Insured** is not legally entitled if a final and non-appealable adjudication in the underlying action or proceeding (other than a declaratory action or proceeding brought by or against the Insurer) establishes such gain; provided, however, that this exclusion shall not apply to **Section, 11 or 12 Damages**[9];

Here, Plaintiff alleges it provided work or services for which it has not been compensated. Twin City shall not be liable for any **Loss** to the extent that a judgment or other final adjudication establishes such profit, remuneration or advantage to which the **Insured** is not legally entitled.

---

[9] Endorsement No. 9, deletes and replaces Section II.M, Definition of **Section 11 and 12 Damages,** to mean the portion of any judgment or settlement of a **Claim** allocable to alleged violations of Section 11, 12 and 15 of the Securities Act of 1933, as amended, arising from an offering of securities of a **Portfolio Company.**

June 19, 2018
Ref. No. 17416872
Page **10** of **14**

Sixth, Section IV.D.3. of the PEFM&P Coverage Part, Exclusions Applicable to **Damages** but not **Defense Costs**, as amended by Endorsement No. 8, provides that the Insurer shall not pay **Loss** in connection with any **Claim:**

> **(3)** based upon arising from, or in any way related to any willful violation of any statute or regulation or deliberately fraudulent act or omission by an **Insured** if a final and non-appealable adjudication in the underlying action or proceeding (other than a declaratory action or proceeding brought by or against the Insurer) establishes such an act or omission.
>
> For the purpose of determining the applicability of exclusion (D)(3) above, solely with regard to acts or omissions which are treated as a criminal violation in a foreign jurisdiction that are not treated as a criminal violation in the United States of America, the imposition of a criminal fine or other criminal sanction in such foreign jurisdiction will not, by itself, be conclusive proof that a deliberately criminal act occurred.

Twin City reserves its rights under Section IV.D.3., as amended, to the extent that a judgment or final adjudication establishes such conduct.

Seventh, pursuant to Section VI., of Common Terms and Conditions, as amended by Endorsement No. 9, which provides in relevant part:

> If a **Claim** results in a settlement or judgment that includes both **Damages** and amounts that do not constitute **Damages**, then the **Insureds** and the **Insurer** agree to use their best efforts to fairly and reasonably allocate the amount of such settlement or judgment on the basis of the relative legal exposures to the covered damages and the noncovered amounts.

As discussed above, coverage for this matter may be subject to certain limitations and exclusions and accordingly, Twin City reserves its rights to allocate pursuant to Section VI.

Eighth, Section XII.C. of the Policy, Common Terms and Conditions, as amended by Endorsement No. 9, provides if **Loss** arising from any **Claim** is insured under any other valid and collectible insurance policy or policies, including, but not limited to, any insurance under which there is a duty to defend and/or whether or not such insurance is issued to or for the benefit of the **Insured Entity, Insured Persons** (other than in the event of personal umbrella or personal directorship liability insurance) or any **Real Estate**, then this Policy shall apply only in excess of the amount of any deductibles, retentions and limits of liability under such other policy or policies, whether such other policy or policies are stated to be primary, contributory, excess, contingent or otherwise, unless such other insurance is written specifically excess of this Policy by reference in such other policy or policies to this Policy's Policy Number.  Please advise what other insurance may be available to the **Insureds** for this matter, including but not limited to any insurance issued to SCM Pismo Pier Partners, LLC, and SCM Avila Beach Partners, LLC.

June 19, 2018
Ref. No. 17416872
Page **11** of **14**

<u>Ninth</u>, pursuant to Section V.B., of Common Terms and Conditions, as amended by Endorsement No. 9, Twin City reserves its rights to allocate **Defense Costs**, pursuant to Section V.B., which provides in relevant part:

    **(A)** Upon written request by any **Insured**, the Insurer shall advance **Defense Costs** in excess of the applicable Retention amount, in defense of any **Claim** covered by this Policy.

        However if such **Defense Costs** are only partially covered by this Policy because: (i) such **Claim** involves both **Insureds** and persons or entities who are not **Insureds,** or (ii) such **Claim** is subject to one or more ALLOCABLE EXCLUSIONS, as set forth in Section IV. (A) of each Coverage Part; or (iii) a portion of such **Claim** is subject to one or more exceptions to the exclusions listed in EXCLUSIONS WITH EXCEPTIONS**,** as set forth in Section IV. (C) of each Coverage Part (or Section V. EXCLUSION APPLICABLE TO INSURING AGREEMENT (C) of the Private Equity Fund Management and Professional Liability Coverage Part); or (iv) a portion of such **Claim** is for amounts that do not constitute **Damages**, unless otherwise specified, then the **Insureds** and the Insurer agree to use their best efforts to fairly and reasonably allocate such **Defense Costs** on the basis of the relative legal exposures of the covered and non-covered parties and/or the covered and non-covered portions of such **Claim** and/ or such **Defense Costs**.

        If the Insurer and the **Insured(s)** agree on the amount of **Defense Costs** that constitute covered **Defense Costs**, the Insurer shall advance, excess of any applicable Retention, **Defense Costs** on a current basis but no later than sixty (60) days after the Insurer has received itemized bills for those **Defense Costs**.

        […]

    **(D)** To the extent it is finally established that any such **Defense Costs** are not covered under this Policy, the **Insureds** shall repay the Insurer for such amounts not covered as **Defense Costs**. If the Insurer recovers any such amounts paid as **Defense Costs**, such amounts less all costs incurred by the Insurer to obtain such recovery shall be reinstated to the applicable Limit of Liability, including the Combined Aggregate Limit of Liability for all Coverage Parts, set forth in Item 5 of the Declarations.

### D.  <u>Defense Arrangements</u>

Section V.A., of the Common Terms and Conditions, provides that the **Insured** shall have the sole duty to defend **Claims** made against them.  However, Twin City shall have the right to

June 19, 2018
Ref. No. 17416872
Page **12** of **14**

effectively associate in the defense of any **Claim** and make any investigation it deems appropriate.  In addition, per Section IX.B., of the Common Terms and Conditions, the **Insureds** shall not incur any **Defense Costs,** make any settlement or assume any liability or contractual obligation with respect to a **Claim** without the prior written consent of Twin City, such consent not to be unreasonably withheld.  Twin City shall not be liable for any admission, assumption, settlement, stipulation, or **Defense Costs** to which it has not consented.

Please note that Twin City's consent to counsel is subject to our approval of the rates and number of personnel assigned to handle this matter.  We understand that the **Insureds –** both Somera and Mr. Brown – have retained Wendy D. Welkom of Cappello & Noel, LLP to defend its interests in connection with the Complaint.  As indicated above, pursuant to Endorsement No. 9, Twin City reserves its rights to allocate **Defense Costs** between Mr. Brown, who is covered for this **Claim**, and Somera, which as discussed above, is not, based upon their respective relative legal exposure.

Please provide Twin City with information regarding the attorney rates and the number of personnel that will be working on this matter at the firm.  Twin City's consent is also subject to counsel's agreement to comply with the Hartford Financial Products Attorney Guidelines ("Guidelines"), a copy of which is enclosed with this letter.

You will note that the Guidelines require an Initial Case Assessment and itemized Litigation Plan and Budget.  Accordingly, we would request that a current case assessment be provided with respect to the covered Claim, i.e., Demand Letters, which assessment should include:

1. The factual basis of the claim and the nature of the allegations against the Insured;
2. An assessment of liability;
3. An assessment of damages;
4. An estimate of the cost of defending the matter pre-suit; and
5. An opinion concerning resolution.

In addition, please provide us with copies of defense counsel's billing statements for the fees and expenses incurred in the defense of this matter.

In order to monitor the **Insureds** satisfaction of the applicable $250,000 retention, please forward to us copies of all defense invoices.

### E.  Request for Information

In addition to the information and materials requested above, please keep us closely advised of any material developments in connection with the Complaint and provide us with the following information and materials, as available:

1. a copy of any response to the Complaint;

June 19, 2018
Ref. No. 17416872
Page **13** of **14**

2. copies of all documents and other information (not previously provided) regarding any allegations made by or on behalf of Plaintiff at any time regarding the contract in question, prior demands for payment, settlement negotiations, or settlement offers made by or to Plaintiff; and

3. documents and other information regarding any post-Complaint settlement negotiations, mediations, or settlement offers and prompt notice of any settlement demands.

### F.  Full Reservation of Rights

In addition to the coverage issues and defenses set forth above, Twin City expressly reserves all rights available under the Policy, at law and in equity, whether or not specifically referenced herein, including but not limited to the right to withdraw from the defense and to deny coverage upon any additional terms, conditions, exclusions, endorsements and other provisions of the Policy, including statements, declarations, and omissions made in connection with the application(s) therefore, as may be found to be applicable.  No subsequent action, if any, that may be taken by Twin City is to be construed as a waiver of any position set forth in this letter or any rights otherwise available to it pursuant to the Policy, at law and/or in equity.  Twin City recognizes that the Insureds similarly reserve their rights.

While we hope you would first contact us if you have any concerns regarding Hartford's coverage position, you may be able to have this matter reviewed by the California Department of Insurance.  Its contact information is:

> State of California Department of Insurance
> Claims Services Bureau
> 300 South Spring Street, 11th Floor, South Tower
> Los Angeles, CA 90013
> 800-927-4357 (inside CA)
> 213-897-8921 (outside CA)

Please do not hesitate to call me, should you have any questions or wish to discuss this matter further.  My contact information is as follows:

> Vullnet Kolari, Esq.
> The Hartford
> 277 Park Avenue, 16th Floor
> New York, NY 10172
> Phone: 212-277-0442
> Email: Vullnet.Kolari@thehartford.com

June 19, 2018
Ref. No. 17416872
Page **14** of **14**

Very truly yours,
**TWIN CITY FIRE INSURANCE COMPANY**

By:

Vullnet Kolari, Esq.

cc:

Christine DeLeon cdeleon@sullicurt.com
Julie Lubin jlubin@someracapital.com
Joseph Cole joe@josephcolelaw.com

EXHIBIT E

# KASOWITZ BENSON TORRES LLP

2029 CENTURY PARK EAST

SUITE 2000

LOS ANGELES, CALIFORNIA 90067

(424) 288-7900

FAX: (424) 288-7901

ATLANTA
HOUSTON
MIAMI
NEW YORK
NEWARK
SAN FRANCISCO
SILICON VALLEY
WASHINGTON DC

JEROLD OSHINSKY
DIRECT DIAL: (424) 288-7903
DIRECT FAX: (310) 943-3579
JOSHINSKY@KASOWITZ.COM

August 22, 2018

**Via E-Mail**

Anthony J. Fowler, Esq.
Hartford Financial Products
Assistant Vice President
Manager of Commercial D&O and
Transactional Risk Claims
277 Park Avenue, 16th Floor
New York, NY 10172
*anthony.fowler@thehartford.com*

      Re:    *Postcard Properties, LLC v. Somera Capital Managements, LLC, et.al.*
              Santa Barbara County Superior Court, Case No. 17CV04361

Dear Anthony:

      This letter follows up on our communications about The Hartford's duty to defend and pay for the defense costs incurred by Somera Capital Management, LLC ("Somera") because of the common count allegations in the Amended Complaint. As I have expressed my view in the past, common count causes of action are not based on a contract; they are independent of any contractual allegations. In response to your request for legal support of my view, which Hartford apparently could not find, below are concrete examples of authoritative California authority directly on point.

      In California, a common count cause of action is specifically available "where no contractual relationship is involved." *Supervalu, Inc. v. Wexford Underwriting Managers, Inc.* (2009) 175 Cal.App.4th 64, 78. A common count claim, is, in fact, inconsistent with a cause of action for breach of contract. *Newport Harbor Ventures, LLC v. Morris Cerullo World Evangelism* (2016) 6 Cal.App.5th 1207, 1222-23 ("plaintiff may plead inconsistent causes of action for breach of contract and common count."). Here, it is apparently pleaded in the alternative to the breach of contract claims. So, for example, the second cause of action in the Postcard Properties complaint is for work, labor, services, rendered, which is available on an

# K A S O W I T Z   B E N S O N   T O R R E S   LLP

Anthony Fowler
The Hartford
August 22, 2018
Page 2


alternative "quantum meruit theory, where the debtor is indebted to the creditor in a certain sum for work, labor or services rendered pursuant to the debtor's express or implied request, and the work, labor or services were intended to and did benefit the debtor." Rutter, Cal. Prac. Guide Enf. J. & Debt, § 3:402. This is separate and distinct from the breach of contract allegations. There are many other examples of common count allegations in the Postcard Properties Complaint. *See* Complaint's Third, Fourth and Sixth Causes of Action.

California's standard form jury instructions further confirm that common count causes of action are not based on a contract. For example, the jury instructions for goods and services rendered do not require the existence of a contract. CACI 371 (attached). Similarly, the official Judicial Counsel form for a common count complaint contains no reference to the existence of a contract. Judicial Counsel Form PLD-C-001(2) (attached).

Because the common count claims asserted against Somera are not based on the existence of a contract, as is evident from the structure of the Amended Complaint, Hartford's rationale for denying coverage for Somera is incorrect and unreasonable. Hartford thus is required under California law to pay 100 percent of Somera's and Mr. Brown's defense costs. Please confirm Hartford's agreement to pay for the complete legal defense of the Postcard litigation.

Sincerely,

Jerold Oshinsky

Jerold Oshinsky


Cc:     Mr. David Cousineau
        Vullnet Kolari, Esq.

Judicial Council Of California Civil Jury Instruction 371, Judicial Council Of California...

## Judicial Council Of California Civil Jury Instruction 371

Judicial Council Of California Civil Jury Instructions  July 2018 Update
By the Judicial Council of California Advisory Committee on Civil Jury Instructions

Contracts

### 371 Common Count: Goods and Services Rendered

[*Name of plaintiff*] claims that [*name of defendant*] owes [him/her/it] money for [goods delivered/services rendered]. To establish this claim, [*name of plaintiff*] must prove all of the following:

1. That [*name of defendant*] requested, by words or conduct, that [*name of plaintiff*] [perform services/deliver goods] for the benefit of [*name of defendant*];

2. That [*name of plaintiff*] [performed the services/delivered the goods] as requested;

3. That [*name of defendant*] has not paid [*name of plaintiff*] for the [services/goods]; and

4. The reasonable value of the [goods/services] that were provided.

*New June 2005*

### Sources and Authority

• " ' "Quantum meruit refers to the well-established principle that 'the law implies a promise to pay for services performed under circumstances disclosing that they were not gratuitously rendered.' [Citation.] To recover in quantum meruit, a party need not prove the existence of a contract [citations], but it must show the circumstances were such that 'the services were rendered under some understanding or expectation of both parties that compensation therefor was to be made.' " [Citation.]' 'The underlying idea behind quantum meruit is the law's distaste for unjust enrichment. If one has received a benefit which one may not justly retain, one should "restore the aggrieved party to his [or her] former position by return of the thing or its equivalent in money." [Citation.]' " 'The measure of recovery in *quantum meruit* is the reasonable value of the services rendered *provided* they were of direct benefit to the defendant." [Citations.]' In other words, quantum meruit is equitable payment for services already rendered." (E. J. Franks Construction, Inc. v. Sahota (2014) 226 Cal.App.4th 1123, 1127–1128 [172 Cal.Rptr.3d 778], original italics, internal citations omitted.)

• " 'The common count is a general pleading which seeks recovery of money without specifying the nature of the claim …. Because of the uninformative character of the complaint, it has been held that the typical answer, a *general denial*, is sufficient to raise almost any kind of defense, including some which ordinarily require special pleading.' However, even where the plaintiff has pleaded in the form of a common count, the defendant must raise in the answer any new matter, that is, anything he or she relies on that is not put in issue by the plaintiff." (Title Ins. Co. v. State Bd. of Equalization (1992) 4 Cal.4th 715, 731 [14 Cal.Rptr.2d 822, 842 P.2d 121], internal citations and footnote omitted.)

• "To recover on a claim for the reasonable value of services under a quantum meruit theory, a plaintiff must establish both that he or she was acting pursuant to either an express or implied request for services from the defendant and that the services rendered were intended to and did benefit the defendant." (Ochs v. PacifiCare of California (2004) 115 Cal.App.4th 782, 794 [9 Cal.Rptr.3d 734], internal citation omitted.)

• "[W]here services have been rendered under a contract which is unenforceable because not in writing, an action

Judicial Council Of California Civil Jury Instruction 371, Judicial Council Of California...

generally will lie upon a common count for quantum meruit." (Iverson, Yoakum, Papiano & Hatch v. Berwald (1999) 76 Cal.App.4th 990, 996 [90 Cal.Rptr.2d 665].)

• "Although such an action is one at law, it is governed by principles of equity. It may be brought 'wherever one person has received money which belongs to another, and which "in equity and good conscience," or in other words, in justice and right, should be returned. … The plaintiff's right to recover is governed by principles of equity, although the action is one at law.' " (Mains v. City Title Ins. Co. (1949) 34 Cal.2d 580, 586 [212 P.2d 873], internal citations omitted.)

• " 'As Witkin states in his text, "[a] common count is proper whenever the plaintiff claims a sum of money due, either as an indebtedness in a sum certain, or for the reasonable value of services, goods, etc., furnished. It makes no difference in such a case that the proof shows the original transaction to be an express contract, a contract implied in fact, or a quasi-contract.' " A claim for money had and received can be based upon money paid by mistake, money paid pursuant to a void contract, or a performance by one party of an express contract." (Utility Audit Co., Inc. v. City of Los Angeles (2003) 112 Cal.App.4th 950, 958 [5 Cal.Rptr.3d 520], internal citations omitted.)

• "In the common law action of general assumpsit, it is customary to plead an indebtedness using 'common counts.' In California, it has long been settled the allegation of claims using common counts is good against special or general demurrers. The only essential allegations of a common count are '(1) the statement of indebtedness in a certain sum, (2) the consideration, i.e., goods sold, work done, etc., and (3) nonpayment.' " (Farmers Ins. Exchange v. Zerin (1997) 53 Cal.App.4th 445, 460 [61 Cal.Rptr.2d 707], internal citations omitted.)

• "A common count is not a specific cause of action, … rather, it is a simplified form of pleading normally used to aver the existence of various forms of monetary indebtedness, including that arising from an alleged duty to make restitution under an assumpsit theory. When a common count is used as an alternative way of seeking the same recovery demanded in a specific cause of action, and is based on the same facts, the common count is demurrable if the cause of action is demurrable." (McBride v. Boughton (2004) 123 Cal.App.4th 379, 394 [20 Cal.Rptr.3d 115], internal citations omitted.)

## Secondary Sources

4 Witkin, California Procedure (4th ed. 1997) Pleading, § 515

12 California Forms of Pleading and Practice, Ch. 121, *Common Counts*, §§ 121.25, 121.55-121.58 (Matthew Bender)

4 California Points and Authorities, Ch. 43, *Common Counts and Bills of Particulars*, §§ 43.33, 43.40 (Matthew Bender)

1 Matthew Bender Practice Guide: California Contract Litigation, Ch. 9, *Seeking or Opposing Quantum Meruit or Quantum Valebant Recovery in Contract Actions*, 9.02, 9.15, 9.32

© 2018 by the Judicial Council of California. All rights reserved. See front matter for a listing of Judicial Council Task Force and Advisory Committee members who have contributed to these jury instructions.

End of Document                    © 2018 Thomson Reuters. No claim to original U.S. Government Works.

PLD-C-001(2)

| SHORT TITLE: | CASE NUMBER: |
|---|---|

_____ **CAUSE OF ACTION—Common Counts**
(number)

ATTACHMENT TO ☐ Complaint   ☐ Cross - Complaint

*(Use a separate cause of action form for each cause of action.)*

CC-1. Plaintiff *(name):*

alleges that defendant *(name):*

became indebted to ☐ plaintiff ☐ other *(name):*

a. ☐ within the last four years
(1) ☐ on an open book account for money due.
(2) ☐ because an account was stated in writing by and between plaintiff and defendant in which it was agreed that defendant was indebted to plaintiff.

b. ☐ within the last ☐ two years ☐ four years
(1) ☐ for money had and received by defendant for the use and benefit of plaintiff.
(2) ☐ for work, labor, services and materials rendered at the special instance and request of defendant and for which defendant promised to pay plaintiff.
☐ the sum of $
☐ the reasonable value.
(3) ☐ for goods, wares, and merchandise sold and delivered to defendant and for which defendant promised to pay plaintiff
☐ the sum of $
☐ the reasonable value.
(4) ☐ for money lent by plaintiff to defendant at defendant's request.
(5) ☐ for money paid, laid out, and expended to or for defendant at defendant's special instance and request.
(6) ☐ other *(specify):*

CC-2. $ _____ , which is the reasonable value, is due and unpaid despite plaintiff's demand,

plus prejudgment interest ☐ according to proof ☐ at the rate of _____ percent per year

from *(date):*

CC-3. ☐ Plaintiff is entitled to attorney fees by an agreement or a statute
☐ of $
☐ according to proof.

CC-4. ☐ Other:

Page _____

Form Approved for Optional Use
Judicial Council of California
PLD-C-001(2) [Rev. January 1, 2009]
**CAUSE OF ACTION—Common Counts**
CEB
www.ceb.com
Code of Civil Procedure, § 425.12
www.courtinfo.ca.gov

EXHIBIT F

# KASOWITZ BENSON TORRES LLP

2029 CENTURY PARK EAST

SUITE 2000

LOS ANGELES, CALIFORNIA 90067

(424) 288-7900

FAX: (424) 288-7901

JEROLD OSHINSKY
DIRECT DIAL: (424) 288-7903
DIRECT FAX: (310) 943-3579
JOSHINSKY@KASOWITZ.COM

ATLANTA
HOUSTON
MIAMI
NEW YORK
NEWARK
SAN FRANCISCO
SILICON VALLEY
WASHINGTON DC

September 21, 2018

Anthony J. Fowler, Esq.
Vullnet Kolari, Esq.
The Hartford
277 Park Avenue , 16th Floor
New York, NY  10172
Anthony.Fowler@thehartford.com
Vullnet.Kolari@thehartford.com

Re:   *Postcard Properties, LLC v. Somera Capital Managements, LLC, et al.*
Santa Barbara County Superior Court, Case No. 17CV04361

Dear Anthony and Vullnet:

Notwithstanding our recent discussions and The Hartford's apparently intransigent position on coverage for Somera, this letter constitutes one more attempt at obtaining your agreement to cover defense costs and liability (if any) for both Mr. Brown and Somera, before I need to kick this "upstairs" or elsewhere:

*A page of history is worth a volume of logic.*
--- Oliver Wendell Holmes

There are two histories at play here.  The first history is that you will of course recall that The Hartford initially denied coverage for Somera and Mr. Brown based on Section V. Exclusion (C).  Within two weeks of our response demonstrating the many problems with the letter's rationale, Anthony informed me verbally that The Hartford recognized its mistake and was agreeing to cover Somera and Mr. Brown.  Nonetheless, a month later, The Hartford changed its position again, agreeing to cover Mr. Brown but not Somera.  We have had innumerable communications since then over the continued mistakes in The Hartford's positions both regarding its obligation to cover Somera and its improper attempt to allocate costs between Mr. Brown and Somera.

The second history is my own, going back almost forty years in negotiations with The Hartford starting with the Keene case in Washington, D.C. in 1981.  We almost always, if not always, have settled our differences.  Here, though, The Hartford continues to refuse any coverage as to Somera and to insist that to the extent that The Hartford had an obligation to "advance" defense costs (which it clearly does), it will allocate even the advanced defense costs

# KASOWITZ BENSON TORRES LLP

Anthony J. Fowler, Esq.
Vullnet Kolari, Esq.
The Hartford
September 21, 2018
Page 2

between covered and allegedly non-covered claims, although you have never disclosed the allocation percentages you are considering. Those positions are erroneous as we have demonstrated in the past and further demonstrate below.

Specifically regarding The Hartford's insistence that the operative exclusion applies to Somera, the policy language is controlling and is quoted in Vullnet's letter of February 2, 2018.

## V. EXCLUSION APPLICABLE TO INSURING AGREEMENT (C):

Pursuant to Section V., ADVANCEMENT AND ALLOCATION OF DEFENSE COSTS, and Section VI., ALLOCATION OF DAMAGES, of the Common Terms and Conditions, the Insurer shall not pay **Loss** under Insuring Agreement (C) in connection with any **Claim** based upon, arising from, or in any way related to any actual or alleged breach of contract or agreement other than that portion of such **Loss** which would have attached even in the absence of such contract or agreement, or that directly results from:

(A)   the organizational, management, monitoring or advisory documents of an **Insured Entity**, including but not limited to, a partnership agreement, limited partnership agreement, operating agreement, limited liability company agreement, other advisory, monitoring and/or management agreement or subscription agreement;

(B)   a contract for **Professional Services**, or

(C)   any alleged breach of any express or implied promise to contribute or lend money to a **Portfolio Company** or prospective **Portfolio Company**.[1]

Vullnet goes on to state that the exclusion purportedly applies because "Somera manages SCM Pismo Pier Partners, LLC and SCM Avila Beach Partners, LLC and Plaintiff seeks to enforce its rights pursuant to the limited partnership agreement and/or operating agreements for those entities; and which also appears to trigger subpart B". Keep in mind that this section of the policy covers "Professional Liability." Construed on its face, the three subparagraphs (A), (B) and (C) must be read as total exceptions to the exclusion. And they are clearly not exclusions. No other reading makes any sense. Thus, the policy language provides coverage for Somera directly resulting from a contract for Professional Services, and does not exclude coverage as The Hartford contended.

---

[1] We have already debated the point that the exclusion does not apply to loss that would have attached anyhow in the absence of a contract or agreement. I will not repeat here our opposing positions on Common Counts, the *Buss* case and the Larger Settlement Rule, but we reserve our rights as to those issues.

# KASOWITZ BENSON TORRES LLP

Anthony J. Fowler, Esq.
Vullnet Kolari, Esq.
The Hartford
September 21, 2018
Page 3

      Somera's reading of the policy language is so clearly correct that any contrary reading, such as the one proffered by The Hartford in its February 2, 2018 letter, would amply support a bad faith claim by Somera for *Brandt* fees and punitive damages.

      We are hopeful that The Hartford will once again do the right thing and honor coverage under its policy when plainly required to do so.

Sincerely,

*Jerold Oshinsky*

Jerold Oshinsky

cc:    David L. Cousineau, Esq.

EXHIBIT G



October 5, 2018

**VIA E-MAIL ONLY**
jOshinsky@kasowitz.com

**Vullnet Kolari, Esq.**
Claims Consultant
Telephone (212) 277-0442
Facsimile (844) 823-3673
vullnet.kolari@thehartford.com

Mr. Jerold Oshinsky
Kasowitz, Benson, Torres, LLP
2029 Century Park East
Suite 2000
Los Angeles, CA 90067

|  |  |  |
|---|---|---|
| **Re:** | **Policyholder:** | **Somera Capital Management, LLC** |
|  | **Insurer:** | **Twin City Insurance Company** |
|  | **Policy:** | **The Hartford Private Equity Choice Policy** |
|  | **Policy No:** | **72 DB 0240050-17** |
|  | **Matter:** | ***Postcard Properties, LLC*** |
|  | **Ref. No.:** | **17416872** |

Dear Mr. Oshinsky:

Thank you for your September 21, 2018 letter to Twin City Fire Insurance Co. ("Twin City"), that invites Twin City to negotiate an agreement with Somera Capital Management, LLC ("Somera") as it relates to the Allocation of **Defense Costs**[1] and "liability (if any) for both Mr. Brown and Somera". Please note that Twin City incorporates by reference its June 19, 2018 reservation of rights letter (the "June 19 ROR"), however, briefly summarized, the June 19 ROR confirmed our denial of coverage for Somera on the basis of the contract exclusion provided at Section V. Exclusions Applicable to Insuring Agreement (C), as amended by Endorsement No. 8. The June 19 ROR also confirmed that, subject to such reservation of rights, Mr. Brown is afforded coverage for **Defense Costs**.

At the outset, in our view it would be premature at this juncture, in the absence of any potential settlement or judgment, to negotiate an Allocation of **Damages** under the Policy. On the other hand, we would be pleased to reach an agreement on a fair and reasonable Allocation of **Defense Costs** as more fully described below.

Your letter asserts that Twin City has an obligation to advance **Defense Costs** on behalf of Somera. Having carefully reviewed your position, we must stand by our denial of coverage as to Somera.

---

[1] Terms in bold, but not otherwise defined herein, have the meaning assigned to them in the Policy.

**Claims Department**
**Hartford Financial Products**
**277 Park Avenue**
**16th Floor**
**New York, NY 10172**

October 5, 2018
Ref. No. 17416872
Page **2** of **6**

The Policy's **Insured Entity Coverage** provides the following:

> ### (C) Insured Entity Coverage
>
> The Insurer shall pay **Loss** on behalf of an **Insured Entity**, which such **Insured Entity** becomes legally obligated to pay, resulting from a **Claim** first made during the **Policy Period** or Extended Reporting Period, if applicable, against such **Insured Entity** for a **Wrongful Act** by the **Insured Entity** which takes place during or prior to the **Policy Period**.

There is no coverage for Somera because its alleged liability is based upon alleged contracts, not any **Wrongful Act**.  Plaintiff alleges that Somera failed to provide Plaintiff with the benefits allegedly promised in the purported contracts, or to pay for work Plaintiff allegedly performed, pursuant to those contracts.   Based upon the terms of the Complaint, Somera's obligations to the Plaintiff was not the result of any alleged **Wrongful Act**, but are based upon Somera's allegedly pre-existing contractual obligations.

Even if the Complaint were deemed to assert a claim against Somera based upon alleged **Wrongful Acts**, coverage would be excluded as to Somera.

The Policy's Section V. Exclusions Applicable to Insuring Agreement (C), as amended by Endorsement No. 8, states that Twin City shall not pay **Loss** under Insuring Agreement (C)[2]:

> in connection with any **Claim** based upon, arising from, or in any way related to any actual or alleged breach of contract or agreement other than that portion of such **Loss** which would have attached even in the absence of such contract or agreement, or that directly results from:
>
> > **(A)** the organizational, management, monitoring or advisory documents of an **Insured Entity**, including but not limited to, a partnership agreement, limited partnership agreement, operating agreement, limited liability company agreement, other advisory, monitoring and/or management agreement or subscription agreement); and
> >
> > **(B)** the rendering of or failure to render **Professional Services**.

This exclusion applies broadly to any **Claim** "*based upon, arising from, or in any way related to any actual or alleged breach of contract or agreement*".  (emphasis added)  Accordingly, it applies to all of the claims asserted in the Complaint.  All of the claims asserted are ultimately

---

[2] Your September 21, 2018 letter quotes the exclusion as it appears in the main coverage form, not as the exclusion is amended in Endorsement 8.

October 5, 2018
Ref. No. 17416872
Page **3** of **6**

based upon the alleged contract.  Even the claim for payment for work performed seeks payment for work that was performed pursuant to the alleged contracts.

The exclusion's lettered subparagraphs are not implicated.

As you acknowledged in footnote 2 of your May 11, 2018, the Complaint does not *directly result* from a "limited partnership agreement".  The alleged contracts upon which Plaintiff's claim is based are not the "organizational, management, monitoring or advisory documents of an **Insured Entity"**.  The contracts on which the claims are based are simply contracts pursuant to which the plaintiff alleges that it provided project management and developer services for the two projects at issue.

The alleged contracts and the related claims also do not involve "the rendering of or failure to render **Professional Services**".  Even assuming that the plaintiff's project management and developer services could be characterized as "professional", the policy defines **Professional Services** as services provided "by an Insured" – services provided *to* an insured do not qualify as **Professional Services** as defined in the Policy.

You have suggested that the exclusion does not apply to "common counts" seeking payment for work allegedly performed by Plaintiff, because payment for work performed might be owed even in the absence of a contract.  We disagree with your argument.

First, all of the work performed is specifically alleged to have been performed pursuant to and in reliance upon the alleged contracts.   But for the contracts, no work would have been performed.  Accordingly, even the common counts, which are incorporated by reference to the breach of contract claims, are sufficiently related to the alleged contracts to be excluded from coverage by the exclusion, which explicitly applies to any Claim "based upon, arising from, or in any way related to" any breach of contract.

Second, even without reference to the exclusion, a demand that the insured pay for services rendered, whether based upon contract, quantum meruit, or unjust enrichment, is uninsurable as a matter of law.  An insured cannot purchase and benefit from services, and then expect its insurance carrier to pay for them.

This discussion of coverage issues is not intended to be exhaustive.  It is intended to respond to issues arising from your recent letter.  Please refer to Twin City's July 19, 2018 letter, which includes additional grounds for denying coverage in this matter.

Although there is no coverage for Somera in this matter, and numerous coverage issues that may result in no coverage for Mr. Brown, Twin City has agreed to advance **Defense Costs** on behalf of Mr. Brown, subject to a full reservation of rights, as set out in our letter dated June 19, 2018.

The Policy provides that if **Defense Costs** are only partially covered because the underlying claims involve both insured and uninsured parties or claims, then the **Defense Costs** should be

October 5, 2018
Ref. No. 17416872
Page **4** of **6**

allocated based upon relative legal exposure.   Because the Policy specifically provides that **Defense Costs** will be allocated on the basis of relative legal exposure, the Larger Settlement Rule and *Buss* are inapplicable.   See, <u>*Commer. Capital Bankcorp, Inc. v. St. Paul Mercury Ins. Co.,*</u> 419 F. Supp. 2d 1173.

Accordingly, as we had indicated in our June 19 ROR, we are prepared to negotiate an allocation of **Defense Costs**, as provided under the Policy, based upon the premise that, subject to our continuing reservations of rights, the Policy provides coverage for **Defense Costs** of Mr. Brown, as an **Insured Person**, but not Somera as an **Entity Insured**.

In this context, we respectfully draw your attention to Section V.(B) of the Common Terms and Conditions of the Policy, as amended by Endorsement No. 9, which expressly provides for an Advancement and Allocation of **Defense Costs** as follows:

> **(B)** Upon written request by any **Insured**, the Insurer shall advance **Defense Costs** in excess of the applicable Retention amount, in defense of any **Claim** covered by this Policy.
>
> However if such **Defense Costs** are only partially covered by this Policy because: (i) such **Claim** involves both **Insureds** and persons or entities who are not **Insureds,** or (ii) such **Claim** is subject to one or more ALLOCABLE EXCLUSIONS, as set forth in Section IV. (A) of each Coverage Part; or (iii) a portion of such **Claim** is subject to one or more exceptions to the exclusions listed in EXCLUSIONS WITH EXCEPTIONS**,** as set forth in Section IV. (C) of each Coverage Part (or Section V. EXCLUSION APPLICABLE TO INSURING AGREEMENT (C) of the Private Equity Fund Management and Professional Liability Coverage Part); or (iv) a portion of such **Claim** is for amounts that do not constitute **Damages**, unless otherwise specified, then the **Insureds** and the Insurer agree to use their best efforts to fairly and reasonably allocate such **Defense Costs** on the basis of the relative legal exposures of the covered and non-covered parties and/or the covered and non-covered portions of such **Claim** and/ or such **Defense Costs**.
>
> If the Insurer and the **Insured(s)** agree on the amount of **Defense Costs** that constitute covered **Defense Costs**, the Insurer shall advance, excess of any applicable Retention, **Defense Costs** on a current basis but no later than sixty (60) days after the Insurer has received itemized bills for those **Defense Costs**.

As you know, our June 19, 2018 letter set forth various exceptions and exclusions that are and/or may be applicable to the First Amended Complaint (the "Complaint").   That letter confirmed our denial of coverage for Somera and confirmed that coverage for **Defense Costs** is afforded to Mr. Brown, subject to the reservation of rights.

October 5, 2018
Ref. No. 17416872
Page **5** of **6**

Our review of the Complaint indicates that Somera is the target defendant with the greater "relative legal exposure". For example, there are, as you know, nine (9) counts pled – each of which are pled against Somera – while only two (2) are pled against Mr. Brown (and even these two counts are also pled against Somera). Here is a list of the counts and defendant(s) against which and/or whom, each is pled.

| Cause of Action | Count | Defendant(s) |
| --- | --- | --- |
| First | Written K | Somera |
| Second | Common Count | Somera |
| Third | Common Count | Somera |
| Fourth | Common Count | Somera |
| Fifth | Breach of Oral K | Somera |
| Sixth | Common Count | Somera |
| Seventh | Fraud | Somera and Mr. Brown |
| Eighth | Fraud | Somera and Mr. Brown |
| Ninth | Declaratory Relief | Somera |

Therefore, there are 9 counts pled against Somera, and 2 counts pled against Mr. Brown, for a total of 11 counts pled against any defendant in the action. In other words, of the total number of counts pled against the respective defendants, Mr. Brown is named in only 18% of the total while Somera is named in 82% of such total (and, as indicated, Somera is named in 100% of the 9 counts pled).

Beyond the relatively modest number of counts alleged against Mr. Brown, relative to Somera, we also note that the January 31, 2014 Letter of Agreement was allegedly entered between Plaintiff and Somera. While such agreement was signed by Mr. Brown, it was in his capacity as President of Somera. He is not, himself, a party to the agreement. It appears that Mr. Brown, as an individual, is named as a defendant because he purportedly promised Postcard that the second hotel, Avila Beach Project, will be built under the same terms and conditions as agreed to by the parties in their Letter of Agreement dated January 31, 2014, which agreement memorialized the parties oral agreement to construct, manage and developed the hotel known as the Pismo Pier Project.

In light of these coverage issues (discussed more fully in our June 19, 2018 Letter) and Twin City's Allocation provision, Section V.B., of the Common Terms and Conditions, as amended by End. No. 9, based upon the "relative legal exposure" of Somera and Mr. Brown, an allocation proposal of 18% or less of **Defense Costs** would appear warranted by the operative pleading. Nevertheless, and in an abundance of good faith, Twin City will agree to advance 25% of the **Defense Costs** on a current basis that Somera submits to Twin City for payment. Relatedly, please note that to date Twin City has not received any invoices for this matter. Accordingly, we ask that you please instruct Cappello & Noel, LLP to provide Twin City with copies of legal invoices for our review.

October 5, 2018
Ref. No. 17416872
Page **6** of **6**

Please note that since this matter is subject to a $250,000 Retention and the agreed Allocation is applied within such Retention.

While we hope you would first contact us if you have any concerns regarding Hartford's coverage position, you may be able to have this matter reviewed by the California Department of Insurance.  Its contact information is:

> State of California Department of Insurance
> Claims Services Bureau
> 300 South Spring Street, 11th Floor, South Tower
> Los Angeles, CA 90013
> 800-927-4357 (inside CA)
> 213-897-8921 (outside CA)

Please do not hesitate to call me, should you have any questions or wish to discuss this matter further.  My contact information is as follows:

> Vullnet Kolari, Esq.
> The Hartford
> 277 Park Avenue, 16th Floor
> New York, NY 10172
> Phone: 212-277-0442
> Email: Vullnet.Kolari@thehartford.com

Very truly yours,
**TWIN CITY FIRE INSURANCE COMPANY**

By:

Vullnet Kolari, Esq.

cc:
> Christine DeLeon cdeleon@sullicurt.com

## PROOF OF SERVICE

**STATE OF CALIFORNIA, COUNTY OF LOS ANGELES**

I declare that I am over 18 years of age and not a party to this action.  I am employed in the County of Los Angeles, State of California.  My business address is 2029 Century Park East, Suite 2000, Los Angeles, California 90067.

On May 9, 2019, I served the document above on all interested parties in this action as follows:

| | |
|---|---|
| Stephen M. Hayes<br>shayes@hayesscott.com<br>Tyler R. Austin<br>TAustin@hayesscott.com<br>Ryan Z. Keller<br>rkeller@hayesscott.com<br>Hayes Scott Bonino & Ellingson<br>Guslani Simonson & Clause, LLP<br>999 Skyway Road, Suite 310<br>San Carlos, California 94070<br>Telephone: (650) 637-9100<br>Facsimile: (650) 637-8071<br><br>Attorneys for Defendant<br>Twin City Fire Insurance Company | Joyce Wang<br>jwang@ccplaw.com<br>Colin Munro<br>cmunro@ccplaw.com<br>Demetrius Lambinos<br>dlambrinos@ccplaw.com<br>Carlson Calladine & Peterson LLP<br>353 Sacramento Street, 16th Floor.<br>San Francisco, CA 94111<br><br>Attorneys for CRC Insurance Service, Inc.<br>(served as survivor company of merger with<br>Defendant The Swett & Crawford Group, Inc.) |

☒ **By Mail:**  I placed the document(s) listed above in sealed envelope(s), with postage thereon fully prepaid, for collection and mailing at Los Angeles, California, following ordinary business practices.  I am readily familiar with the practices of Kasowitz Benson Torres LLP for processing of correspondence, said practice being that in the ordinary course of business, correspondence is deposited in the United States Postal Service the same day as it is placed for processing.

☒ **By Electronic Service (Email):**  Based on a court order or an agreement of the parties to accept service by electronic transmission, I caused the document(s) to be sent to the persons at the electronic service addresses listed above.

☐ **By Overnight Delivery:**  I enclosed the documents in an envelope or package provided by an overnight delivery carrier and addressed to the persons listed above.  I placed the envelope or package for collection and overnight delivery at an office or a regularly utilized drop box of the overnight delivery carrier.

☐ **By Personal Service:**  by causing personal delivery of the document(s) listed above to the person(s) at the address(es) set forth above.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on May 9, 2019 in Los Angeles, California.

Melissa Dejoie

## PROOF OF SERVICE

# EXHIBIT 4

**CIV-110**

| ATTORNEY OR PARTY WITHOUT ATTORNEY: | STATE BAR NO. | FOR COURT USE ONLY |
|---|---|---|
| NAME: Jerold Oshinsky (250771); Kirsten C. Jackson (265952) | | |

FIRM NAME: Kasowitz Benson Torres LLP
STREET ADDRESS: 2029 Century Park East, Suite 2000
CITY: Los Angeles    STATE: CA    ZIP CODE: 90067
TELEPHONE NO.: 424-288-7900    FAX NO.: 424-288-7901
E-MAIL ADDRESS: joshinsky@kasowitz.com; kjackson@kasowitz.com
ATTORNEY FOR (Name): Plaintiff Somera Capital Management, LLC

SUPERIOR COURT OF CALIFORNIA, COUNTY OF SANTA BARBARA
  STREET ADDRESS: 1100 Anacapa Street
  MAILING ADDRESS:
  CITY AND ZIP CODE: Santa Barbara, 93101
  BRANCH NAME: Anacapa Division

Plaintiff/Petitioner: Somera Capital Management, LLC
Defendant/Respondent: Twin City Fire Insurance Company; The Swett & Crawford Group, Inc.

| REQUEST FOR DISMISSAL | CASE NUMBER:<br>18CV06147 |
|---|---|

A conformed copy will not be returned by the clerk unless a method of return is provided with the document.

This form may not be used for dismissal of a derivative action or a class action or of any party or cause of action in a  class action. (Cal. Rules of Court, rules 3.760 and 3.770.)

1. TO THE CLERK: Please **dismiss** this action as follows:
   a. (1) ☐ With prejudice    (2) ☒ Without prejudice
   b. (1) ☐ Complaint    (2) ☐ Petition
      (3) ☐ Cross-complaint filed by (name):                                on (date):
      (4) ☐ Cross-complaint filed by (name):                                on (date):
      (5) ☐ Entire action of all parties and all causes of action
      (6) ☒ Other (specify):* Defendant The Swett & Crawford Group, Inc.

2. (Complete in all cases except family law cases.)
   The court ☐ did ☒ did not  waive court fees and costs for a party in this case. (This information may be obtained from  the clerk. If court fees and costs were waived, the declaration on the back of this form must be completed.)

Date: May 6, 2020

Jerold Oshinsky
(TYPE OR PRINT NAME OF ☒ ATTORNEY ☐ PARTY WITHOUT ATTORNEY)
*If dismissal requested is of specified parties only of specified causes of action only, or of specified cross-complaints only, so state and identify the parties, causes of action, or cross-complaints to be dismissed.

▶ _Jerold Oshinsky_
                    (SIGNATURE)
Attorney or party without attorney for:
☒ Plaintiff/Petitioner    ☐ Defendant/Respondent
☐ Cross Complainant

3. TO THE CLERK:  Consent to the above dismissal is hereby given.**

Date:

(TYPE OR PRINT NAME OF ☐ ATTORNEY ☐ PARTY WITHOUT ATTORNEY)
** If a cross-complaint – or Response (Family Law) seeking affirmative relief – is on file, the attorney for cross-complainant (respondent) must sign this consent if required by Code of Civil Procedure section 581 (i) or (j).

▶
                    (SIGNATURE)
Attorney or party without attorney for:
☐ Plaintiff/Petitioner    ☐ Defendant/Respondent
☐ Cross Complainant

(To be completed by clerk)
4. ☐ Dismissal entered as requested on (date):
5  ☐ Dismissal entered on (date):                    as to only (name):
6. ☐ Dismissal **not entered** as requested for the following reasons (specify):

7. a. ☐ Attorney or party without attorney notified on (date):
   b. ☐ Attorney or party without attorney not notified. Filing party failed to provide
      ☐ a copy to be conformed    ☐ means to return conformed copy
Date:                    Clerk, by _____, Deputy

Page 1 of 2

| Form Adopted for Mandatory Use<br>Judicial Council of California<br>CIV-110 [Rev. Jan. 1, 2013] | **REQUEST FOR DISMISSAL** | Code of Civil Procedure, § 581 et seq.; Gov. Code,<br>§ 68637(c); Cal. Rules of Court, rule 3.1390<br>www.courts.ca.gov |
|---|---|---|

**CIV-110**

| | |
|---|---|
| Plaintiff/Petitioner: Somera Capital Management, LLC<br>Defendant/Respondent: Twin City Fire Insurance Company et al. | CASE NUMBER:<br>18CV06147 |

---

**COURT'S RECOVERY OF WAIVED COURT FEES AND COSTS**

If a party whose court fees and costs were initially waived has recovered or will recover $10,000 or more in value by way of settlement, compromise, arbitration award, mediation settlement, or other means, the court has a statutory lien on that recovery. The court may refuse to dismiss the case until the lien is satisfied. (Gov. Code, § 68637.)

---

## Declaration Concerning Waived Court Fees

1. The court waived court fees and costs in this action for *(name):*

2. The person named in item 1 is *(check one below):*
   a. ☐ not recovering anything of value by this action.
   b. ☐ recovering less than $10,000 in value by this action.
   c. ☐ recovering $10,000 or more in value by this action.  *(If item 2c is checked, item 3 must be completed.)*

3. ☐ All court fees and court costs that were waived in this action have been paid to the court  *(check one):*      Yes         No

I declare under penalty of perjury under the laws of the State of California that the information above is true and correct.

Date:

_____                    ▶ _____

(TYPE OR PRINT NAME OF ☐ ATTORNEY ☐ PARTY MAKING DECLARATION)                    (SIGNATURE)

1    <u>**PROOF OF SERVICE**</u>

2    **STATE OF CALIFORNIA, COUNTY OF LOS ANGELES**

3    I declare that I am over 18 years of age and not a party to this action. I am employed in the County of Los Angeles, State of California. My business address is 2029 Century Park East, Suite

4    2000, Los Angeles, California 90067.

5    On May 6, 2020, I served the REQUEST FOR DISMISSAL on all interested parties in this action as follows:

6

7    Stephen M. Hayes                         Joyce Wang
     Tyler R. Austin                          Colin Munro

8    Ryan Z. Keller                           Demetrius Lambinos
     HAYES SCOTT BONINO & ELLINGSON           CARLSON CALLADINE & PETERSON LLP

9    GUSLANI SIMONSON & CLAUSE, LLP           353 Sacramento Street, 16th Floor.
     999 Skyway Road, Suite 310               San Francisco, CA 94111

10   San Carlos, California 94070             jwang@ccplaw.com
     shayes@hayesscott.com                    cmunro@ccplaw.com

11   taustin@hayesscott.com                   dlambrinos@ccplaw.com
     rkeller@hayesscott.com

12

13   *Attorneys for Defendant*              *Attorneys for Defendant*
     *Twin City Fire Insurance Company*     *The Swett & Crawford Group, Inc.*

14

15

16   ☒ **By Mail:** I placed the document(s) listed above in sealed envelope(s), with postage thereon fully prepaid, for collection and mailing at Los Angeles, California, following ordinary

17   business practices. I am readily familiar with the practices of Kasowitz Benson Torres LLP for processing of correspondence, said practice being that in the ordinary course of business,

18   correspondence is deposited in the United States Postal Service the same day as it is placed for processing.

19   ☒ **By E-mail (Email):** I caused the document(s) to be sent to the persons at the electronic service addresses listed above.

20   ☐ **By Overnight Delivery:** I enclosed the documents in an envelope or package

21   provided by an overnight delivery carrier and addressed to the persons listed above. I placed the envelope or package for collection and overnight delivery at an office or a regularly utilized drop box of the overnight delivery carrier.

22   ☐ **By Personal Service:** by causing personal delivery of the document(s) listed above to

23   the person(s) at the address(es) set forth above.

     I declare under penalty of perjury that the foregoing is true and correct.

24   Executed on May 6, 2020 at Los Angeles, California.

25

26   _AMANDA RAE COOPER_

27

28

---

PROOF OF SERVICE

# EXHIBIT 5

Pursuant to CRC 2.259 this document has been electronically filed by the
Superior Court of California, County of Santa Barbara, on 5/8/2019

1   Jerold Oshinsky (Cal. Bar No. 250771)
    joshinsky@kasowitz.com
2   Kirsten C. Jackson (Cal. Bar No. 265952)
    kjackson@kasowitz.com
3   Melissa Dejoie (Cal Bar. No. 308014)
    mdejoie@kasowitz.com
4   KASOWITZ BENSON TORRES LLP
    2029 Century Park East, Suite 2000
5   Los Angeles, CA 90067
    Telephone: (424) 288-7900
6   Facsimile: (424) 288-7901

7   Attorneys for Plaintiff

**FILED**
SUPERIOR COURT of CALIFORNIA
COUNTY of SANTA BARBARA
**05/09/2019**
Darrel E. Parker, Executive Officer
BY  Chavez, Terri
Deputy Clerk

8                **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

9                   **FOR THE COUNTY OF SANTA BARBARA**

10                          **ANACAPA DIVISION**

11   SOMERA CAPITAL MANAGEMENT, LLC, a
     California Limited Liability Company,

12

13                            Plaintiff,
                     vs.

14   TWIN CITY FIRE INSURANCE COMPANY,
     an Indiana Corporation; THE SWETT &
15   CRAWFORD GROUP, INC., a California
     Corporation; and DOES 1 through 10,

16

17                            Defendants.

18

**CASE NO.: 18CV06147**

~~[PROPOSED]~~ ORDER GRANTING
PLAINTIFF'S *EX PARTE*
APPLICATION SEEKING LEAVE TO
FILE FIRST AMENDED COMPLAINT
TO ATTACH INADVERTENTLY
OMITTED EXHIBITS

Date: May 9, 2019
Time: 8:30 a.m.
Dept: 4
Hon. Donna D. Geck

19

20

21

22

23

24

25

26

27

28

This matter came before the Court on Plaintiff's *Ex Parte* Application Seeking Leave to File First Amended Complaint to Attach Inadvertently Omitted Exhibits.  Upon considering Plaintiff's *ex parte* application, and the supporting Declaration of Melissa Dejoie, it appears to the satisfaction of the Court that this is a proper case to grant Plaintiff leave to file a First Amended Complaint *ex parte*.

IT IS ORDERED that Plaintiff's application for leave to file a First Amended Complaint, to attach Exhibits A-G referenced therein, is GRANTED.

Date: _____05/09/2019_____                    _____

                                                                              Hon. Donna D. Geck

---

**[PROPOSED] ORDER GRANTING PLAINTIFF'S *EX PARTE* APPLICATION SEEKING LEAVE TO FILE FIRST AMENDED COMPLAINT TO ATTACH INADVERTENTLY OMITTED EXHIBITS**

1

## PROOF OF SERVICE

2

**STATE OF CALIFORNIA, COUNTY OF LOS ANGELES**

3

I declare that I am over 18 years of age and not a party to this action.  I am employed in the County of Los Angeles, State of California.  My business address is 2029 Century Park East, Suite 2000, Los Angeles, California 90067.

4

5

On May 8, 2019, I served the document above on all interested parties in this action as follows:

6

| | |
|---|---|
| Stephen M. Hayes | Joyce Wang |
| shayes@hayesscott.com | jwang@ccplaw.com |
| Tyler R. Austin | Colin Munro |
| TAustin@hayesscott.com | cmunro@ccplaw.com |
| Ryan Z. Keller | Demetrius Lambinos |
| rkeller@hayesscott.com | dlambrinos@ccplaw.com |
| Hayes Scott Bonino & Ellingson | Carlson Calladine & Peterson LLP |
| Guslani Simonson & Clause, LLP | 353 Sacramento Street, 16th Floor. |
| 999 Skyway Road, Suite 310 | San Francisco, CA 94111 |
| San Carlos, California 94070 | |
| Telephone: (650) 637-9100 | Attorneys for CRC Insurance Service, Inc. |
| Facsimile: (650) 637-8071 | (served as survivor company of merger with |
| | Defendant The Swett & Crawford Group, Inc.) |
| Attorneys for Defendant | |
| Twin City Fire Insurance Company | |

7

8

9

10

11

12

13

14

15

16

☒ **By Mail:**  I placed the document(s) listed above in sealed envelope(s), with postage thereon fully prepaid, for collection and mailing at Los Angeles, California, following ordinary business practices.  I am readily familiar with the practices of Kasowitz Benson Torres LLP for processing of correspondence, said practice being that in the ordinary course of business, correspondence is deposited in the United States Postal Service the same day as it is placed for processing.

17

18

19

☒ **By Electronic Service (Email):**  Based on a court order or an agreement of the parties to accept service by electronic transmission, I caused the document(s) to be sent to the persons at the electronic service addresses listed above.

20

21

☐ **By Overnight Delivery:**  I enclosed the documents in an envelope or package provided by an overnight delivery carrier and addressed to the persons listed above.  I placed the envelope or package for collection and overnight delivery at an office or a regularly utilized drop box of the overnight delivery carrier.

22

23

☐ **By Personal Service:**  by causing personal delivery of the document(s) listed above to the person(s) at the address(es) set forth above.

24

25

I declare under penalty of perjury that the foregoing is true and correct.

26

Executed on May 8, 2019 in Los Angeles, California.

27

Melissa Dejoie

28

## PROOF OF SERVICE

Pursuant to CRC 2.259 this document has been electronically filed by the
Superior Court of California, County of Santa Barbara, on 7/31/2019

1   Jerold Oshinsky (Cal. Bar No. 250771)
    joshinsky@kasowitz.com
2   Kirsten C. Jackson (Cal. Bar No. 265952)
    kjackson@kasowitz.com
3   Melissa Dejoie (Cal Bar. No. 308014)
    mdejoie@kasowitz.com
4   KASOWITZ BENSON TORRES LLP
    2029 Century Park East, Suite 2000
5   Los Angeles, CA 90067
    Telephone: (424) 288-7900
6   Facsimile: (424) 288-7901

7   Attorneys for Plaintiff

**FILED**
SUPERIOR COURT of CALIFORNIA
COUNTY of SANTA BARBARA
**08/01/2019**
Darrel E. Parker, Executive Officer
BY ___Chavez, Terri___
                              Deputy Clerk

8                    **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

9                        **FOR THE COUNTY OF SANTA BARBARA**

10                                  **ANACAPA DIVISION**

11  SOMERA CAPITAL MANAGEMENT, LLC, a       **CASE NO.: 18CV06147**
    California Limited Liability Company,
12
                         Plaintiff,         **STIPULATION TO CONTINUE**
13                                          **AUGUST 16, 2019 CASE**
             vs.                            **MANAGEMENT CONFERENCE**
14
    TWIN CITY FIRE INSURANCE COMPANY,
15  an Indiana Corporation; THE SWETT &     Hon. Donna D. Geck
    CRAWFORD GROUP, INC., a California
16  Corporation; and DOES 1 through 10,

17                       Defendants.

18

19

20

21

22

23

24

25

26

27

28

           **STIPULATION TO CONTINUE AUGUST 16, 2019 CASE MANAGEMENT**
                                    **CONFERENCE**

1    Plaintiff Somera Capital Management, LLC ("Somera") and Defendant Twin City Fire

2  Insurance Company ("Twin City") stipulate to continue the August 16, 2019 case management

3  conference.

4    Somera and Twin City, and Swett, through their respective counsel, hereby stipulate and

5  agree to the following:

6    WHEREAS, Somera originally filed this suit on December 14, 2018 seeking insurance

7  coverage for a lawsuit filed against Somera and its President, David A. Brown;

8    WHEREAS, Somera named its insurer, Twin City, and the broker of the insurance

9  policy, Swett, as defendants;

10    WHEREAS, Twin City filed its answer on January 22, 2019;

11    WHEREAS, Swett has not yet appeared in this action, but does not oppose the proposed

12  continuance;

13    WHEREAS, the parties wish to continue the case management conference in order to

14  continue informal discussions concerning a potential resolution of this dispute.

15    Somera and Twin City hereby STIPULATE to continue the case management

16  conference until November 1, 2019.

17

18

19  DATED:    July 30, 2019              KASOWITZ BENSON TORRES LLP

20                                      By: _____

21                                          Kirsten C. Jackson

22                                          Attorneys for Somera Capital Management, LLC

23                                      HAYES SCOTT BONINO & ELLINGSON

24  DATED:    July 30, 2019

25                                      By: _____

26                                          Stephen M. Hayes

27                                          Attorneys for Twin City Fire Insurance Company

28  _____

**STIPULATION TO CONTINUE AUGUST 16, 2019 CASE MANAGEMENT
CONFERENCE**

1
2
### [~~PROPOSED~~] ORDER
3
In accordance with the attached Joint Stipulation of the parties, the Case Management
4
Conference shall be continued from August 16, 2019, to November 1, 2019.
5
6
7   IT IS SO ORDERED.
8
DATE: **08/01/2019** _____    _____
9                                                    Hon. Donna D. Geck
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

---

**STIPULATION TO CONTINUE AUGUST 16, 2019 CASE MANAGEMENT
CONFERENCE**

## PROOF OF SERVICE

**STATE OF CALIFORNIA, COUNTY OF LOS ANGELES**

I declare that I am over 18 years of age and not a party to this action.  I am employed in the County of Los Angeles, State of California.  My business address is 2029 Century Park East, Suite 2000, Los Angeles, California 90067.

On July 29, 2019, I served the document above on all interested parties in this action as follows:

| | |
|---|---|
| Stephen M. Hayes<br>shayes@hayesscott.com<br>Tyler R. Austin<br>TAustin@hayesscott.com<br>Ryan Z. Keller<br>rkeller@hayesscott.com<br>Hayes Scott Bonino & Ellingson<br>Guslani Simonson & Clause, LLP<br>999 Skyway Road, Suite 310<br>San Carlos, California 94070<br>Telephone: (650) 637-9100<br>Facsimile: (650) 637-8071<br><br>Attorneys for Defendant<br>Twin City Fire Insurance Company | Joyce Wang<br>jwang@ccplaw.com<br>Colin Munro<br>cmunro@ccplaw.com<br>Demetrius Lambinos<br>dlambrinos@ccplaw.com<br>Carlson Calladine & Peterson LLP<br>353 Sacramento Street, 16th Floor.<br>San Francisco, CA 94111<br><br>Attorneys for Defendant The Swett & Crawford Group, Inc. |

☒ **By Mail:**  I placed the document(s) listed above in sealed envelope(s), with postage thereon fully prepaid, for collection and mailing at Los Angeles, California, following ordinary business practices.  I am readily familiar with the practices of Kasowitz Benson Torres LLP for processing of correspondence, said practice being that in the ordinary course of business, correspondence is deposited in the United States Postal Service the same day as it is placed for processing.

☒ **By Electronic Service (Email):**  Based on a court order or an agreement of the parties to accept service by electronic transmission, I caused the document(s) to be sent to the persons at the electronic service addresses listed above.

☐ **By Overnight Delivery:**  I enclosed the documents in an envelope or package provided by an overnight delivery carrier and addressed to the persons listed above.  I placed the envelope or package for collection and overnight delivery at an office or a regularly utilized drop box of the overnight delivery carrier.

☐ **By Personal Service:**  by causing personal delivery of the document(s) listed above to the person(s) at the address(es) set forth above.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on July 29, 2019 in Los Angeles, California.

_/s/ Melissa Dejoie_
Melissa Dejoie

---

**STIPULATION TO CONTINUE AUGUST 16, 2019 CASE MANAGEMENT CONFERENCE**

Pursuant to CRC 2.259 this document has been electronically filed by the Superior Court of California, County of Santa Barbara, on 10/15/2019

Jerold Oshinsky (Cal. Bar No. 250771)
joshinsky@kasowitz.com
Kirsten C. Jackson (Cal. Bar No. 265952)
kjackson@kasowitz.com
Melissa Dejoie (Cal Bar. No. 308014)
mdejoie@kasowitz.com
KASOWITZ BENSON TORRES LLP
2029 Century Park East, Suite 2000
Los Angeles, CA 90067
Telephone: (424) 288-7900
Facsimile: (424) 288-7901

**FILED**
SUPERIOR COURT of CALIFORNIA
COUNTY of SANTA BARBARA
**10/16/2019**
Darrel E. Parker, Executive Officer
BY _Chavez, Terri_
Deputy Clerk

Attorneys for Plaintiff

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## FOR THE COUNTY OF SANTA BARBARA

## ANACAPA DIVISION

| | |
|---|---|
| SOMERA CAPITAL MANAGEMENT, LLC, a California Limited Liability Company, | CASE NO.: 18CV06147 |
| Plaintiff, | **STIPULATION TO CONTINUE NOVEMBER 1, 2019 CASE MANAGEMENT CONFERENCE** |
| vs. | |
| TWIN CITY FIRE INSURANCE COMPANY, an Indiana Corporation; THE SWETT & CRAWFORD GROUP, INC., a California Corporation; and DOES 1 through 10, | Hon. Donna D. Geck |
| Defendants. | |

**STIPULATION TO CONTINUE NOVEMBER 1, 2019 CASE MANAGEMENT CONFERENCE**

1    Plaintiff Somera Capital Management, LLC ("Somera") and Defendant Twin City Fire
2  Insurance Company ("Twin City") stipulate to continue the November 1, 2019 case
3  management conference.

4    Somera and Twin City, and Swett, through their respective counsel, hereby stipulate and
5  agree to the following:

6    WHEREAS, Somera originally filed this suit on December 14, 2018 seeking insurance
7  coverage for a lawsuit filed against Somera and its President, David A. Brown;

8    WHEREAS, Somera named its insurer, Twin City, and the broker of the insurance
9  policy, Swett, as defendants;

10    WHEREAS, Twin City filed its answer on January 22, 2019;

11    WHEREAS, Swett has not yet appeared in this action, but does not oppose the proposed
12 continuance;

13    WHEREAS, Somera and Twin City have filed competing motions for summary
14 judgment and adjudication that are currently noticed for November 8, 2019, and December 21,
15 2019[1], respectively, and, in the interest of judicial efficiency and limiting costs, seek to
16 continue the case management conference, to January 31, 2020.

17    Somera and Twin City hereby STIPULATE to continue the case management
18 conference until January 31, 2020.

21 DATED:    October 15, 2019        KASOWITZ BENSON TORRES LLP

23                     By: _____
24                           Kirsten C. Jackson
                           Attorneys for Somera Capital Management, LLC

---

[1] Twin City has moved to consolidate these motions to December 21, 2019.

**STIPULATION TO CONTINUE NOVEMBER 1, 2019 CASE MANAGEMENT
CONFERENCE**

DATED:     October 15, 2019

HAYES SCOTT BONINO & ELLINGSON

By:_____

Tyler Austin
Attorneys for Twin City Fire Insurance Company

## [PROPOSED] ORDER

In accordance with the attached Joint Stipulation of the parties, the Case Management Conference shall be continued from November 1, 2019 to January 31, 2020.

IT IS SO ORDERED.

DATE: **10/16/2019**

_____

Hon. Donna D. Geck

**Donna D. Geck**

---

**STIPULATION TO CONTINUE NOVEMBER 1, 2019 CASE MANAGEMENT CONFERENCE**

1

**PROOF OF SERVICE**

2

**STATE OF CALIFORNIA, COUNTY OF LOS ANGELES**

3

I declare that I am over 18 years of age and not a party to this action.  I am employed in the County of Los Angeles, State of California.  My business address is 2029 Century Park East, Suite 2000, Los Angeles, California  90067.

4

5

On October 15, 2019, I served the document above on all interested parties in this action as follows:

6

| | |
|---|---|
| Stephen M. Hayes | Joyce Wang |
| shayes@hayesscott.com | jwang@ccplaw.com |
| Tyler R. Austin | Colin Munro |
| TAustin@hayesscott.com | cmunro@ccplaw.com |
| Ryan Z. Keller | Demetrius Lambinos |
| rkeller@hayesscott.com | dlambrinos@ccplaw.com |
| Hayes Scott Bonino & Ellingson | Carlson Calladine  & Peterson LLP |
| Guslani Simonson & Clause, LLP | 353 Sacramento Street, 16th Floor. |
| 999 Skyway Road, Suite 310 | San Francisco, CA 94111 |
| San Carlos, California  94070 | |
| Telephone: (650) 637-9100 | Attorneys for Defendant The Swett & Crawford Group, Inc. |
| Facsimile:  (650) 637-8071 | |
| | |
| Attorneys for Defendant | |
| Twin City Fire Insurance Company | |

7

8

9

10

11

12

13

14

15

16

☒ **By Mail:**  I placed the document(s) listed above in sealed envelope(s), with postage thereon fully prepaid, for collection and mailing at Los Angeles, California, following ordinary business practices.  I am readily familiar  with the practices of Kasowitz Benson Torres LLP for processing of correspondence, said practice being that in the ordinary course of business, correspondence is deposited in the United States Postal Service the same day as it is placed for processing.

17

18

19

☒ **By Electronic Service (Email):**  Based on a court order or an agreement of the parties to accept service by electronic transmission, I caused the document(s) to be sent to the persons at the electronic service addresses listed above.

20

21

☐ **By Overnight Delivery:**  I enclosed the documents in an envelope or package provided by an overnight delivery carrier and addressed to the persons listed above. I placed the envelope or package for collection and overnight delivery at an office or a regularly utilized drop box of the overnight delivery carrier.

22

23

☐ **By Personal Service:**  by causing personal delivery of the document(s) listed above to the person(s) at the address(es) set forth above.

24

I declare under penalty of perjury that the foregoing is true and correct.

25

Executed on October 15, 2019 in Los Angeles, California.

26

27

*Melissa Dejoie*
Melissa Dejoie

28

**STIPULATION TO CONTINUE NOVEMBER 1, 2019 CASE MANAGEMENT CONFERENCE**

THE SUPERIOR COURT OF CALIFORNIA

COUNTY OF SANTA BARBARA

## TENTATIVE RULING

**Judge Donna Geck**
**Department 4 SB-Anacapa**
**1100 Anacapa Street P.O. Box 21107 Santa Barbara, CA 93121-1107**

**CIVIL LAW & MOTION**

| Somera Capital Management, LLC vs Twin City Fire Insurance Company et al | |
|---|---|
| **Case No:** | 18CV06147 |
| **Hearing Date:** | Fri Jan 10, 2020 9:30 |

**Nature of Proceedings:** Motion for Summary Adjudication; Motion for Summary Judgment

**Tentative Ruling**: 1. The court denies defendant Twin City Fire Insurance Company's Motion for Summary Judgment or, in the Alternative, Summary Adjudication.

2. The court grants plaintiff Somera Capital Management, LLC's motion for summary adjudication as to defendant Twin City Fire Insurance Company's 24th Affirmative Defense. The court orders Twin City Fire Insurance Company's 32nd Affirmative Defense stricken from the answer.

**Background**: This is an insurance coverage action that plaintiff Somera Capital Management, LLC, commenced against defendants Twin City Fire Insurance Company and The Swett & Crawford Group, Inc. (There is no proof of service indicating service on defendant Swett & Crawford, which apparently merged into CRC Insurance Services, Inc., and it has not made a general appearance in the case.) At issue is insurance coverage for a lawsuit in this court captioned *Postcard Properties, LLC v. Somera Capital Management, LLC, et al.*, Case No. 17CV04361 (the "underlying lawsuit").

In the first amended complaint ("FAC"), Somera alleges:

In the underlying lawsuit, Postcard Properties, LLC ("Postcard") alleges causes of action for (1) breach of written contract, (2) common counts, (3) breach of oral contract, (4) fraud, and (5) declaratory relief. In the underlying lawsuit Postcard alleges that Somera and its president, David A. Brown breached various oral and written agreements with Postcard regarding the development of two commercial real estate projects, the Pismo Beach Project and the Avila Beach Project. Postcard alleges that, if there were no such agreements, Somera and Brown owe Postcard "for work, labor, services and materials rendered at the special instance and request of" Somera and Brown and for alleged fraud.

Twin City issued to Somera a Private Equity Choice Policy providing coverage from February 21, 2017, to February 21, 2018. Somera is the "Insured Entity" and Brown an "Insured Person" under the policy. The policy covers claims for a wrongful act and a "claim" is a civil proceeding for damages or other civil relief. Somera tendered the underlying lawsuit to Twin City for coverage. After initially denying any coverage, Twin City provided coverage to Brown as an Insured Person, with a reservation of rights, but contends that a contractual liability exclusion applies to Somera. Twin City asserted it would only advance 25% of defense costs based on an allocation of the relative legal exposure of Somera and Brown, which allocation Somera contends is arbitrary and contrary to California law.

The causes of action in the FAC are 1) breach of contract (Twin City), 2) breach of the implied covenant of good faith and fair dealing (Twin City), 3) negligence (Swett & Crawford), 4) negligent misrepresentation (Swett & Crawford), and 5) declaratory relief (Swett & Crawford).

A CMC is scheduled for January 31, 2020.

**Twin City's Motion**: Defendant Twin City Fire Insurance Company moves for summary judgment or, in the alternative, summary adjudication. The grounds for the motion are that Somera's failure to pay contractually owed fees does not satisfy the insuring grant; the policy's breach of contract exclusion; Twin City had proper cause for its coverage position; there is a genuine disputes as to coverage liability; and there is no ground for punitive damages. Somera opposes the motion.

*A. Pleadings*: Twin City's memorandum in support of the motion includes four pages numbered with Roman numerals and the reply has five pages numbered with Roman numerals. "The pages of a memorandum must be numbered consecutively beginning with the first page and using only Arabic numerals (e.g., 1, 2, 3). The page number may be suppressed and need not appear on the first page." CRC 3.1113(h).

The requirement is not just a technical one. The court reviews pleadings very carefully, often finding it necessary to refer back to a pleading after reading an opposition or reply. When referring back, the court hopes to find help in the tables. But, when the page numbers in the tables do not match the actual pages in the electronically filed pdf document, the tables are of limited help.

No opening or responding memorandum regarding a summary judgment or adjudication motion may exceed 20 pages. CRC 3.1113(d). "A memorandum that exceeds the page limits of these rules must be filed and considered in the same manner as a late-filed paper." CRC 3.1113(g). "A trial court has broad discretion under rule 3.1300(d) of the Rules of Court to refuse to consider papers served and filed beyond the deadline without a prior court order finding good cause for late submission." *Bozzi v. Nordstrom, Inc.*, 186 Cal.App.4th 755, 765 (2010). (CRC 3.1300(d) provides: "If the court, in its discretion, refuses to consider a late filed paper, the minutes or order must so indicate.")

Twin City objects to the length of Somera's opposition memorandum. The memorandum consists of 34 pages. However, the page limitation in CRC 3.1113(d) predated the page numbering regimen in CRC 3.1113(h). Therefore, the court considers the 20 page limit to apply to the substance of the memorandum. By this measure, Somera's opposition motion is still 27

pages long (pages 8-34). Even this number is deceptive, as Somera placed substantive argument in five of its six single-spaced footnotes.

On January 7, the court heard Somera's ex parte application seeking authorization to exceed the 20 page limitation for the opposition memorandum that it had filed four weeks earlier. The court ruled that it would consider the first 20 pages of the opposition and allow Somera to present oral argument at the hearing on the matters set forth in the seven pages exceeding the 20 page limit.

Despite objecting to the length of Somera's opposition, Twin City turned around and filed an 18 page reply. CRC 3.1113(d) provides that no reply memorandum may exceed 10 pages. There is no different page limitation for replies in support of summary judgment motions. Twin City did not seek leave of court to file an oversized memorandum. Somera's oversized memorandum may have been cause for seeking authorization to file Twin City's own oversized memorandum but it does not dispense with the necessity of court authorization. The court will consider the first 10 pages and permit argument regarding the balance, if necessary.

*B. Summary Judgment Standards*: Summary judgment is appropriate where there is no triable issue as to any material fact and the moving party is entitled to a judgment as a matter of law. CCP § 437c(c). "The party moving for summary judgment bears an initial burden of production to make a prima facie showing of the nonexistence of any triable issue of material fact; if he carries his burden of production, he causes a shift, and the opposing party is then subjected to a burden of production of his own to make a prima facie showing of the existence of a triable issue of material fact." *Aguilar v. Atlantic Richfield Co.*, 25 Cal.4th 826, 850 (2001). "A defendant bears the burden of persuasion that 'one or more elements of' the 'cause of action' in question 'cannot be established,' or that 'there is a complete defense' thereto. (§ 437c, subd. (p)(2).)" *Id.*

"[F]rom commencement to conclusion, the party moving for summary judgment bears the burden of persuasion that there is no triable issue of material fact and that he is entitled to judgment as a matter of law." *Aguilar v. Atl. Richfield Co.*, 25 Cal.4th 826, 850 (2001). A burden of production entails only the presentation of evidence, while a burden of persuasion "entails the establishment through such evidence of a requisite degree of belief." *Id.*

A defendant moving for summary judgment has the burden to show that it is entitled to judgment with respect to all of the plaintiff's theories of liability. *Lopez v. Superior Court*, 45 Cal.App.4th 705, 717 (1996).

*C. Twin City's Separate Statement and Triable Issues of Material Fact*: The court "must deny the motion if there is a single issue of material fact in dispute." *Cates v. California Gambling Control Com.*, 154 Cal.App.4th 1302, 1308 (2007). "[T]he separate statement effectively *concedes* the materiality of whatever facts are included. Thus, if a triable issue is raised as to any of the facts in your separate statement, the motion must be denied!" (*Nazir v. United Airlines, Inc.*, 178 Cal.App.4th 243, 252 (2009), quoting Weil & Brown, *Cal. Practice Guide: Civil Procedure Before Trial* (The Rutter Group 2009) § 10:95.1, p. 10-35.)

Fact #15 in Twin City's separate statement of undisputed material facts reads: "The allegations in the Underlying Action and extrinsic evidence show that Postcard's claims are based on Somera's failure to pay contract(s) and

restitution, which is not a Wrongful Act, claim of Loss, or fortuitous act and uninsurable as a matter of public policy in California so as not to transfer the contract price to the insurer." This fact is incorporated in all three issues Twin City seeks to summarily adjudicate.

Somera objects that this statement of fact consists of conclusions that are unsupported by the law or the facts. Somera points out that the Postcard complaint does not mention restitution. The court has confirmed that this is the case. Nor do the interrogatory responses referenced in this statement contain the word "restitution."

Twin City quotes *McBride v. Boughton*, 123 Cal.App.4th 379, 394 (2004): "A common count is not a specific cause of action, however; rather, it is a simplified form of pleading normally used to aver the existence of various forms of monetary indebtedness, including that arising from an alleged duty to make restitution under an assumpsit theory." But that case does not state that all common counts are restitution claims. In *McBride v. Boughton*, the common count was for money had and received, not for services rendered as here.

Since the statement of material fact #15 states that the claims are based on both failure to pay contracts and restitution, Twin City concedes that both facts are material. As to restitution, the material fact is disputed.

Therefore, the court denies defendant Twin City Fire Insurance Company's Motion for Summary Judgment or, in the Alternative, Summary Adjudication.

**Somera's Motion**: Somera moves for summary adjudication as to Twin City's 24th affirmative defense, which asserts there is no coverage for the underlying lawsuit on the basis of an exclusion for certain contractual liability, and as to the 32nd affirmative defense, which asserts there is no coverage for the underlying lawsuit on the basis of the property management exclusion.

In the opposition to Somera's motion, at footnote 2, Twin City states: "Twin City advised Somera that it has withdrawn its affirmative defense based on the property management exclusion without prejudice and therefore it does not address that exclusion in this brief." Twin City does not say how or when that was withdrawn. There has been no amendment to Twin City's answer. Nevertheless, the defense is no longer at issue. For clarity, the court orders the defense stricken from the answer.

*1. Summary Adjudication Standards*: "A party may move for summary adjudication as to … one or more affirmative defenses …, if the party contends … that there is no merit to an affirmative defense as to any cause of action…. A motion for summary adjudication shall be granted only if it completely disposes of … an affirmative defense…." CCP § 437c(f)(1).

The court may grant summary adjudication of an affirmative defense "when there is no triable issue of material fact as to the defense, and the moving party is entitled to judgment on the defense as a matter of law." *Kendall-Jackson Winery, Ltd. v. Superior Court*, 76 Cal.App.4th 970, 977–78 (1999). "The plaintiff bears the initial burden to show there is no triable issue of material fact as to the defense and that he or she is entitled to judgment on the defense as a matter of law. In so doing, the plaintiff must negate an essential element of the defense, or establish the defendant does not possess and cannot reasonably obtain evidence needed to support the defense." *See's Candy Shops, Inc. v. Superior Court*, 210 Cal.App.4th 889, 900 (2012). If plaintiff's moving papers establish a prima facie showing that

meets the plaintiff's burden, the burden then shifts to the defendant to make a prima facie showing of the existence of a triable material factual issue. *Id.*

"A summary adjudication motion is subject to the same rules and procedures as a summary judgment motion." *Case v. State Farm Mut. Auto. Ins. Co.*, 30 Cal.App.5th 397, 401 (2018).

*2. Pleadings*: Both Somera's memorandum in support of the motion and Twin City's memorandum in opposition fail to comply with the page numbering regimen in CRC 3.1113(h).

The Declaration of Jerold Oshinsky filed with the motion includes seven exhibits consisting of 256 pages. The declaration includes one electronic bookmark to Exhibit 5. CRC 3.1110(f)(4) requires electronic bookmarks for all exhibits. This has made the court's task very difficult.

*3. Facts*: The court has taken material facts from Somera's separate statement of undisputed material facts (UMF ##1-27), Twin City's response thereto, and Twin City's additional facts (TCMF ##1-10). (Somera did not respond to Twin City's additional facts.) When Twin City has indicated a dispute, the court has reviewed the underlying evidence to determine whether there is truly a dispute and, if so, the extent to which the fact is undisputed. (The court omits facts related to the property management exclusion, which is no longer at issue. The court will not state Twin City's additional facts that duplicate Somera's facts.)

Twin City issued to Somera Private Equity Choice Policy No. 72 D 0240050-17 (the "Policy"), which provides coverage for the Policy Period from February 21, 2017 to February 21, 2018. [UMF #1] The Policy's Private Equity Fund Management and Professional Liability ("PEFM&P") provides:

"(A) Insured Person Liability: The Insurer shall pay Loss on behalf of the Insured Persons, which such Insured Persons become legally obligated to pay, resulting from a Claim first made during the Policy Period or Extended Reporting Period, if applicable, against the Insured Persons for a Wrongful Act by the Insured Persons which takes place during or prior to the Policy Period, except for Loss that the Insured Entity pays to or on behalf of the Insured Persons as indemnification." [UMF #2] "(B) Insured Entity Reimbursement: Loss on behalf of an Insured Entity for which such Insured Entity has, to the extent permitted or required by law, indemnified the Insured Persons, which such Insured Persons become otherwise legally obligated to pay, resulting from a Claim first made during the Policy Period or Extended Reporting Period, if applicable, against the Insured Persons for a Wrongful Act by the Insured Persons which takes place during or prior to the Policy Period." [UMF #3] "(C) Insured Entity Liability: Loss on behalf of an Insured Entity, which such Insured Entity becomes legally obligated to pay, resulting from a Claim first made during the Policy Period or Extended Reported Period, if applicable, against such Insured Entity for a Wrongful Act by the Insured Entity which takes place during or prior to the Policy Period." [UMF #4]

"Claim" includes a civil proceeding. [UMF #5] "Loss" means damages and defense costs. [UMF #6] "Insured Person" is Brown. [UMF #7] "Insured Entity" is Somera and "Real Estate Holding Company" (the term replacing any reference to "Investment Holding Company"). [UMF #8] "Real Estate Holding Company" means any entity which Somera creates or any Investment Fund for the purpose of acquiring real estate and in which more

than 50% of the debt or equity interests of the Real Estate Holding Company are owned or controlled by Somera or Somera has management control. [UMF #8]

"'Wrongful Act,' means, with respect to: (1) an Insured Person, any actual or alleged: (a) error, misstatement, misleading statement, act, omission, neglect or breach of duty by an Insured Person in his or her capacity as such, including in the rendering of or failure to render Professional Services; or (b) matter claimed against an Insured Person solely by reason of serving in such capacity or their status as such, including in a Portfolio Company Capacity or Non-Profit Capacity. (2) an Insured Entity, any actual or alleged error, misstatement, misleading statement, act, omission, neglect or breach of duty by an Insured Entity: (a) in its capacity as a general partner, limited partner or member of any other Insured Entity that is a limited partnership or limited liability company; (b) in its rendering of or failure to render Professional Services; (c) in its capacity as a majority shareholder or control person of a Portfolio Company; or (d) in its capacity as a selling shareholder of a Portfolio Company." "Wrongful Act" also means, in connection with Professional Services, any actual or alleged error, misstatement, misleading statement, act, omission, neglect or breach of duty by a natural person or entity for whose acts an Insured Entity is legally liable, in a matter claimed against any Insured Entity solely by reason of its status as such. [UMF #9]

"'Professional Services' means: (1) the actual or proposed creation, formation, establishment, organization or capitalization by an Insured of an Investment Fund, Real Estate Holding Company or Unaffiliated Investment Holding Company, including the solicitation of any interest(s) in an Investment Fund, Real Estate Holding Company or Unaffiliated Investment Holding Company, or proposed Investment Fund, Real Estate Holding Company or Unaffiliated Investment Holding Company; (2) any advice or services provided by an Insured for or on behalf of an Investment Fund, Real Estate Holding Company or Unaffiliated Investment Holding Company, including the operation, management or dissolution by an Insured of any Investment Fund, Real Estate Holding Company or Unaffiliated Investment Holding Company; … (8) the distribution by an Insured of capital, interests, investment or other proceeds, of any Investment Fund, Real Estate Holding Company or Unaffiliated Investment Holding Company…." [UMF #10]

The exclusion applicable to the Policy reads: "Pursuant to Section V., ADVANCEMENT AND ALLOCATION OF DEFENSE COSTS, and Section VI., ALLOCATION OF DAMAGES, of the Common Terms and Conditions, the Insurer shall not pay Loss under Insuring Agreement (C) in connection with any Claim based upon, arising from, or in any way related to any actual or alleged breach of contract or agreement other than that portion of such Loss which would have attached even in the absence of such contract or agreement, or that directly results from: (A) the organizational, management, monitoring or advisory documents of an Insured Entity, including but not limited to, a partnership agreement, limited partnership agreement, operating agreement, limited liability company agreement, other advisory, monitoring and/or management agreement or subscription agreement; (B) the rendering of or failure to render Professional Services; or (C) any alleged breach of any express or implied promise to contribute or lend money to a Portfolio Company or prospective Portfolio Company." [UMF #12]

In the underlying lawsuit, Postcard asserts causes of action for (1) breach of written contract, (2-4, 6) common counts, (5) breach of oral contract, (7, 8)

fraud, and (9) declaratory relief. [UMF #13] Postcard's complaint in the underlying lawsuit attaches the Pismo Beach Project Agreement that Postcard alleged was breached by Somera. [UMF #14] The letter attached as Exhibit A to Postcard's complaint provides: "when countersigned by Postcard Properties, LLC ("Postcard Properties") and Postcard Management Company, LLC ("Postcard Management Company"), it is the signatories' "agreement regarding the participation of Postcard Properties in the profits of SCM Pismo Pier Partners, LLC (the "Company") and the allocation and distribution of certain fees payable to Somera Capital Management ("SCM") by the Company, pursuant to the Company's Operating Agreement." [UMF #15]

The Postcard complaint alleges:

"10. Postcard and Somera entered into an oral agreement under which Somera would purchase the Pismo Beach property; Postcard would be primarily responsible for the project management and developer services required to entitle and construct the hotel; and Postcard and the Somera Defendants would share the project management and developer services fees generated by the project. … 12. During this period, Postcard and the Somera Defendants determined to memorialize their oral agreement with a written agreement. On or about January 31, 2014, Postcard and the Somera Defendants entered into a written agreement regarding the development of the Pismo Beach Project. … 16. Commencing within the last four years, and continuing thereafter, the Somera Defendants breached the Pismo Beach Project Agreement by, among other things, failing to diligently pursue the payment of the Project Management Fees and Developer Services Fees due to Postcard pursuant to said Agreement." … 26. In or about May 2013, Postcard located an approximately 22-acre bluff-top site for a potential high-end resort hotel development in Avila Beach, California (hereinafter referred to as the "Avila Beach Property"). As with the Pismo Beach Project, while Postcard had the knowledge and experience required to get that hotel approved and built, Postcard did not have the capacity to finance the development and construction of that project. Postcard then approached the Somera Defendants with that opportunity, and the Somera Defendants agreed to go forward with Postcard on that project. In or about the Fall of 2013, the Somera Defendants opened an escrow to purchase the Avila Beach Property." 27. In or about mid-February 2014, with the close of escrow on the Avila Beach Property scheduled only about two weeks later on February 28, 2014, Brown, on behalf of the Somera Defendants, and Dana Severy (hereinafter referred to as "Severy"), on behalf of Postcard, met in the conference room of the offices of the Somera Defendants. During that meeting, Brown, on behalf of the Somera Defendants, made an offer to Severy, on behalf of Postcard, that the Somera Defendants and Postcard proceed with the Avila Beach Project on the same basis as the parties had agreed for the Pismo Beach Project as reflected in the Pismo Beach Project Agreement, which had just been agreed to about two weeks earlier. Severy, on behalf of Postcard, accepted that offer…. 29. Among other things, the Avila Beach Project Agreement, as with the Pismo Beach Project Agreement, provides (a) that, pursuant to Section 1(a), Postcard is to receive 65% of all Project Management Fees and Developer Services Fees paid on the project; and (b) that, pursuant to Section 3(a), Postcard is to receive 35% of the Somera Defendants' interest in and to the Somera Defendants' Managing Member Subordinated Cash Flow and Profits Interest payments." … 33. In or about October 2015, and continuing thereafter, the Somera Defendants

breached the Avila Beach Project Agreement by, among other things, terminating Postcard from its involvement in the Avila Beach Project and thereby preventing Postcard from continuing to provide project management and developer services for the Avila Beach Project. In addition, said actions by the Somera Defendants constituted a breach of the implied covenant of good faith and fair dealing in the Avila Beach Project Agreement." [UMF #16]

"19. Within the last four years, in connection with the Pismo Beach Project, the Somera Defendants became indebted to Postcard in an amount in excess of $252,000.00, according to proof, for work, labor, services and materials rendered at the special instance and request of the Somera Defendants and for which the Somera Defendants promised to obtain payments for Postcard. Said amount is due and unpaid despite Postcard's demand. ... 36. Within the last two years, in connection with the Avila Beach Project, the Somera Defendants became indebted to Postcard in an amount in excess of $500,000.00, according to proof, for work, labor, services and materials rendered at the special instance and request of the Somera Defendants and for which the Somera Defendants promised to obtain payments for Postcard. Said amount is due and unpaid despite Postcard's demand." [UMF #17]

30. [. . .] During the approximately 20 months between in or about mid-February 2014 and October 2015, Postcard, in reliance on the Avila Beach Project Agreement, changed its position by performing the services set forth in Paragraph 28 above for the benefit of the Avila Beach Project with the full knowledge of and participation by the Somera Defendants, and, at no time during that period, did the Somera Defendants ever indicate to Postcard that it did not intend to be bound by the terms of the Avila Beach Project Agreement. As a result, given that change of position by Postcard, and the services it provided during those approximately 20 months, it would suffer unconscionable injury were the Avila Beach Project Agreement not enforced. Moreover, without such enforcement, the Somera Defendants, having accepted the benefits of those services provided by Postcard, would be unjustly enriched. ... 41. Defendants made the representations referred to in Paragraph 38 above with the intent to defraud and induce Postcard to provide work, labor, and services to the benefit of Defendants for the development of the Avila Beach Project. 42. In justifiable reliance upon the conduct of Defendants, Postcard was induced to act and proceeded with providing work, labor and services for 20 months, until the Somera Defendants terminated Postcard's work, labor and services on the Avila Beach Project. ... 44. As a result of Postcard's reliance upon the conduct of Defendants, Postcard has suffered damages in an amount in excess of $500,000.00, according to proof, including, but not limited to, damages for the value of the work, labor and services provided by Postcard for the benefit of Defendants." 45. In doing the acts alleged in this cause of action, Defendants acted maliciously and oppressively toward Postcard in that Defendants knew that they could induce Postcard to perform necessary work, labor and services on the Avila Beach Project by promising to be bound by an oral agreement with Postcard, because Postcard and the Somera Defendants had proceeded on that basis on the Pismo Beach Project, where the written Pismo Beach Project Agreement was not entered into until after Postcard had performed substantial work, labor and services on the Pismo Beach Project for more than a year. ... 48. Defendants made the promises without any intention of performance referred to in Paragraph 47 above with the intent to defraud and induce Postcard to rely upon them and to provide work, labor and services to the benefit of Defendants for the development of the Avila Beach Project. ...

49. In justifiable reliance upon the conduct of Defendants, Postcard was induced to act and proceeded with providing work, labor and services for 20 months, until the Somera Defendants terminated Postcard's work, labor and services on the Avila Beach Project. … 51. As a result of Postcard's reliance upon the conduct of Defendants, Postcard has suffered damages in an amount in excess of $500,000.00, according to proof, including, but not limited to, damages for the value of the work, labor and services provided by Postcard for the benefit of Defendants." [UMF #18]

Twin City sent Somera a denial of coverage letter for the underlying lawsuit dated February 2, 2018, stating "there is no coverage for this matter due to the professional services exclusion, Endorsement No. 3 and breach of contract exclusion, Endorsement No. 6." [UMF ##19, 20] In a letter dated June 19, 2018, Twin City withdrew its denial as to Brown with a reservation of rights. [UMF #23]

The 24th Affirmative Defense in Twin City's answer to the complaint in this case reads: "AS A TWENTY FOURTH SEPARATE DEFENSE TO THE COMPLAINT ON FILE HEREIN, AND TO EACH ALLEGED CAUSE OF ACTION CONTAINED THEREIN, this answering Defendant alleges that there is no duty to advance and no duty to indemnify under the Policy under Section V, of the PEFM&P Coverage Part, Exclusions Applicable to Insuring Agreement (C), as amended by Endorsement No. 8, because this Claim is for Loss is based upon, arising from, or in any way related to any actual or alleged breach of contract or agreement and the exceptions do not apply." [UMF #25]

Postcard alleges its project management and developer services for the Pismo Beach Project. The Property and Asset Management Services provided by Postcard "shall be subject at all times to the full oversight, approval and control by Somera." [UMF #27]

The Policy's Common Terms and Conditions as amended by Endorsement No. 9 states in part: "For the Purpose of determining if an Insured Entity is permitted or required to indemnify an Insured Person, the applicable management advisory, organizational or corporate governance documents of any Insured Entity, including, but not limited to, any certificate of incorporation, articles of organization, bylaws, charter, limited partnership agreement, limited liability company agreement, operating agreement, advisory or management agreement, or other similar organizational document as well as any agreements relating to indemnification of Insured Persons, shall be presumed to permit indemnification and advancement of Defense Costs to the maximum extent permissible under any applicable law, regardless of the actual provisions of such documents." [TCMF #5]

The Policy's terms regarding advancement and allocation of defense costs are: "(A) It shall be the duty of the Insureds, and not the Insurer, to defend any Claim. (B) Upon written request by any Insured, the Insurer shall advance Defense Costs in excess of the applicable Retention amount, in defense of any Claim covered by this Policy. However if such Defense Costs are only partially covered by this Policy because: (i) such Claim involves both Insureds and persons or entities who are not Insureds, or (ii) such Claim is subject to one or more ALLOCABLE EXCLUSIONS, as set forth in Section IV. (A) of each Coverage Part; or (iii) a portion of such Claim is subject to one or more exceptions to the exclusions listed in EXCLUSIONS WITH EXCEPTIONS, as set forth in Section IV. (C) of each Coverage Part (or

Section V. EXCLUSION APPLICABLE TO INSURING AGREEMENT (C) of the Private Equity Fund Management and Professional Liability Coverage Part); or (iv) a portion of such Claim is for amounts that do not constitute Damages, unless otherwise specified, then the Insureds and the Insurer agree to use their best efforts to fairly and reasonably allocate such Defense Costs on the basis of the relative legal exposures of the covered and non-covered parties and/or the covered and non-covered portions of such Claim and/ or such Defense Costs. [TCMF #6]

*4. Analysis*: As relevant here, the breach of contract exclusion in the Policy provides that Twin City shall not pay Loss "in connection with any Claim based upon, arising from, or in any way related to any actual or alleged breach of contract or agreement other than that portion of such Loss which would have attached even in the absence of such contract or agreement, or that directly results from: [two types of agreements]." (The full language of the exclusion is set forth in UMF #12 above.) The "other than" language indicates exceptions to the exclusion. In other words, it provides for Loss that is covered under the policy.

"[I]nsurance coverage is interpreted broadly so as to afford the greatest possible protection to the insured, [whereas] ... exclusionary clauses are interpreted narrowly against the insurer." *MacKinnon v. Truck Ins. Exchange*, 31 Cal.4th 635, 648 (2003) [internal quotations and citations omitted]. Exceptions to exclusions are construed broadly in favor of the insured. *Aydin Corp. v. First State Ins. Co.*, 18 Cal. 4th 1183, 1192 (1998); *Nationwide Mut. Ins. Co. v. Shimon*, 243 Cal. App. 4th 29, 35 (2015).

"[A]n insurer cannot escape its basic duty to insure by means of an exclusionary clause that is unclear. As we have declared time and again any exception to the performance of the basic underlying obligation must be so stated as clearly to apprise the insured of its effect. Thus, the burden rests upon the insurer to phrase exceptions and exclusions in clear and unmistakable language." *MacKinnon v. Truck Ins. Exchange*, *supra*, 31 Cal.4th at 648 [internal quotations and citations omitted]. And insurer must not only establish that its interpretation of exclusionary language is reasonable, it must "establish that its interpretation is the *only* reasonable one." *Id.* at 655 [italics in original].

The court will address the exceptions to the exclusion in the order Somera addresses them in the memorandum in support of the motion.

*a. Loss that directly results from (A) the organizational, management, monitoring or advisory documents of an Insured Entity, including but not limited to, a partnership agreement, limited partnership agreement, operating agreement, limited liability company agreement, other advisory, monitoring and/or management agreement or subscription agreement*:

Somera asserts that the Pismo Beach and Avila Beach Project Agreements alleged in the Postcard complaint qualify under this exception to the contract exclusion as "management agreements." Twin City argues that there is no Loss or Wrongful Act as defined in the Policy and, therefore, there is no coverage for breach of a management agreement. But that is an argument that there is no coverage under the Policy separate from the 24th Affirmative Defense. In fact, those issues are raised in the 15th and 30th Affirmative Defenses, which are not at issue here. The court is only deciding whether this Affirmative Defense must be summarily adjudicated, not whether coverage under the Policy must be summarily adjudicated. If it turns out there is no

coverage under the Policy by reason of the 15th and 30th Affirmative Defenses or otherwise, the 24th Affirmative Defense is unnecessary. An affirmative defense of exclusion assumes coverage. Therefore, for purposes of this analysis only, the court assumes coverage under the Policy absent the exclusion.)

The first hurdle for application of this exception is the language before the "including but not limited to" language. That is: "the organizational, management, monitoring or advisory documents of an Insured Entity." Twin City argues: "This preamble describes documents which govern the Insured Entity followed by language concerning the various types of documents that serve that purpose."

"[D]isputed policy language must be examined *in context* with regard to its intended function in the policy. [Citation] This requires a consideration of the policy as a whole, the circumstances of the case in which the claim arises and 'common sense.'" *Nissel v. Certain Underwriters at Lloyd's of London*, 62 Cal.App.4th 1103, 1111-1112 (1998).

Twin City refers to Endorsement No. 9 to the policy set forth in TCMF #5. That language refers to "the applicable management advisory, organizational or corporate governance documents of any Insured Entity, including, but not limited to, any certificate of incorporation, articles of organization, bylaws, charter, limited partnership agreement, limited liability company agreement, operating agreement, advisory or management agreement, or other similar organizational document...."

The two references are not the same. The exclusion exception applicable here refers to "the organizational, management, monitoring or advisory documents of an Insured Entity," while Endorsement No. 9 refers to "the applicable management advisory, organizational or corporate governance documents of any Insured Entity." The reference to "management" documents in the two preambles is not the same. The exclusion exception refers to "management" documents and Endorsement No. 9 refers to "management advisory" documents. Twin City might argue that a comma was inadvertently omitted between "management" and "advisory" in the latter. But it is a "fundamental principle that in interpreting contracts, including insurance contracts, courts are not to insert what has been omitted." *Safeco Ins. Co. of America v. Robert S.*, 26 Cal.4th 758, 764 (2001). Courts do not give an insurer "the benefit of the doubt created by its own careless drafting." *Slottow v. Am. Cas. Co. of Reading, Pennsylvania*, 10 F.3d 1355, 1361 (9th Cir. 1993).

While Twin City's interpretation is not unreasonable, it is not the only reasonable interpretation. Somera's management documents referenced in the exclusion exception are not necessarily corporate governance documents. It is reasonable to interpret the language as identifying management agreements for the Pismo and Avila projects as among Somera's management documents.

Interpreting the exception to the exclusion broadly, the court concludes that the management agreements alleged in Postcard's complaint are management agreements within the meaning of exception (A) to the exclusions applicable to the insuring agreement. For this reason, the court will grant summary adjudication of the 24th Affirmative Defense.

*b. Loss that directly results from (B) the rendering of or failure to render Professional Services*: Postcard alleges that, with respect to both the Pismo and Avila properties, it was "to receive 65% of all Project Management Fees and Developer Services Fees paid on the project" and "35% of the Somera Defendants' interest in and to the Somera Defendants' Managing Member Subordinated Cash Flow and Profits Interest payments." [UMF #16] Somera argues these alleged obligations fall within the "Professional Services" definition in the Policy.

"Professional Services" include "(1) the actual or proposed creation, formation, establishment, organization or capitalization by an Insured of an Investment Fund, Real Estate Holding Company or Unaffiliated Investment Holding Company, including the solicitation of any interest(s) in an Investment Fund, Real Estate Holding Company or Unaffiliated Investment Holding Company, or proposed Investment Fund, Real Estate Holding Company or Unaffiliated Investment Holding Company; (2) any advice or services provided by an Insured for or on behalf of an Investment Fund, Real Estate Holding Company or Unaffiliated Investment Holding Company, including the operation, management or dissolution by an Insured of any Investment Fund, Real Estate Holding Company or Unaffiliated Investment Holding Company; … and (8) the distribution by an Insured of capital, interests, investment or other proceeds, of any Investment Fund, Real Estate Holding Company or Unaffiliated Investment Holding Company." [UMF #10]

The two entities are SCM Pismo Pier Partners, LLC, and SCM Avila Beach Partners, LLC. "Real Estate Holding Company" means any entity which Somera creates or any Investment Fund for the purpose of acquiring real estate and in which more than 50% of the debt or equity interests of the Real Estate Holding Company are owned or controlled by Somera or Somera has management control. [UMF #8] Nothing in Somera's separate statement indicates that SCM Pismo Pier Partners, LLC, and SCM Avila Beach Partners, LLC, were created by Somera for purpose of acquiring real estate or that Somera owns, controls, or has management control of more than 50% of the debt or equity interests of the two entities.

The "Golden Rule of Summary Adjudication" is as follows: "If it is not set forth in the separate statement, it does not exist." *Parkview Villas Assn., Inc. v. State Farm Fire & Casualty Co.*, 133 Cal.App.4th 1197, 1208 (2005). Since there are no facts establishing that any services related to Real Estate Holding Companies, Somera has not carried its burden of production to make a prima facie showing of the nonexistence of any triable issue of material fact as to the applicability of exception (B) to the exclusions applicable to the insuring agreement. Therefore, the applicability of exception B is not an independent ground for granting summary adjudication.

*c. Loss which would have attached even in the absence of such contract or agreement*: Somera argues that the breach of contract exclusion does not apply to the common count and fraud causes of action. Twin City disputes this, arguing that the common count and fraud causes of action are based upon, arising from, or are in any way related to any actual or alleged breach of contract or agreement. It is not necessary to address those arguments. The 24th Affirmative Defense would apply to coverage of the two breach of contract causes of action in Postcard's complaint, assuming exceptions (A) and (B) did not apply. Summary adjudication "shall be granted only if it *completely* disposes of … an affirmative defense.…" CCP § 437c(f)(1).

Therefore, this is not an independent ground for granting summary adjudication.

*5. Order.* The court grants plaintiff Somera Capital Management, LLC's motion for summary adjudication as to defendant Twin City Fire Insurance Company's 24th Affirmative Defense.

© 2020 Superior Court of the County of Santa Barbara